John van Loben Sels (Bar. No. 201354)
Jennifer J. Shih (Bar No. 276225)
Matthew J. C. Lusich (Bar No. 320299)
FISH IP LAW, LLP
2603 Main Street, Suite 1000
Irvine, CA 92614-4271
Telephone: (949) 943-8300
Facsimile: (949) 943-8358
Email: jvanlobensels@fishiplaw.com
Email: jshih@fishiplaw.com
Email: mlusich@fishiplaw.com

Attorneys for Plaintiff, Robert Fish and the
Putative Class.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FISH, individual, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>         v.<br><br>TESLA, INC., a Delaware corporation,<br><br>    Defendant. | Case No.  8:21-cv-00060<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff Robert Fish ("Plaintiff") by and through its attorneys of record, allege, on knowledge as to his own actions, and otherwise upon information and belief as follows:

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims of Plaintiff and the Putative Class involve violations of federal laws, including the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 et seq., and the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030 et seq. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein arise from the same core of operative facts.

3.      This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(a)(1), (d)(1), (d)(2), and (d)(3) because the proposed classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  To date, Defendant Tesla has sold more than 1 million vehicles equipped with electric battery packs, including Models S, X, 3, and Y ("Class Vehicles").

4.      This Court has both specific and general personal jurisdiction over Defendant Tesla because it maintains minimum contacts with the United States, this judicial district, and this state.  Defendant Tesla purposefully availed itself of the laws of this state by conducting a substantial amount of its business in the state, including designing, testing, manufacturing, and/or distributing Tesla vehicles, including the Class Vehicles, in this state. Tesla also developed, prepared, and disseminated warranty materials for the Class Vehicles within and from its headquarters in this state. Thousands of Class Vehicles were sold, leased, and delivered at various Tesla showrooms and service center locations throughout this state and this judicial district.

5.     Venue is proper in this judicial District under 28 U.S.C. § 1391(b) because Plaintiff purchased his Subject Vehicle in this District and a substantial part of the challenged conduct or omissions giving rise to claims occurred and/or emanated from this District and Defendant have caused harm to Class Members residing in this District.

## PARTIES

6.     Plaintiff resides in Irvine, California and is a citizen of the State of California.  In 2014, Plaintiff purchased a new 2014 Tesla Model S 85 in Orange County ("Subject Vehicle") directly from Defendant Tesla.

7.     Defendant Tesla, Inc., formerly Tesla Motors, Inc., ("Tesla") is a Delaware corporation, with its principal place of business in Palo Alto, California.

8.     Tesla is an auto manufacturer of electric vehicles, and it designs, manufacturers, markets, distributes, and sells exclusively electric vehicles.  Since 2012, Defendant Tesla designed, manufactured, distributed, marketed and sold the Tesla Model S electric vehicle ("Model S"), and later the Model X electric vehicle ("Model X"), Model 3 electric vehicle ("Model 3") and Model Y electric vehicle ("Model 3") in the United States, with a large concentration of vehicles sold in the State of California.

9.     Tesla also regularly conducts business throughout the State of California and owns and operates a system of company-owned dealerships. service centers and charging stations within the jurisdiction of this Court.  On information and belief, through Tesla's publicly filed financial reports and its website, Tesla designs, tests, and manufactures the Class Vehicles, throughout the State of California.  Tesla also utilizes promotional videos which are purporting to show the operation of Class Vehicles in California.

10.     At all times relevant to this action, Tesla, marketed, distributed, advertised, leased, sold, and warranted the Class Vehicles by and through its dealerships and service centers located nationwide with many of them located in

California.

## FACTUAL BACKGROUND

### Subject Vehicle

11.     Plaintiff purchased the Subject Vehicle directly from Defendant Tesla in Orange County, CA in 2014.

12.     When Plaintiff purchased the Subject Vehicle and for several years following, Plaintiff regularly got over 200 miles of range from an 80% drain of the battery (90% to 10%), which was approximately equivalent to the maximum stated range of 265 miles (100% to 0%).

13.     Prior to and after purchasing his vehicle, Plaintiff understood the basic concepts surrounding battery-powered electric vehicles, including the comprehension that lithium-ion batteries such as the ones that are used to power Tesla vehicles will lose some capacity over time.  Plaintiff understood this as consistent with the wording in Tesla's Battery and Drive Unit Limited Warranty which stated: "The Battery, like all lithium-ion batteries, will experience gradual energy or power loss with time and use."

14.     Plaintiff notes that Tesla strongly recommends owners of Class Vehicles limit charge and discharge of battery packs between 20% and 80% capacity, and to limit Supercharging sessions to prevent battery damage.  Plaintiff regularly operates the Subject Vehicle within the 20% to 80% battery capacity range, and to the best of his knowledge has never used a Tesla Supercharger.

15.     In August 2020, with less than 60,000 miles on the odometer of the Subject Vehicle, Plaintiff noticed a significant loss in actual range traveled from a near fully charged battery.  Where previously Plaintiff received the range stated above, as displayed on the Subject Vehicle's dashboard, he now only received a maximum of 150 miles of actual traveled range from a 99% charged battery.  This is despite the car still displaying 245 miles of available range at 99% charge.  In other words, Plaintiff received only about 60% of traveled range, as compared to

3

the estimated range for a new battery.

16.    In August 2020, Plaintiff contacted a Tesla service technician to inquire about the substantial loss of range and effective battery capacity of the Subject Vehicle's battery pack.  The service technician instructed Plaintiff to determine battery capacity by focusing on his vehicle's displayed percent battery state of charge, instead of range.

17.    Plaintiff then logged energy usage during drives with the Subject Vehicle throughout August 2020.  As the charge dropped from 99% to 61%, the dashboard recorded battery usage of 16.4 kWh. This demonstrated that the battery capacity was only 43.16 kWh (16.4 kWh/.38 = 43.16 kWh).

18.    Assuming an 85-kWh battery has a usable capacity of 85 kWh, the battery of the Subject Vehicle was obtaining only 51% of its stated capacity.

