1   Michael L. Mallow (SBN 188745)
    mmallow@shb.com
2   Rachel A. Straus (SBN 268836)
    rstraus@shb.com
3   SHOOK, HARDY & BACON L.L.P.
    2049 Century Park East, Suite 3000
4   Los Angeles, CA 90067-3204
    Tel: (424) 285-8330 | Fax: (424) 204-9093
5
    Amir M. Nassihi (SBN 235936)
6   anassihi@shb.com
    Joan R. Camagong (SBN 288217)
7   jcamagong@shb.com
    SHOOK, HARDY & BACON L.L.P.
8   One Montgomery, Suite 2600
    San Francisco, CA 94104
9   Tel: (415) 544-1900 | Fax: (415) 391-0281

10  Attorneys for Defendant
11  TESLA INC.

12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15  ROBERT FISH, an individual, and on       Case No. 8:21-cv-00060-JLS-JDE
    behalf of all others similarly situated
16                                            Assigned to Hon. Josephine L. Staton
                Plaintiff,                    Courtroom 10A, 10th Floor
17
         v.                                   **DEFENDANT TESLA INC.'S**
18                                            **MEMORANDUM IN SUPPORT OF**
    TESLA, INC., a Delaware corporation       **MOTION FOR JUDGMENT ON THE**
19                                            **PLEADINGS**
                Defendant.
20                                            Date:      October 15, 2021
                                              Time:      10:30 a.m.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................1

FACTS ALLEGED................................................2

LEGAL STANDARD..............................................3

ARGUMENT......................................................4

   I.   Plaintiff fails to state a claim under the Computer Fraud and Abuse Act. .....4

      A.   Plaintiff consented to Tesla software updates.......................................4

      B.   Plaintiff's "exceeds authorization" claim fails under both Rule 8 and Rule 9(b)........................................................................6

      C.   Plaintiff fails to allege Tesla's conduct caused harm to a "protected computer."...................................................................8

   II.  Plaintiff's Song-Beverly express warranty claim fails.................................10

   III. Plaintiff's Song-Beverly implied warranty claim fails. ...............................11

   IV. Plaintiff's Magnuson-Moss Warranty Act claim fails. .................................14

CONCLUSION....................................................14

## **TABLE OF AUTHORITIES**

**Cases**............................................................................................................**Page(s)**

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995) ................................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................... 3, 4

*Atkinson v. Elk Corp. of Texas*,
   142 Cal. App. 4th 212 (2006) ................................................................. 13

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ................................................................. 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................. 4

*Blanda v. Butler*,
   No. 16-01008, 2016 WL 10842584 (C.D. Cal. Aug. 22, 2016)........................... 6, 8

*Brownfield v. Jaguar Land Rover N. Am., LLC*,
   584 F. App'x 874 (9th Cir. 2014)............................................................ 10

*Cadena v. Am. Honda Motor Co.*,
   No. CV 18-4007-MWF, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ............... 11

*Calendar Research LLC v. Stubhub, Inc.*,
   No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13,
   2020) ....................................................................................................... 8

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................... 14

*Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*,
   132 F.3d 526 (9th Cir. 1997) ................................................................... 3

*Ewiz Express Corp. v. Ma Laboratories, Inc.*,
   No. 15-cv-01213-LHK, 2015 WL 5680904 (N.D. Cal. Sept. 28, 2015)............... 6, 8

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018)..................................................... 8

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
    No. 2:12-cv-1142-SVW-PLA, 2013 WL 2631326 (C.D. Cal. June 12,
    2013) .................................................................................................... 13

*Hovsepian v. Apple, Inc.*,
    No. 08-5788-JF-PVT, 2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) ................... 11

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ....................................................... 5

*In re Apple Inc. Device Performance Litigation*,
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..................................................... 6

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................... 4

*In re iPhone Application, Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................... 5

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................................ 11

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) ............................................................. 6

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007) .................................................................... 11

*IV Solutions, Inc. v. Connecticut General Life Insurance Company*,
    13-9026-GW, 2015 WL 12843822 (C.D. Cal. Jan. 29, 2015) ................................. 7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................. 6

*Kent v. Hewlett-Packard Co.*,
    No. 09-5341-JF-PVT, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ...................... 12

*Knafo v. Jaguar Land Rover N. Am., LLC*,
    No. CV-18-01401-AB-KSX, 2019 WL 6482231 (C.D. Cal. July 12,
    2019) .................................................................................................... 10

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ............................................................. 4, 6

*Marchante v. Sony Corp. of Am.*,
   801 F. Supp. 2d 1013 (S.D. Cal. 2011) ............................................................ 12, 13