19.    On information and belief, Tesla might argue that an 85-kWh battery has only 81 kWh of usable capacity, or even perhaps only 77.5 kWh of usable capacity.  Aside from the potential fraud in failing to tell the buying and investing public about those numbers, the battery capacity of the Subject Vehicle is still only about 53% or 56% of represented capacity.

20.    The following chart summarizes estimated battery capacity from multiple checkpoints during the August 2020 test.

| Battery % | kWh Used | % Battery Used | Battery capacity kWh | % of 85 kWh Capacity | % of 81 kWh Capacity | % of 77.5 kWh Capacity |
|---|---|---|---|---|---|---|
| 99 | 0 | 0.00 | | | | |
| 72 | 13.8 | 0.27 | 51.11 | 60% | 63% | 66% |
| 61 | 16.4 | 0.38 | 43.16 | 51% | 53% | 56% |
| 53 | 18.1 | 0.46 | 39.35 | 46% | 49% | 51% |
| 44 | 21.5 | 0.55 | 39.09 | 46% | 48% | 50% |
| 18 | 38.3 | 0.81 | 47.28 | 56% | 58% | 61% |
| 11 | 42.4 | 0.88 | 48.18 | 57% | 59% | 62% |

CLASS ACTION COMPLAINT

21.   These observations show the battery capacity of the Subject Vehicle is consistently less than 70% of the represented battery capacity.

22.   On information and belief, Tesla represented to Plaintiff and to owners of Class Vehicles, that the ideal battery capacity range to operate the vehicles is between 20% and 80% capacity.  However, even considering operation of the Subject Vehicle within this supposedly optimum operating range, the battery capacity of the Subject Vehicle is less than 70% of the of the represented battery capacity.  See chart below.

| Battery % | kWh used | % battery used | battery capacity kWh | % of 85 kWh capacity | % of 81 kWh capacity | % of 77.5 kWh capacity |
|---|---|---|---|---|---|---|
| 85-18 | 31.5 | 0.67 | 47.1 | 55.41% | 58.15% | 60.77% |
| 56-48 | 4 | 0.08 | 50 | 58.82% | 61.73% | 64.52% |

23.   Nor could low temperatures be responsible for the low batter capacity of the Subject Vehicle.  Ambient temperatures for data shown in the charts above were always at least 75º Fahrenheit.

24.    Accordingly, on information and belief, the Subject Vehicle met the criteria for replacing defective battery packs under warranty, and Tesla should have honored the warranty and replaced the battery of the Subject Vehicle for free.

25.   Plaintiff reported the above results to Tesla technicians to make a warranty claim to replace the defective battery pack in the Subject Vehicle. However, despite Plaintiff's detailed observations that clearly demonstrated a defective battery, the Tesla technician allegedly performed a remote "battery health check" and determined there were no issues with the battery.  Other than stating the battery was fine, the Tesla technician did not report any details of the mysterious "health check," what was being measured to determine "health," how the check was performed, or what metric and criteria was used to determine there

1   were no issues with the battery in the Subject Vehicle. The Tesla technician

2   denied Plaintiff's claim for a warranty replacement of the battery pack. Plaintiff

3   clearly told the Tesla technician this was unacceptable and demanded replacement

4   of the Subject Vehicle battery pack under warranty but was provided with no

5   alternative resolution other than to file the present suit.

6        26.    On information and belief, Tesla has a standard practice of using

7   fraudulent and deceptive "battery health checks" as a basis to deny warranty

8   claims to replace defective batteries.

9        27.    Also, on information and belief, Tesla has attempted to hide failing

10  battery capacity, which *necessarily* occurs from age and use of Lithium Ion

11  technology batteries, behind software updates. Accordingly, the Plaintiff and

12  other putative Class Members have largely avoided demanding battery

13  replacements under warranty because they were fooled into thinking that the

14  losses they were experiencing in battery capacity were due to software updates

15  instead of failing batteries.

16       28.    Following Tesla's refusal to replace the Subject Vehicle's battery

17  under warranty, Plaintiff continued to monitor actual battery capacity and miles

18  traveled for the Subject Vehicle. As recently as December 2020, Plaintiff

19  consistently experienced traveling an actual 128.2 miles over a 90% to 1% battery

20  draw down. This results in an actual mile range of 144 miles for 100% battery

21  charge, or 54.4% of the 265-mile original range.

22       29.    Upon information and belief, and close examination of the data

23  available for Plaintiff's vehicle, and the warranty replacement criteria as disclosed

24  by Tesla, Tesla violates state and federal warranty statutes and engages in

25  fraudulent and deceptive behavior by denying replacement for defective batteries.

26  Tesla also knew, or should have known, that the Subject Vehicle has a defective

27  battery that should be replaced under warranty, and that hundreds of thousands of

28  other putative Class Vehicles have batteries that should be replaced under

warranty, or will need to be replaced under warranty.

30.     On information and belief, in addition to Tesla failing to properly honor the warranty for the Subject Vehicle, Tesla has also manipulated the software to display inflated estimated driving ranges.  For example, the Subject Vehicle displayed a 245-mile estimated range at a 99% charge, with the range estimate based on almost 60,000 miles of historical driving.  And yet the actual miles traveled from 99% charge to 11% charge was only 135.1 miles, which means that even driving the Subject vehicle to a displayed charge of 0% would have yielded only 154 miles.

31.     Tesla's efforts to artificially inflate the estimated range is a fraud on Class Members to obscure the fact that battery packs in Class Vehicles are defective or have otherwise significantly reduced effective charge capacity.  This fraud is an attempt by Tesla to avoid honoring legitimate warranty obligations for defective battery packs.

32.     On information and belief, similar losses in battery capacity, and similarly inflated estimated driving ranges, have or will occur for essentially all of the Tesla vehicles sold to date.  And essentially all such vehicles should be deemed to be eligible as Class Vehicles.

33.     On information and belief, all or substantially all of Tesla's vehicles sold with Lithium Ion batteries, as well as those sold in the future, are subject to having the same sort of problems with reduced battery capacity as the Subject Vehicle.