*Marchionna v. Ford Motor Co.*,
   No. 94 C 275, 1995 WL 476591 (N.D. Ill. Aug. 10, 1995) .................................... 14

*Oracle Am. Inc. v. Serv. Key, LLC*,
   No. 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) .......................... 6

*Peterson v. Mazda Motor of Am., Inc.*,
   44 F. Supp. 3d 965 (C.D. Cal. 2014) .................................................................... 13

*Resnick v. Hyundai Motor Am., Inc.*,
   No. CV-16-00593-BRO-PJWX, 2017 WL 1531192 (C.D. Cal. Apr.
   13, 2017) ............................................................................................................ 12

*Robbins v. Hyundai Motor Am.*,
   No. SACV 14-0005-JLS, 2014 WL 4723505 (C.D. Cal. Aug. 7, 2014) ................. 14

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) ...................................................................... 4

*Silvio v. Ford Motor Co.*,
   109 Cal. App. 4th 1205 (2003) ............................................................................. 10

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) .................................................................. 9

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................................. 12

*Troup v. Toyota Motor Corp.*,
   545 Fed. Appx. 668 (9th Cir. 2013) ..................................................................... 12

*Valencia v. Volkswagen Grp. Of Am. Inc.*,
   199 F. Supp. 3d 1130 (N.D. Cal. 2015) ................................................................ 13

*Yi v. BMW of N. Am., LLC*,
   No. 2:17-cv-06467-SVW, 2018 WL 3359016 (C.D. Cal. May 24,
   2018) .................................................................................................................. 10

*Zuehlsdorf v. FCA US LLC*,
   No. EDCV181877JGBKKX, 2019 WL 2098352 (C.D. Cal. Apr. 30,
   2019) .................................................................................................................. 12

**Statutes**

15 U.S.C. § 2304(a)(4) ................................................................................................. 14

15 U.S.C. § 2310(e) ...................................................................................................... 14

18 U.S.C. § 1030(a)(4) ................................................................................................... 8

18 U.S.C. §§ 1030(a)(4), (a)(5)(A), (a)(5)(C) .............................................................. 4

18 U.S.C. § 1030(a)(6)(A) ............................................................................................. 9

18 U.S.C. §§ 1030 (g) & c(4)(A)(i)(I) ........................................................................... 9

Cal. Civil Code 1791.1(a) ............................................................................................ 11

Cal. Civil Code § 1793.2(d)(1) ............................................................................... 10, 11

Cal. Com. Code § 2725 ................................................................................................. 13

Cal. Com. Code § 2725(2) ............................................................................................ 14

Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq) ...................................... 1, 3

Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, et seq) ..................................... 1, 3

Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 et seq.) ............. *passim*

**INTRODUCTION**

According to Plaintiff Robert Fish, "[p]rior to and after purchasing his [2014 Tesla Model S 85 he] understood…that lithium-ion batteries such as the ones that are used to power Tesla vehicles will lose some capacity over time." Complaint ("Compl.") ¶ 13. According to Fish, he "understood this as consistent with the wording in Tesla's Battery and Drive Unit Limited Warranty which stated: 'The Battery, like all lithium batteries, will experience gradual energy or power loss with time and use.'" *Id*. Despite his understanding, Fish, who appears to be the founding partner of the law firm that represents him in this case, filed this putative class action against Tesla alleging Tesla violated various warranties, the Magnuson-Moss Warranty Act ("MMWA"), and the Computer Fraud and Abuse Act ("CFAA") because the lithium ion batteries in Tesla vehicles allegedly experience capacity loss as the vehicles age. Fish further alleges— purely on "information and belief"—that Tesla hides this gradual loss of capacity over time behind software updates. However, Fish fails to allege facts that make his allegations plausible particularly because Tesla's software updates improve functionality, comfort, and safety across all Tesla vehicles.[1] Fish's claims fail and his complaint should be dismissed in its entirety for the following reasons.

First, Fish's CFAA claims fail because he does not allege a lack of consent, authorization, permission or that Tesla exceeded any authorization through its software updates. And even if he had, Fish does not allege damages sufficient for a CFAA claim. Incidentally, it is not surprising Fish fails to plead a CFAA claim, since the CFAA was intended to combat destructive computer hacking, not to preclude standard industry software updates that enhance functionality, like Tesla's updates.