34.     On information and belief, Tesla cannot be trusted to properly instruct all potential Class Members of the reduced battery capacity in their Lithium Ion powered vehicles.  Accordingly, it seems reasonable to require Tesla to cooperate with Plaintiff and Plaintiff's attorneys to provide instructions to all current and future owners of Tesla Lithium Ion powered vehicles for self-testing of their batteries.  Batteries of vehicles within the warranty period should be given

a free battery replacement if the owners find the batteries to require replacement according to the following table, when discharged from 99% to 10%, or such other parameters as determined by the Court or jury.

| Battery Size | Total Capacity kWh | Usable Capacity kWh | 70% Usable Capacity |
|---|---|---|---|
| Original 60 | 61 | 58.5 | 40.95 |
| Original 70 | 71.2 | 68.8 | 48.16 |
| 75/75D | 75 | 72.6 | 50.82 |
| 85/P85/85D/P85D | 81.5 | 77.5 | 54.25 |
| 90D/P90D | 85.8 | 81.8 | 57.26 |

35.     On information and belief, a reasonable fee for Plaintiff and Plaintiff's attorneys to assist in this regard is $100 per vehicle.

**There Are Widespread and Common Complaints**
**of Tesla's Defective Battery Issues**

36.     In 2019 many Tesla customers noticed and began to complain about range loss and battery issues.  For example, one discussion titled "Sudden Loss of Range With 2019.16.x Software" on the popular Tesla Motors Club online forum website has garnered nearly 3,000 replies from hundreds of members worldwide and has been viewed over 136,000 times.

37.     Numerous members of that forum made the same complaint of significant reduction in range or effective battery capacity of their cars.

38.     One member commented: "So about two months ago I was stuck on 2019.4 because my MCU was dying and unable to connect to Wi-Fi to update and eventually died from the e-MMC issue. My replacement MCU came with 2019.24 installed and after driving my car for less than 50 miles I dropped from 221 rated miles at 90% to 199 rated miles at 90%."

39.     Another member commented: "When I complained to Tesla about immediately losing 10% range they also gave me a chart claiming there was

nothing wrong I was just imaging it. Over time, and challenges, Tesla admitted there is a loss. Last week I was told by Tesla service manager that "Tesla made a conscious decision to reduce charging capacity to 90% to avoid fires and Tesla regards that as a reasonable compromise." I feel this makes the car unsellable since Tesla hasn't fully explained why my specific battery pack I need to disclose it to a buyer. And I am not confident that the issue is resolved. It also confirms that my (our) battery pack is defective since Tesla thought it dangerous enough to secretly download a "fix". The reduced range is accompanied by longer charge time. Even if I accept the defective battery pack condition and drive the car I now am faced with increased time to actually get any range."

40.    Others commented: "Well, my 254 miles has been cut to 238 miles at full charge (This is especially bad for those of us that tow... We need the longer range and can't afford to have it shortened). Tesla better be upfront and explain why I have to sacrifice 14 miles."

41.    Still others commented: "Are they now at risk of having a car fire in their garage while they sleep? If it's not about the fires, then why do this cap at all? Prevent future degration? (sic) Well they just degraded them now instead of the future, what's the point in that? I can't see how you can say this is about expectation. The manufacturer physically capped battery capacity of vehicles they do not own without an explanation. How can you possibly view this as being ok?"

42.    Another member commented: "My observation has been that unstated battery losses are at about 20%.  For example, your car states you have 200 miles available to drive. But in reality, you can probably get about 160 Miles (give or take).  Thus the true stated mileage of your Tesla vehicle is about 20% less than what's being advertised...  You think you're going to get 235 miles of use, but only get about 190 Miles.  This is from normal driving, street and highway.  ** Recent Example: 210 Miles Available; 118.5 Miles driven since last charge; 35.4 KWH since last charge; 298 WH/Miles since last charge; Battery

9

Left Over indicator Reads: 54 Miles.  A phantom loss of 37.50 Miles or 17.85%"

43.     Other comments include: "I'm not using any apps or gadgets...  All I know is that at full charge, my vehicle says 240 miles available...  At the end of my trip, my vehicle may say 50 miles available and 142 Miles Driven.  Thus 48 Miles disappeared..."

44.     Further comments include: "Personal current battery capacity (driven) = 43.5kWh/(90% SoC - 11% SoC) = 55.06kWh  This would equate to a roughly 24.15% battery degradation in 2 years/17.5k miles, which is atrocious."

45.     Another member stated: "By the way, my 2016 90D has a real full charge range of 190-200 miles.  And the displayed full charge range is 270 miles.  So, full charge range displayed may not be indicative of real range or real battery capacity."

46.     On information and belief, Tesla has a common practice of denying warranty replacements for defective battery packs in Class Vehicles, or otherwise substantially limits available battery capacity of Class Vehicles via software updates to hide known safety issues.

**Tesla Manipulates Range Calculations To Hide Defective Battery Packs and Escape Warranty Obligations**

47.     Upon information and belief, and by and through the further investigation of Plaintiff and counsel for Plaintiff, these complaints are valid.

48.     Upon information and belief, Tesla uses formulas to determine the rated mileage ranges for its various vehicles.  In general, Tesla divides a total amount of usable battery capacity (kWh) by a fixed constant factor (watt-hours/mile) to determine the total number of rated miles.

49.     Upon information and belief, Tesla has lowered the numbers for the fixed constant factors (watt-hours/mile), which has the practical effect of giving the false impression that more miles are available, or that batteries have a falsely

1   inflated capacity.  On information and belief, Tesla used the lowered fixed

2   constant factors at least in part to hide decreased battery capacity.  Customers like

3   Plaintiff and the putative Class Members relied upon the estimated number of

4   miles and effective battery capacity that Tesla fraudulently represented to them.

5   However, what they did not know after purchasing the Class Vehicles is/was that

6   Tesla manipulates the fixed constant factors (watt-hours/mile) at least in part to

7   avoid valid battery replacements under warranty.