---

[1] *See* Tesla Software Updates at https://www.tesla.com/support/software-updates ("Over-the-air software updates introduce new features and updates to your car— making your car safer and more capable over time") (last visited May 7, 2021); *see also* Tesla Software Version 10.0 at https://www.tesla.com/support/software-version-10-0 (describing software updates to allow for automatic lane change, maps improvement, dashcam improvements, Bluetooth media improvements, and more) (last visited May 7, 2021)

Second, his express warranty claim under the Song-Beverly Consumer Warranty Act ("Song-Beverly") fails because he only presented his vehicle for warranty repair *once* and therefore did not provide Tesla with a reasonable number of opportunities to repair his vehicle. He has not otherwise alleged how Tesla breached any express warranty when its service technician performed a battery health check and "determined there was no issues with the battery." *Id*. at 25. It is unclear whether Fish is alleging a breach of implied warranty claim under Song-Beverly. But to the extent he is, Fish's implied warranty claim also fails for at least three reasons: (1) he does not allege a defect manifested during the applicable implied warranty period; (2) his claim is barred by the statute of limitations; and (3) he fails to allege facts showing his vehicle is unmerchantable, *i.e.*, he never alleges (nor can he) that because his vehicle allegedly has lost some battery capacity over time it renders the vehicle "unfit for its ordinary purpose of providing transportation."

Finally, Fish's MMWA claim fails because he has not pleaded predicate state warranty claims and he has not afforded Tesla a reasonable opportunity to cure the alleged defect.

Accordingly, Plaintiff's complaint must be dismissed in its entirety.

## FACTS ALLEGED

Fish, a resident of Irvine, California and the apparent founder of Fish IP Law[2] (Fish's counsel in this action), purchased a new 2014 Tesla Model S 85 in 2014. Compl. ¶¶ 6, 11. For several years following his purchase, Fish alleges he regularly got over 200 miles of range from an 80% drain of his battery, which he claims is "approximately equivalent to the maximum stated range." *Id*., ¶ 12. After over six years and nearly 60,000 miles later, Fish alleges he began to notice battery capacity loss in his vehicle. *Id*., ¶ 15. But before purchasing his vehicle, Fish understood that the type of batteries used to power Tesla vehicles normally lose some capacity over time. *Id*. ¶ 13. In fact,

---

[2] *See* https://fishiplaw.com/team/bob-fish/ (last visited May 7, 2021).

1  he admits that battery capacity loss "necessarily occurs from age and use of Lithium Ion

2  technology batteries." *Id*. ¶ 27. Despite this understanding, he alleges that Tesla's

3  batteries are defective because of alleged gradual battery capacity loss but does not

4  plausibly allege how the alleged loss is above or beyond what he understood and

5  expected. While he alleges that he measured his vehicle's battery capacity throughout

6  August 2020, he fails to provide any context for the circumstances under which his

7  vehicle was driven (e.g. environment and personal driving habits).[3] *Id*. ¶¶ 15-17, 20.

8  Rather, he concludes that Tesla "hide[s] failing battery capacity" from consumers

9  through software updates. *Id*. He does not deny, however, that Tesla's software updates

10  actually improve the functionality, safety, and comfort of Tesla's vehicles. *See* Tesla

11  Software Updates and Tesla Software Version 10.0, *supra*, at footnote 1.

12       On January 12, 2021, Fish filed this action. Dkt. 1. In conclusory terms, he alleges

13  that Tesla's conduct gives rise to three causes of action: (1) violation of the Computer

14  Fraud and Abuse Act (18 U.S.C. § 1030 et seq); (2) violation of the Magnuson-Moss

15  Warranty Act (15 U.S.C. §§ 2301, et seq); and (3) violation of Song-Beverly Consumer

16  Warranty Act (Cal. Civ. Code § 1790 et seq.). On March 5, 2021, Tesla filed its answer

17  to the complaint. Dkt. 11. Tesla now moves for judgment on the pleadings to dismiss

18  all of the claims asserted in Plaintiff's complaint.

19                          **LEGAL STANDARD**

20       The standard for assessing a Rule 12(c) motion for judgment on the pleadings is

21  the same as the standard for a Rule 12(b)(6) motion. *Enron Oil Trading & Trans. Co.*

22  *v. Walbrook Ins. Co., Ltd*., 132 F.3d 526, 529 (9th Cir. 1997). A complaint must

23  "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

24  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl.*

25  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept properly pleaded

26  factual allegations, but need not accept labels, conclusory allegations, or legal

27
28
---
[3] *See* https://www.tesla.com/support/range (last visited May 7, 2021) (explaining that actual range depends on many factors particularly environment and personal driving habits).

1  conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S.

2  at 555. Determining whether a complaint states a plausible claim is "a context-specific

3  task that requires the reviewing court to draw on its judicial experience and common

4  sense." *Iqbal*, 556 U.S. at 679.