8        50.    Some Class Vehicles are advertised with a number after the model

9   letter, which indicates the supposed battery capacity of the vehicle.  For example,

10   the Tesla Model S 85 is advertised as an "85 battery" denoting a battery capacity

11   of 85 kWh.  However, even though Tesla doesn't admit it, there is evidence in the

12   public domain that Model S 85 vehicles include a battery pack with a maximum

13   capacity of only 81 kWh, of which only 77.5 kWh are available for powering the

14   vehicles.

15        51.    Upon information and belief, Tesla has fraudulently and/or

16   deceptively lowered the fixed constant factors (watt-hours/mile) to avoid its duty

17   and legal obligation to replace defective battery packs under warranty.

18        52.    Upon information and belief, Tesla has attempted to further escape

19   from its legal obligations by using confusing terms, relying on terms such as

20   "Rated Miles" or "Rated Range," when the actual term that Tesla should be using

21   is Battery Capacity calculated by the kilowatt-hour (kWh).  Tesla does not display

22   the amount of battery capacity kWh on any user information display available on

23   the vehicle.  Owners are only given access to the displayed percentage and rated

24   range as displayed on the vehicle display.

25        53.    On information and belief, Plaintiff's vehicle and Class Vehicles

26   display their Rated Range based on the battery management system reporting the

27   nominal remaining kWh minus the battery brick buffer (believed to be 4 kWh)

28   divided by the reduced fixed constant factor (watt-hours/mile).

54.     Upon information and belief, battery packs in Class Vehicles have a substantially reduced battery capacity, either because of defective battery packs that cannot reach the rated battery capacity or by software manipulation of the battery management system to limit maximum battery capacity, or at least they will have substantially reduced battery capacity before the end of the warranty period, and absent judicial intervention Tesla will refuse to replace the batteries under warranty.

55.     Upon information and belief, Tesla was aware that its customers and owners fully expected to be able to charge their Class Vehicles to the maximum battery capacities as advertised and paid for. However, Tesla realized the mistakes it had made by fraudulently advertising and selling to Plaintiff and the putative Class Members cars that could not be safely charged to the maximum battery capacity, and has used denial and obfuscation to prevent owners from pursing their right to free battery replacements under warranty.

56.     Upon information and belief, Tesla's failure to inform its customers, and comment on the defective battery packs, is simple: Tesla did not want to admit it sold defective products to its customers, products that could not achieve or operate as sold and intended for use by Plaintiff and the putative Class Members.  Instead of coming clean with the public, Plaintiff, and the putative Class Members by informing them about the defective batteries, Tesla decided to withhold this information and use denial, and obfuscation through software updates and throttling of the batteries, to avoid liability.

57.     Plaintiff's use of the Subject Vehicle is substantially and significantly affected by Tesla's fraudulent concealment and manipulation of software, to the point that Plaintiff is forced to pay out-of-pocket costs to replace a battery pack that should have been replaced under warranty, but for Tesla's deceptive acts and unfair business practices.

58.     Upon information and belief, hundreds of thousands of other Tesla

12

CLASS ACTION COMPLAINT

vehicles of putative Class Members either are currently or will be harmed by Tesla's efforts to avoid replacing batteries under warranty.

59.     Upon close examination of the data available on Plaintiff's vehicle, and the warranty replacement criteria as disclosed by Tesla, Plaintiff is informed and believes that Tesla also violates state and federal warranty statutes and engages in fraudulent and deceptive behavior by manipulating the software for its vehicles.  Tesla knew, or should have known, that the software updates issued to Plaintiff and hundred of thousands of other putative Class Members' vehicles would cause significant range loss, whether or not the battery packs on those vehicles are defective.

60.     For example, in August 2014 Tesla gave what was called the "Tesla Infinite Mile Warranty" to Class Vehicles.  As Tesla represented and displayed on their website, the warranty included an 8-year, infinite mile warranty as to the battery pack and drive train of Tesla's vehicles.  In addition, the warranty applied to all models produced in the future and applied retroactively to all prior models already produced at the time.

61.     Tesla's practice of misrepresenting battery capacity and actual range is a deliberate and deceptive attempt to place Plaintiff's vehicle and the vehicles of other putative Class Members outside of the warranty replacement requirements.

62.     If Plaintiff were to purchase a replacement battery from Tesla to restore the Subject Vehicle to its warranted functionality and usability, the price would be approximately $20,0000.  Tesla has acted fraudulently and attempts to shift the burden of these costs and label them as out-of-warranty.  Absent judicial intervention, Plaintiff and other putative Class Members are left helpless as Tesla sits in the ultimate bargaining position with absolute reign over the warranty process, and ability to control the variables that are relied upon in determining warranty coverage.

CLASS ACTION COMPLAINT

**Tesla Owners Have No Choice but To Accept Software Updates**

63.    To be eligible for warranty repair and coverage for Tesla's vehicles, Tesla owners must update their vehicles regularly, and are unable to operate their vehicles without Tesla's software.

64.    Though Tesla owners may have the choice to postpone software updates, Class Members are left helpless due to Tesla's demand and imposition of terms that require owners to comply with Tesla's software updates.  Moreover, if a Class Member takes a Class Vehicle into a Tesla service station, the technicians will update the software without permission from the owner.

65.    Any attempts by Tesla to limit liability for its software updates is unconscionable and unenforceable, as Tesla's software updates are necessary for consumers to continue the use of Class Vehicles while still maintaining the full realization and benefit of the consumers' bargains.

66.    Upon information and belief, Tesla imposed updates that significantly reduced the effective battery capacity of Class Vehicles to cover up defective battery packs and avoid warranty claims.

**Tesla's Violations of the Computer Fraud and Abuse Act**
**(18 U.S.C. § 1030 *et seq.*)**

67.    The Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030 *et seq.*, establishes a private cause of action against a person who "knowingly accessed a computer without authorization or exceeding authorized access," and whose access results in damage or loss in excess of $5,000. 18 U.S.C. § 1030(g) (referencing 18 U.S.C. § 1030(c)(4)(A)(i)(I)). Under the CFAA, a computer is defined as one, "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2).