**ARGUMENT**

## I.  Plaintiff fails to state a claim under the Computer Fraud and Abuse Act.

7         The CFAA prohibits intentional activity, either by accessing a computer without

8  authorization or exceeding authorized access, to obtain information from a protected

9  computer or cause the transmission of some code, and thereby causing damage to the

10 protected computer. 18 U.S.C. §§ 1030(a)(4), (a)(5)(A), (a)(5)(C). It is intended to

11 combat destructive computer hacking, not to disallow standard industry software

12 updates, like Tesla's updates. *See Brekka*, 581 F.3d at 1130 ("The [CFAA] was

13 originally designed to target hackers who accessed computers to steal information or to

14 disrupt or destroy computer functionality[.]"); *Shamrock Foods Co. v. Gast*, 535 F.

15 Supp. 2d 962, 965 (D. Ariz. 2008) (finding that the "legislative history supports a

16 narrow view of the CFAA"). Any contrary reading would be inconsistent with both that

17 direction and with the rule of lenity. *Id*. at 1134; *In re Facebook Privacy Litig*., 791 F.

18 Supp. 2d 705, 715-16 (N.D. Cal. 2011). It would make a tortfeasor out of any entity

19 issuing software updates that did not require users installing the software to

20 affirmatively consent to each and every feature of the software. The Court should reject

21 Fish's attempt to turn the CFAA on its head by using it to challenge activity that is

22 standard in the industry. Even setting aside Fish's improper attempt to apply the CFAA

23 to Tesla's software updates, Fish fails to allege a violation of the CFAA.

### A.  Plaintiff consented to Tesla software updates.

25         Fish's CFAA claim fails because his complaint lacks any allegations that he did

26 not initiate or consent to Tesla's software updates. Critical to a CFAA claim is that the

27 access to a protected computer is "without authorization" or "exceeds authorization."

28 18 U.S.C. §§ 1030(a)(4), (a)(5)(A), (a)(5)(C). Fish admits that he "accep[ted] all of the

over-the-air updates provided by Tesla" and confirmed owners have a choice to postpone software updates. Compl. ¶¶ 164, 64. By affirmatively choosing to update the software on his Model S 85, Fish consented to just the sort of access he now contends was "without authorization."[4]

Courts have dismissed CFAA claims on similar facts. In litigation arising from alleged harmful effects of iPhone updates and application downloads, for example, courts have held that CFAA claims premised on unauthorized access fail where the party consented to the allegedly damaging download. *See In re iPhone Application, Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) ("[U]sers who voluntarily installed software would have serious difficulty pleading unauthorized access under the CFAA.") (citations and quotations omitted).

In *In re iPhone Application*, plaintiffs alleged Apple violated the CFAA by collecting certain personal data from plaintiffs without their authorization after they downloaded applications to their iPhones. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1065. Though plaintiffs chose to download the offending applications, they nevertheless argued that they did not consent to continuous geolocation monitoring while using the applications. *Id.* at 1065. The court dismissed plaintiffs' unauthorized access claims reasoning that Apple had authority to access their devices as a result of the voluntary installation of the software. *Id.* at 1066.

Here, just as the plaintiffs in *iPhone Application* consented to Apple accessing their devices by downloading software that gave Apple access, Fish consented to receiving software updates by accepting software updates for years, and chose not to postpone them likely because, like most Tesla owners, he wanted the latest and greatest version of his vehicle. Compl. ¶¶ 164, 64. Indeed, Fish does not dispute the benefits he

---

[4] See *See* Tesla Software Updates, *supra*, at footnote 1 (explaining that owners have the option to install the update immediately or schedule for later).

received from Tesla's software updates throughout his ownership. *See* Tesla Software Updates and Tesla Software Version 10.0, *supra*, at footnote 1. Such software updates not only enhance existing features of Tesla vehicles but are also designed to provide new features ranging from entertainment to safety. *Id*. He also does not allege that he has chosen to stop receiving software updates since uncovering the "truth" about Tesla's allegedly deceptive software updates. Again, likely because he wants to take advantage of the various benefits Tesla's software updates provide. Because he voluntarily consented to software updates or otherwise permitted the alleged "access" to his Media Control Unit ("MCU") by choosing not to postpone the updates, his CFAA claim should be dismissed. *See In re Sony PS3 Other OS Litig*., 551 F. App'x 916, 923 (9th Cir. 2014) (affirming dismissal of CFAA claim because "Plaintiffs voluntarily installed the relevant software update," and thus "cannot allege actionable 'access' under the CFAA"); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) ("we hold that a person uses a computer 'without authorization' under [the CFAA] when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission)").