68.    Class Vehicles are equipped with an onboard computer known as a media control unit, or "MCU", which allows for internet, GPS and Wi-Fi

14
CLASS ACTION COMPLAINT

connected capabilities, and serves as the platform for receiving Tesla's software updates.  The MCU an LCD display, processors, controllers, and memory.

69.     Tesla's MCU's are "computers" under the CFAA by virtue of their data processing and communication functions and their operation in conjunction with Plaintiff and the putative Class Members' vehicles. They are used in and affect interstate and foreign commerce and communication by providing key information to Tesla vehicles, including software updates that may affect the safety and improve upon the reliability of the same.

70.     Tesla knowingly and intentionally manipulated its software updates in order to limit the amount of battery capacity and charging speed of its vehicles and did so either without authorization and/or exceeding the authorization of its customers.  Tesla failed to provide any information to its customers that such software updates would lead to a significant reduction in charging speed, performance, and severe loss of range for their vehicles.

71.     Tesla further acted fraudulently and under the guise of "safety" as the reason for the software updates, to the detriment of its customers.  Tesla's violations of the CFAA resulted in a loss of range and resultant loss in value for the Class Vehicles.

72.     By issuing the range-reducing and battery capacity-limiting software updates to the vehicles owned by Plaintiff and the other putative Class Members, Tesla also violated California's Computer Crime Law, CAL. PEN. CODE § 502 *et seq*., which prohibits similar behavior as provided by its federal counterpart.

73.     Plaintiff and the putative Class Members owned their vehicles and possessed the right to use them without interference by Tesla.  However, by limiting the range of their vehicles and reducing the charging speed and performance of their vehicles, Tesla has inflicted damages to Plaintiff and the putative Class Members in the form of substantially reducing the value of their cars.

74.     Plaintiff and the putative Class Members have no choice but to abide by Tesla's commands and are forced to accept Tesla's software updates or risk losing the ability to receive warranty repair from Tesla.  Plaintiff and the putative Class Members would not have paid as much as they did for their cars, or would have paid significantly less for their cars had they known that Tesla would introduce range and battery capacity-limiting software that would significantly and severely impact the value and function of their cars after purchase.

**Tesla is Notorious for Producing and Selling Vehicles**
**with Defective Battery Packs**

75.     Class Vehicles have a history of including defective or faulty battery packs, as evidenced by the number of spontaneous fires caused by battery packs across multiple model years.

76.     On information and belief, Defendant Tesla has been aware of these faults and defects in its battery packs since at least 2012.

77.     Tesla's deployment of software "updates" has significantly affected the use and drastically limited the performance of the Class Vehicles.  Tesla severely limits the maximum amount of battery capacity available in the Class Vehicles, and essentially took away significant value from these vehicles with one tap on the screen.

78.     Customers rely on Tesla's representations and advertisements of their vehicles and are left at the mercy of Tesla when it comes to ownership of their vehicles.  Plaintiff and other putative Class Members updated their cars as required by Tesla's warranty.  Plaintiff and other putative Class Members were unaware of the fact that the software updates would effectively limit the maximum amount of battery capacity available in their cars, which translated into a decrease in the number of miles available, a decrease in performance and decrease in the charging speed of their cars.  All of these limitations were unlawfully,

16
CLASS ACTION COMPLAINT

fraudulently, and deceptively delivered to their cars as part of Tesla's so-called software "updates" for "safety" of their vehicles.

79.    In February 2014, a Tesla Model S spontaneously caught fire in Toronto, Canada.  On information and belief, the fire was caused by the battery pack of the car.

80.    In March 2017, a Tesla Model S spontaneously caught fire in Shanghai, China.  On information and belief, the fire was caused by the battery pack of the car.

81.    On June 16, 2018, the battery pack of a Tesla Model S spontaneously caught on fire in Los Angeles, CA while the owner was sitting in traffic.

82.    On June 18, 2018, a Tesla Model S spontaneously caught fire in Oslo, Norway.  On information and belief, the fire was caused by the battery pack of the car.

83.    On December 18, 2018, a Tesla Model S spontaneously caught fire in Los Gatos, CA.  After moving the car to a second location for inspection, the car again spontaneously erupted in flames.  On information and belief, the fire was caused by the battery pack of the car.

84.    On December 21, 2018, a Tesla Model S spontaneously caught fire in San Francisco, CA.  After extinguishing the fire, the car again erupted in flames hours later.  On information and belief, the fire was caused by the battery pack of the car.

85.    On February 8, 2019, a Tesla Model S spontaneously caught fire in a private garage in Pittsburgh, PA.  The car was transported to another location for inspection, and again spontaneously caught fire on April 17, 2019.  On information and belief, the fires were caused by the battery pack of the car.

86.    On February 24, 2019, a Tesla Model X spontaneously caught fire and was consumed in the middle of frozen Lake Champlain, VT.  On information and belief, the fire was caused by the battery pack of the car.

87.     On March 14, 2019, a Tesla Model S spontaneously caught fire while parked in Hong Kong.  On information and belief, the fire was caused by the battery pack of the car.

88.     On April 21, 2019, a Tesla Model S vehicle was caught on video bursting into flames while parked in a garage in Shanghai, China.  On information and belief, the fire was caused by the battery pack of the car.

89.     On May 4, 2019, a Tesla Model S spontaneously caught fire and began smoking in San Francisco, CA.  On information and belief, the fire and smoke was caused by the battery pack of the car.

90.     On May 13, 2019, a Tesla Model S spontaneously caught fire while parked in Hong Kong.  On information and belief, the fire was caused by the battery pack of the car.

91.     On June 1, 2019, a Tesla Model S spontaneously caught fire in Antwerp, Belgium.  On information and belief, the fire was caused by the battery pack of the car.

92.     On July 30, 2019, A Tesla Model S spontaneously caught fire in Ratingen, Germany.  On information and belief, the fire was caused by the battery pack of the car.

93.     On November 12, 2019, a Tesla Model X spontaneously caught fire in Chester, England.  On information and belief, the fire was caused by the battery pack of the car.