**B.    Plaintiff's "exceeds authorization" claim fails under both Rule 8 and Rule 9(b).**

Any allegation that Tesla exceeded Fish's authorization similarly falls flat. Because Plaintiff's CFAA claim sounds in fraud, it must be pleaded with specificity under Rule 9(b). *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009); *In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019) (applying Rule 9(b) to CFAA claim); *Blanda v. Butler*, No. 16-01008, 2016 WL 10842584, at *5 (C.D. Cal. Aug. 22, 2016) (same); *Ewiz Express Corp. v. Ma Laboratories, Inc*., 2015 WL 5680904, at * 6 (N.D. Cal. Sept. 28, 2015) (same); *Oracle Am. Inc. v. Serv. Key, LLC*, No. 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) (computer intrusion claims based on the notion that the defendant "fraudulently induced customers" need to satisfy Rule 9(b)). This requires identifying

"the who, what, when, where, and how" of the fraud. *Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted). Whatever the alleged "circumstances" of the fraud, including any purported omission, they must be pleaded with particularity.

As an initial matter, it is not entirely clear what Plaintiff is alleging. On the one hand he appears to argue that Tesla is hiding declining battery capacity through software updates (*see* Compl. ¶ 27) yet at the same time he argues that Tesla manipulates its software updates to display inflated driving ranges (*see id*. ¶ 30) but later alleges that Tesla manipulates its software updates to limit battery capacity (*see id*. ¶ 70). What *is* clear is that he pleads no facts to support any of these allegations. Indeed, the vast majority of Fish's allegations in support of his CFAA claim are based on information and belief. *See, e.g.,* Compl. ¶¶ 22, 24, 26, 27, 29, 30, 32-35, 46, 48, 49, 51-56, 58. This is a far cry from satisfying Rule 8 much less Rule 9(b). Fish's "exceeds authorization" claim should be dismissed for this reason alone.

Moreover, because Fish consented to the software updates, he necessarily consented to the changes made by that software. He does not allege any facts to establish how Tesla's software updates exceeded his authorization. For example, while he alleges that he did not consent to software updates limiting his battery capacity, he provides no facts to explain what that actually means. In fact, he provides no detail about whether his consent to Tesla's software updates came with any limitation. Accordingly, it is impossible for Tesla to determine how it may have exceeded his purported consent. Without such detail, Fish's complaint is nothing more than an improper attempt to secure discovery against Tesla without basis. *See IV Solutions, Inc. v. Connecticut General Life Insurance Company*, 13-9026-GW, 2015 WL 12843822, at *14 (C.D. Cal. Jan. 29, 2015) (Particularity requirement for fraud "serves several purposes: it ensures that a defendant has sufficient information to formulate a defense … it eliminates fraud actions in which all the facts are learned after discovery … it provides an increased measure of protection for a defendant's reputation"). Thus, Fish's claim should be

dismissed for this reason as well.

To the extent Fish is alleging that Tesla fraudulently misrepresented the contents of the software updates, he pleads no facts to support such an argument. Plaintiff alleges Tesla "acted fraudulently and under the guise of 'safety' as the reason for the software updates" and "failed to provide any information to its customers that such software updates would lead to a significant reduction in charging speed, performance, and severe loss of range for their vehicles." Compl. ¶¶ 70-71. These allegations are insufficient because he fails to identify how Tesla acted "under the guise of 'safety.'" For example, did Tesla make a statement to that effect? And if so, what statement and when? Without these required details, it is impossible for Tesla to know how it supposedly deceived Fish. *See Blanda*, 2016 WL 10842584, at *5 (dismissed CFAA claim because plaintiffs "failed to show with any particularity when each Defendant engaged in the alleged conduct, or how each Defendant exceeded the authorization for use of Plaintiffs' computers."); *Ewiz Express Corp.,* 2015 WL 5680904, at * 6 (dismissing CFAA claim because "the allegations that … [defendant] 'knowingly accessed Plaintiff's computer and webpage causing transmission of a command to delete information from the webpage and intentionally and/or recklessly caused damage and loss' are vague allegations that merely repeat the elements of a CFAA violation"). "[N]either [defendant] nor the Court should have to guess how Plaintiff contends these [computer intrusion laws] were violated." *Gonzales v. Uber Techs., Inc*., 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018).

Finally, such a claim requires alleging that Tesla obtained information or something "of value" which Fish has not alleged. 18 U.S.C. § 1030(a)(4); *Calendar Research LLC v. Stubhub, Inc*., No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391, at *22-23 (C.D. Cal. May 13, 2020). Accordingly, Fish's claim should be dismissed.