94.     On February 12, 2020, a Tesla Model 3 spontaneously caught fire in Cerritos, CA.  On information and belief, the fire was caused by the battery pack of the car.

95.     On May 22, 2020, a Tesla Model S spontaneously caught fire in Kaysville, UT.  On information and belief, the fire was caused by the battery pack of the car.

96.     On July 8, 2020, a Tesla Model S spontaneously caught fire in Coral

Gables, FL.  On information and belief, the fire was caused by the battery pack of the car.

97.     On or about November 25, 2020, a Tesla Model S spontaneously caught fire in Frisco, TX.  On information and belief, the fire was caused by the battery pack of the car.

98.     On or about December 21, a Tesla a Tesla Model 3 spontaneously caught fire in Lincoln, NE.  On information and belief, the fire was caused by the battery pack of the car.

99.     To date, Tesla has failed to provide its customers with any further information regarding the cause of these fires and has failed to inform customers as to which vehicles are potentially at risk of catching fire.

100.   On May 15, 2019, just under one month after having investigated the Shanghai fire, Tesla issued a software update to all Model S and X cars and informed users that the updates were merely "out of an abundance of caution." Tesla also provided that the over-the-air software update would change some settings in the cars' battery management software (BMS) that were related to charging and thermal controls.  On information and belief, the May 15, 2019 software update was an attempt to cure problems related to defective battery packs.

101.   Even after the May 15, 2019 software update, defective battery packs continued to cause fires in Class Vehicles as noted above.

## CLASS ACTION ALLEGATIONS

102.   Plaintiff brings this class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of a proposed Class defined as:

> All persons who purchased or leased a Class Vehicle for end use and not for resale in the United States, the District of Columbia, Puerto Rico, and all other United States territories and protectorates.

103.   Excluded from the Class are Tesla and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend definitions of the Class, and to add additional classes and sub-classes, as appropriate during the course of this litigation.

104.   This action has been brought and may properly be maintained on behalf of the Class Members proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.  There is a well-defined community of interest in the litigation and the proposed class is ascertainable.

105.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

106.   **Numerosity**: The Class consists of potentially hundreds if thousands of geographically disperse people, such that joinder would be impracticable. While Plaintiff believes that there are potentially hundreds of thousands of members of the putative Class, the precise number of Class Members is unknown to them but may be ascertained from Tesla's books and records.  Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

107.   **Typicality**: The claims of Plaintiff are typical of the claims of Class Members in that Plaintiff, like all Class Members, purchased Tesla vehicles, all of which Plaintiff is informed and believe have similar lithium ion batteries, are subject to substantially the same warranties, and therefore already have or will have in the future, the same reduced effective battery capacity, either by defect or software manipulation, or both.

108.   **Predominance of Common Issues**: There are numerous questions of law and fact, including those related to Defendant's knowledge, conduct, and duty throughout the events described in this Complaint, common to Plaintiff and Class Members. These common legal and factual issues include:

a.   Whether Tesla's alleged conduct violates applicable law;

b.   Whether certification of the Class Members is appropriate under FED. R. CIV. P. 23;

c.   Whether Tesla designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

d.   Tesla's motives for devising, manipulating, and executing the software updates to its vehicles;

e.   Whether Tesla engaged in deceptive business practices by altering the fixed constant variable it uses to calculate and market the total number of miles available for its vehicles after customers purchase the vehicles;

f.   Whether Tesla violated and continues to violate the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.);

g.   Whether Tesla manipulated its software update to include changes in the method of calculating energy consumption;

h.   Whether Tesla knew about the negative effect software updates have on the Class Vehicles, including a decrease in the amount of maximum rated mileage range and a decrease in the amount of usable battery capacity;

i.   Whether software updates or defects that lead to a decrease in the amount of usable battery capacity constitutes loss in value of the Class Vehicles;

j.   Whether Tesla manipulated the software to avoid and deny warranty battery replacements to Plaintiff and the other putative Class Members;

k. Whether Tesla's conduct violates consumer protection statutes, false advertisement laws, and unfair business and trade practices laws;

l. Whether Tesla's unlawful, unfair, deceptive and fraudulent practices harmed Plaintiff and the putative Class Members;

m. Whether Plaintiff and other putative Class Members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

n. Whether Plaintiff and other putative Class Members are entitled to damages and other monetary relief and, if so, in what amount;

o. Whether Plaintiff and the putative Class Members are entitled to an award of punitive and exemplary damages based on Tesla's conduct and violations as alleged herein and if so, in what amount;

p. Whether Tesla breached express warranties with respect to the Subject Vehicles; and

q. Whether Tesla breached implied warranties with respect to the Subject Vehicles.

109.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff's interests do not conflict with the interests of the other members of the proposed classes they seek to represent.  Plaintiff has retained counsel competent and experienced in complex litigation, and the technology and subject matter in regards to the underlying suit, and Plaintiff intends to prosecute this action vigorously and has the financial resources to do so.

110.   **Superiority**: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages because of Defendant's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

111.   Absent a class action, most Class Members would likely find the cost

22

of litigating their claims prohibitively high and would therefore have no effective remedy at law.

## TOLLING OF STATUTE OF LIMITATIONS

112. **Fraudulent Concealment**: On information and belief, Tesla has known of the issues relating to the batteries of its vehicles since at least 2012. Tesla obtained further knowledge of the defects contained in certain Class Vehicles as alleged above.  Tesla, however, has concealed from or failed to notify Plaintiff, members of the putative Class, and the public, of the full and complete nature of the battery defects and reduced effective battery capacity of the Class Vehicles.

113. As described above, Tesla maintains nearly absolute exclusivity regarding its software updates and the batteries of their vehicles.  Tesla represents that its "team of battery experts uses…data to thoroughly investigate incidents that occur and understand the root cause."  To this day, Tesla refuses to acknowledge that the batteries in its vehicles are defective or initiate a recall of the Class Vehicles.

114. Thus, any applicable statute of limitations has therefore been tolled by Tesla's knowledge, active concealment, and denial of the facts alleged herein, for which Tesla continues to operate with the ongoing fraudulent behavior.