## C.    Plaintiff fails to allege Tesla's conduct caused harm to a "protected computer."

Fish's improper application of the CFAA is highlighted by his admission that the

underlying issue is an allegedly "defective" battery and not damage to an actual "computer," let alone a "protected computer." Compl. ¶¶ 27, 31, 49, 51, 56, 66, 130.

In order to allege a CFAA claim, Fish must allege damage to a "protected computer." *See* 18 U.S.C. § 1030(a)(6)(A)("…and as a result of such conduct, intentionally causes damage without authorization, to a protected computer"); *Synopsys, Inc. v. Ubiquiti Networks, Inc*., 313 F. Supp. 3d 1056, 1072 (N.D. Cal. 2018) ("the claim under § 1030(a)(5) requires a showing of *damage* to the computer systems")(emphasis in original).

Fish alleges no such damage. Rather, he alleges that Tesla "attempted to hide failing battery capacity … behind software updates" such that Plaintiff and others "avoided demanding battery replacements under warranty because they were fooled into thinking that the losses they were experiencing in battery capacity were due to software updates instead of failing batteries." Compl. ¶ 27; *see also* ¶¶ 31, 49, 51, 56, 66, 130. In other words, Fish has not alleged that Tesla's software updates caused any actual damage to a "protected computer." Instead, he concedes that the damage he is alleging is based on an allegedly "defective" battery. Thus, Plaintiff has not alleged damage to a "protected computer" sufficient to allege damages under the CFAA.

**D. Fish fails to allege sufficient damages to assert a CFAA claim.**

Fish does not allege facts sufficient to show that Tesla's actions caused at least $5,000 in economic damage as is required to assert a CFAA claim. 18 U.S.C. §§ 1030 (g) & c(4)(A)(i)(I). In fact, even if what Plaintiff alleges about the software updates hiding the defective battery were true and sufficient to establish damage to a "protected computer," Plaintiff suffered no actual damage from the alleged deception via software updates because he is still within Tesla's 8-year battery warranty. *Id*. ¶¶ 25, 162. This is underscored by his own actions – he brought his vehicle to a Tesla technician and demanded a warranty replacement but was ultimately denied one at that time because the technician determined that there was no problem with Fish's battery *Id*. ¶ 25. Thus,

1  because Fish's CFAA claim is meritless, he also brings breach of warranty claims. For

2  the reasons explained below, however, those fail too.

3  **II.    Plaintiff's Song-Beverly express warranty claim fails.**

4          Plaintiff's Song-Beverly express warranty claim fails because he did not provide

5  Tesla with a reasonable number of opportunities to repair his vehicle. The Song-Beverly

6  Act requires a plaintiff to prove that "the manufacturer or its representative in this state

7  [could] not service or repair the goods to conform to the applicable express warranties

8  after a reasonable number of attempts [.]" Cal. Civil Code § 1793.2(d)(1) (emphasis

9  added). Because the word "attempts" is plural, a single attempt cannot constitute a

10 violation of the Act. *Silvio v. Ford Motor Co*., 109 Cal. App. 4th 1205, 1207-08 (2003)

11 ("The statute does not require the manufacturer to make restitution or replace a vehicle

12 if it has had only one opportunity to repair that vehicle."); *see also Knafo v. Jaguar*

13 *Land Rover N. Am., LLC*, No. CV-18-01401-AB-KSX, 2019 WL 6482231, at *2 (C.D.

14 Cal. July 12, 2019) (acknowledging that "[c]ourts have interpreted the language of this

15 provision to require a plaintiff to show multiple attempts to repair the product to a

16 confirming state."). For Fish to be entitled to relief for any particular issue, he must

17 show that he brought his vehicle in for the repair of that particular issue on more than

18 one occasion. *See Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874,

19 875 (9th Cir. 2014); *see also Yi v. BMW of N. Am., LLC*, No. 2:17-cv-06467-SVW, 2018

20 WL 3359016, at *4 (C.D. Cal. May 24, 2018) ("To constitute a 'reasonable number of

21 repair attempts,' a plaintiff must present the vehicle to the manufacturer or seller more

22 than once, complaining of the same defect each time").

23         Here, Fish simply claims that he took his vehicle in to a Tesla service center once,

24 the service technician performed a battery health check and determined at that time that

25 "there was no issue with his battery." Compl. ¶ 25. Fish complains that after Tesla's

26 alleged "refusal" to replace his battery, he continued to experience reduced battery

27 capacity but does not allege he ever brought his vehicle back to a Tesla service center

28 for assessment or repair. That he claims to have experienced continued reduced battery

1   capacity is insufficient to plead any breach of the warranty. Rather, he must allege he

2   provided Tesla with a reasonable number of opportunities to repair his vehicle. He

3   pleads no such facts. His express warranty claim should be dismissed for this reason.