115. **Estoppel**: Tesla was, and is, under a continuous duty to disclose to Plaintiff and the putative Class Members the true character, quality, and nature of the Class Vehicles.  Tesla actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics and performance of the vehicles.  Plaintiff and members of the proposed classes reasonably relied upon Tesla's knowing, and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Tesla is estopped from relying on any statute of limitations or asserting

23

the same in defense of this action.

116.   **Delayed Discovery Doctrine**: The causes of action alleged herein did not accrue until Plaintiff and members of the proposed classes discovered that their vehicles had the defective or otherwise reduced effective capacity batteries. Plaintiff and the other proposed Class Members had no realistic or reasonable ability to determine that their vehicles' batteries were defective until after experiencing the severe drop in rated mile range and loss in performance. Plaintiff and the proposed Class Members would have had no reason to discover their causes of action, given the fact that Tesla maintains near-complete exclusivity regarding any battery information, Tesla's fraudulent misrepresentations, active concealment, and deceit, all of which clearly show that Tesla has actually engaged in unlawful business practice amongst other violations alleged herein.

## COUNT I

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

### (18 U.S.C. § 1030 *et seq.*)

117.   Plaintiffs incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

118.   Plaintiff brings this count on his own behalf and on behalf of the Class.

119.   The federal Consumer Fraud and Abuse Act ("CFAA") establishes a private cause of action against a person who "knowingly accessed a computer without authorization or exceeding authorized access," and whose prohibited access results in damage or loss in excess of $5,000 in any 1-year period 18 U.S.C. § 1030(a)(4).

120.   The CFAA also establishes liability against whomever: "knowingly causes the transmission of a program, information, code or command, and as a

result of such conduct, intentionally causes damage without authorization to a protected computer" (§ 1030(a)(5)(A)); or "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss. (§1030(a)(5)(C)).

121.   The term "computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device[.]" 18 U.S.C. § 1030(e)(1).

122.   A "protected computer" is defined, in relevant part, as a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

123.   "[E]xceeds authorized access" means "access[ing] a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter…" 18 U.S.C. § 1030(e)(6).

124.   "Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

125.   Damage means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

126.   The term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or consequential damages incurred because of interruption of service. 18 U.S.C. § 1030(e)(11).

127.   The term "person" means any individual, firm, corporation,

educational institution, financial institution, governmental entity, or legal or other entity." 18 U.S.C. § 1030(e)(12).

128.    The Class Vehicles are "computers" under the CFAA by virtue of Tesla's vehicles containing a Media Control Unit (MCU) which provides data processing, GPS, communication functions, and other functions, and serves as the receiving end of Tesla's over-the-air software updates.

129.    The Class Vehicles are also "protected computers" under the CFAA because they are used in and affect interstate and foreign commerce and communication, including through contact and communication with remote servers, personal and business usages that affect interstate and foreign commerce, and because Tesla's vehicles are powered and maintained by computers which ensure that Tesla vehicles can operate and drive in furtherance of the stream of interstate and foreign commerce.

130.    Tesla caused Plaintiff and the putative Class Members to download and install software updates to their vehicles without informing them that the updates contained code that would diminish performance, lower the maximum amount of usable battery capacity, throttle or lower the rate of charging speed, lower the amount of voltage for battery cells, modify and manipulate the fixed constant variable used when advertising its cars to Plaintiff and the putative Class Members.  Tesla did this to avoid its warranty obligations and conceal the defective nature of Class Vehicles and batteries.  Plaintiff and the other putative Class Members did not give permission for Tesla to install the updates, as Tesla failed to provide material information to Plaintiff and the putative Class Members regarding the updates and the negative impact on Class Vehicle performance.

131.    Tesla violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of vehicle software updates to Plaintiff and the putative Class Members' vehicles and accessing, collecting, and transmitting information to vehicles.  The Class Vehicles are protected computers by way of the MCU.  By

transmitting information and software updates to the vehicles, Tesla intentionally caused damage without authorization, or at the very least, exceeded the authorization to access Plaintiff and the other putative Class Members' vehicles by impairing the ability of the vehicles to operate as warranted, represented, and advertised by Tesla.

132.   Tesla knowingly and intentionally exceed its authorized access to Plaintiff and the other putative Class Members' vehicles.  Plaintiff and the other putative Class Members did not consent to Tesla's manipulations with their vehicle's battery management system, nor did Plaintiff and the other putative Class Members consent to Tesla limiting the maximum charge voltage and usable amount of battery capacity, both of which lead to significant loss of range and diminished performance of these vehicles.

133.   By exceeding its authorized access, Tesla obtained and altered the information, function, and other unknown variables, and failed to inform Plaintiff and other owners of the Class Vehicles of the reduced battery capacity and diminished performance.  Tesla did so with an intent to defraud Plaintiff and the other putative Class Members and furthered the fraudulent intent to avoid its duties and legal obligations to provide Plaintiff and the putative Class Members with battery replacements under warranty. The out-of-pocket cost of a battery replacement is approximately $20,000 to $25,000, and therefore Tesla's fraudulent intent and conduct as alleged herein constitutes a violation of 18 U.S.C. § 1030(a)(4).  Tesla caused damages and loss to Plaintiff and the putative Class Members during a one-year period that exceeds $5,000 in value in the aggregate.

134.   As alleged above and herein, Tesla knowingly caused the transmission of "a program, information, code, or command…" to a protected computer" and because of that conduct, intentionally caused damage to Plaintiff and the putative class. 18 U.S.C. § 1030(a)(5)(A).

135.   Therefore, Plaintiff and the putative Class Members are entitled to

obtain compensatory damages or other equitable relief as provided under 18 U.S.C. § 1030(g).

## COUNT II

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

#### (15 U.S.C. §§ 2301, *et seq.*)

136.   Plaintiff incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

137.   Plaintiff brings this count on his own behalf and on behalf of the Class.

138.   Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

139.   Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

140.   The Class Vehicles are a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

141.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

142.   As described herein, Tesla provided Plaintiff and the other Class members with "implied warranties" and "written warranties" as those terms are defined in 15 U.S.C. § 2301 *et seq*.