4   Cal. Civil Code § 1793.2(d)(1).

5        Further, Fish seems to allege that Tesla refused to repair his vehicle but his

6   allegations make clear that Tesla found no problems with it during the *one* time he asked

7   Tesla to assess it for battery issues. Simply because the service technician was unable

8   to replicate the issue Fish was allegedly experiencing does not equate to a refusal to

9   repair. *See, e.g., Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF, 2018 WL

10  8130613, at *7 (C.D. Cal. Nov. 14, 2018) ("the Court is unpersuaded by Plaintiff's

11  argument that Honda 'refused' to repair the vehicles when the dealerships could not

12  duplicate the alleged issue and thus did not initiate any repairs—these facts simply

13  cannot support the conclusions that the dealership 'refused' to repair, as the dealer could

14  not identify any issue that required repair."); *In re MyFord Touch Consumer Litig.*, 46

15  F. Supp. 3d 936, 970-71 (N.D. Cal. 2014) (dismissing plaintiffs' breach of express

16  warranty claim and explaining that plaintiffs are not excused from bringing their cars in

17  for repairs because they believe to do so would be futile).

**III.   Plaintiff's Song-Beverly implied warranty claim fails.**

19       To start, it is unclear whether Fish is even pleading an implied warranty claim.

20  *See* Count III (alleging violation of Song-Beverly Act generally). But to the extent that

21  he is, his implied warranty claim fails.

22       Fish does not allege facts showing that his battery allegedly losing capacity

23  somehow made his vehicle unmerchantable. *See* Cal. Civil Code 1791.1(a). The core

24  test of merchantability is fitness for ordinary purpose, which is shown if the product is

25  "in safe condition and substantially free of defects." *Isip v. Mercedes-Benz USA, LLC*,

26  155 Cal. App. 4th 19, 26-27 (2007). The alleged problem "must be sufficiently serious

27  so as to render the product unfit for its ordinary purpose." *Hovsepian v. Apple, Inc*., No.

28  08-5788-JF-PVT, 2009 WL 2591445, at *6 (N.D. Cal. Aug. 21, 2009) (citing *Am.*

1  *Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 (1995).) This
2  requires proof of "a defect that is so basic it renders the vehicle unfit for its ordinary
3  purpose of providing transportation." *Am. Suzuki*, 37 Cal. App. 4th at 1296. "[D]efects
4  based on aesthetics or mere annoyances do not render a vehicle unmerchantable."
5  *Resnick v. Hyundai Motor Am., Inc*., No. CV-16-00593-BRO-PJWX, 2017 WL
6  1531192, at *12 (C.D. Cal. Apr. 13, 2017); *see also Zuehlsdorf v. FCA US LLC*, No.
7  EDCV181877JGBKKX, 2019 WL 2098352, at *10 (C.D. Cal. Apr. 30, 2019)
8  (confirming that "[u]nlike express warranties, an implied warranty of merchantability
9  requires only a "minimum level of quality'" and that "[i]t is sufficient for a vehicle to
10 meet the minimum requirement if it is fit for driving."). A vehicle is not unmerchantable
11 if it can still be driven. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc*., 992 F.
12 Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claims by Plaintiffs
13 who "have not alleged that they stopped using their vehicles"); *see also Kent v. Hewlett-*
14 *Packard Co*., No. 09-5341-JF-PVT, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010).

15     Fish alleges no facts that would support an inference that his vehicle cannot be
16 operated safely, or even that the alleged reduced range prevented him from driving his
17 vehicle, or that he ever stopped driving his vehicle. *See Troup v. Toyota Motor Corp*.,
18 545 Fed. Appx. 668, 669 (9th Cir. 2013) ("The Troups failed to allege that their Prius
19 was unfit for its intended purpose, as the alleged defect did not compromise the
20 vehicle's safety, render it inoperable, or drastically reduce its mileage range … the
21 defect alleged by the Troups did not implicate the Prius's operability; rather it merely
22 required the Troups to refuel more often. Absent more, the complaint fails to state a
23 plausible claim for breach of the implied warranty of merchantability."). In fact, he has
24 not plausibly alleged that the battery capacity loss is above or beyond what he
25 understood as normal. Compl. ¶¶ 13, 27.