143.   Tesla provided warranties to the Class Vehicles consisting of either a either a 48-month, 50,000-mile new vehicle warranty or a 24-month, 100,000-mile limited warranty against defects in materials or workmanship to the Class Vehicles.

144.   Tesla also provided an 8-year, unlimited mile battery warranty for the Class Vehicles.  The Class Vehicles were provided these express and implied warranties by Tesla.

145.   Defendant breached the implied warranty of merchantability because

28

CLASS ACTION COMPLAINT

the battery defects and otherwise significant reduction in range and effective battery capacity renders the Class Vehicles unmerchantable.

146.   Tesla breached these written and implied warranties as described in the allegations herein, with respect to the batteries of the Class Vehicles and by failing to acknowledge that Plaintiff's battery and those of other Class members were defective and eligible to be replaced under Tesla's written and implied warranties.

147.   By Tesla's conduct described and alleged herein, including Tesla's knowledge that the batteries of the Class Vehicles were abnormally degraded or otherwise defective, Tesla has failed to comply with its obligations under their written and implied promises, warranties, and representations.

148.   The transactions by which Plaintiff and the putative Class Members purchased the Class Vehicles were always transactions for the sale of goods and relevant, Tesla was the original seller of the Class Vehicles and placed these products into the stream of commerce throughout the United States, including California.  At all times relevant, Tesla maintained showroom stores and vehicle service centers in California.

149.   Defendant has refused to provide an adequate warranty repair for the defective or otherwise reduced capacity batteries.

150.   At the time of the sale, Defendant knew of the Class Vehicles' defective batteries but failed to rectify the situation and/or disclose the defect.

151.   Defendant' warranties are written warranties within the meaning of 15 U.S.C. § 2301(6).

152.   The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

153.   The amount in controversy of Plaintiff's individual claim exceeds the sum of $25.  The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be

29

CLASS ACTION COMPLAINT

1    determined in this lawsuit.

2         154.   Plaintiff, individually, and on behalf of the Class Members, seek all

3    damages permitted by law.

4    **COUNT III**

5    **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT**

6    **(CAL. CIV. CODE § 1790 *et seq.*)**

7         155.   Plaintiff incorporates by reference the allegations contained in the

8    paragraphs above as though fully set forth herein.

9         156.   Plaintiff brings this count on his own behalf and on behalf of the

10   Class.

11        157.   Plaintiff is a buyer, as CAL. CIV. CODE § 1791(b) defines the term

12   "buyer."

13        158.   The Class Vehicles are consumer goods, as CAL. CIV. CODE §

14   1791(a) defines the term "consumer good."  The Class Vehicles are new motor

15   vehicles as defined by CIVIL CODE § 1793.22 (e)(2).

16        159.   Defendant is a "manufacturer" within the meaning OF CAL. CIV.

17   CODE §1791(j)

18        160.   Defendant was at all times relevant hereto the manufacturer,

19   distributor, warrantor, lessor, retailer and/or seller of the Class Vehicles.

20   Defendant knew or had reason to know of the specific use for which the Class

21   Vehicles were sold for.

22        161.   Tesla provided warranties to the Class Vehicles consisting of either a

23   either a 48-month, 50,000-mile new vehicle warranty or a 24-month, 100,000-mile

24   limited warranty against defects in materials or workmanship to the Class

25   Vehicles.

26        162.   Tesla also provided an 8-year, unlimited mile battery warranty for the

27   Class Vehicles. The Class Vehicles were provided these express and implied

28   warranties by Tesla and are fully transferable to all subsequent legal owners.

163.   Plaintiff's vehicle was a Class Vehicle that Plaintiff legally obtained with serious defects and nonconformities, including but not limited to a defective, malfunctioning, or otherwise abnormally degraded battery.

164.   Plaintiff and the putative Class Members substantially performed all of their obligations under the warranty, by presenting the Class Vehicles to authorized Tesla repair technicians during the warranty coverage period and/or by accepting all of the over-the-air updates provided by Tesla.

165.   Defendant is unable to conform the Class Vehicles to the express warranties despite being afforded a reasonable opportunity to do so by Plaintiffs.

166.   The Class Vehicles are not fit for their ordinary purpose of providing fuel efficiency because the vehicles suffer significantly reduced range and effective battery capacity.

167.   Defendant was given more than one opportunity to fix the defective or otherwise significantly reduced effective battery capacity of the Subject Vehicle, and failed to do so.

168.   Tesla breached the express warranties by maliciously and fraudulently pushing its software updates to the Class Vehicles, which resulted in a decrease in performance, significantly lower range mileage, significantly lower effective battery capacity, and a slower speed of battery charging in the Class Vehicles.  Tesla further breached the express warranties by refusing to repair, fix, replace, or remedy the defective batteries in the Class Vehicles.

169.   As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiffs and the Class Members sustained damages and other losses in an amount to be determined at trial.

170.   Plaintiff and the other Class members are entitled to and seek damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from Tesla's failure to comply with its warranty obligations under Song-Beverly.

CLASS ACTION COMPLAINT

171.   Plaintiff and the other Class members are entitled under Song-Beverly to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and all others similarly situated, pray for judgment against Defendant as follows:

1. An order certifying the proposed Class pursuant to FED. R. CIV. P. Rule 23(a) and (b)(1), (b)(2), (b)(3) and/or (c)(4), designating Plaintiff as named representative of the Class and designating the undersigned as Class Counsel;

2. Such equitable relief as the Court deems just and proper;

3. Damages in an amount to be proved at trial but in excess of this Court's minimum jurisdictional threshold;

4. Punitive and/or exemplary damages under applicable causes of action;

5. An award of attorneys' fees and costs as allowed by law;

6. An award of pre-judgment and post-judgment interest, as provided by law; and

7. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: January 12, 2021          By:   */s/ John van Loben Sels*
                                        John D. van Loben Sels, Esq.

                                        Attorney for Plaintiff and
                                        Proposed Class

CLASS ACTION COMPLAINT