26     Even setting that aside, Fish's breach of implied warranty claim fails. Fish does
27 not allege a defect manifested during the applicable implied warranty period, which,
28 under California law is no longer than one year from the time of purchase. *Atkinson v.*

1  *Elk Corp. of Texas*, 142 Cal. App. 4th 212, 231 (2006); *Peterson v. Mazda Motor of*

2  *Am., Inc*., 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014) (holding a plaintiff must allege

3  "facts to show that her vehicle was unmerchantable within the implied warranty period

4  set by the Song-Beverly Act."); *Marchante v. Sony Corp. of Am*., 801 F. Supp. 2d 1013,

5  1021 (S.D. Cal. 2011) (dismissing Song-Beverly claims where plaintiffs did not "report

6  any issues arising during the one year period" for new vehicles and "did not bring suit

7  until … after the implied warranties have expired.").

8          Where a plaintiff fails to allege specific facts supporting a claim that the alleged

9  defect existed within the one-year implied warranty period, the claim must be

10 dismissed. *Peterson*, 44 F. Supp. 3d at 972; *see also Marchante*, 801 F. Supp. 2d at

11 1021; *Grodzitsky v. Am. Honda Motor Co., Inc*., No. 2:12-cv-1142-SVW-PLA, 2013

12 WL 2631326, at *11 (C.D. Cal. June 12, 2013) (dismissing Song-Beverly implied

13 warranty "[b]ecause the windows at issue in this case did not begin to fail until well

14 more than a year after they were purchased."); *Valencia v. Volkswagen Grp. Of Am.*

15 *Inc*., 199 F. Supp. 3d 1130, 1140 (N.D. Cal. 2015) (dismissing Song-Beverly Act claim

16 because, while plaintiffs alleged braking defect caused rapid wear and required early

17 replacement, "there is no allegation that the brakes did not function when purchased. In

18 fact, Plaintiffs allege that it took thousands of miles of normal use for the brakes to show

19 signs of the braking defect."). To hold otherwise "would render the duration provision

20 of the Song-Beverly Act meaningless because [e]very defect that arises could

21 conceivably be tied to an imperfection existing during the implied warranty period."

22 *Peterson*, 44 F. Supp. 3d at 971-72.

23          Here, because Fish purchased his vehicle in 2014, the one-year warranty period

24 expired in 2015, approximately five years before Fish alleged his vehicle experienced

25 "significant loss in actual range traveled." FAC ¶¶ 15, 25. His implied warranty claim

26 fails because he has not, and cannot, allege facts showing any defect in his vehicle

27 existed during the one-year implied warranty period.

28

Finally, Fish's implied warranty claim is time barred. The statute of limitations for breach of implied warranty is four years. Cal. Com. Code § 2725. The four-year limitations period, moreover, begins to accrue on the day the product is delivered:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal. Com. Code § 2725(2).

Thus, Fish's claim for breach of the implied warranty accrued in 2014, the year of delivery. FAC ¶¶ 6, 11. This suit was filed on January 12, 2021—more than six years after the statute of limitations expired.

**IV.          Plaintiff's Magnuson-Moss Warranty Act claim fails.**

Fish, having failed to adequately plead predicate state warranty claims, cannot pursue individual MMWA claims. "[C]laims under the Magnuson-Moss stand or fall with [Plaintiff's] express and implied warranty claims under state law." *Clemens*, 534 F.3d at 1022; *accord Robbins v. Hyundai Motor Am.*, 2014 WL 4723505, at *10 (C.D. Cal. Aug. 7, 2014) (dismissing MMWA claim for failure to adequately allege state warranty claim).

Moreover, under 15 U.S.C. § 2310(e), Fish's MMWA claims also fail unless he afforded Tesla a "reasonable opportunity to cure" the alleged defect. Because Fish has not pleaded he properly presented his vehicle more than once, as required, his MMWA claims fail for this additional reason. 15 U.S.C. § 2304(a)(4) ("if the product … contains a defect or malfunction after a reasonable number of *attempts* by the warrantor to remedy …") (emphasis added); *see Marchionna v. Ford Motor Co*., 1995 WL 476591, at *11 (N.D. Ill. Aug. 10, 1995) (the word "attempts" in 15 U.S.C. § 2304(a)(4) connotes at least two tries).

**CONCLUSION**

1        For the reasons described above, Plaintiff's complaint should be dismissed in its

2  entirety.

3

4

5

6

7

8

9  Dated: May 7, 2021                         Respectfully submitted,

10                                            SHOOK, HARDY & BACON L.L.P.

11

12                                 By: */s/ Joan R. Camagong*

13                                          AMIR M. NASSIHI

14                                          JOAN R. CAMAGONG

15                                          MICHAEL L. MALLOW
                                         RACHEL A. STRAUS

16

17                                          Attorneys for Defendant
                                         TESLA INC.

18

19

20

21

22

23

24

25

26

27

28