John van Loben Sels (Bar No. 201354)
jvanlobensels@fishiplaw.com
Soyeun D. Choi (Bar No. 211344)
schoi@fishiplaw.com
Matthew J. C. Lusich (Bar No. 320299)
mlusich@fishiplaw.com
FISH IP LAW, LLP
2603 Main Street, Suite 1000
Irvine, CA 92614-4271
Telephone: (949) 943-8300
Facsimile:  (949) 943-8358

*Attorneys for Plaintiff, Robert Fish and the
Putative Class.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FISH, individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Delaware corporation,<br><br>Defendant. | Case No. 8:21-cv-00060-JLS-JDE<br><br>**Judge:** Hon. Josephine L. Staton<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT TESLA INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**Date:** October 15, 2021<br>**Time:** 10:30 a.m.<br>Courtroom: 10-A |

# Table of Contents

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL BACKGROUND.................................................................4

III.    LEGAL STANDARD............................................................................6

IV.     ARGUMENT .........................................................................................7

   A. Plaintiff's Pleadings Facially Support Its Claim Under The Computer Fraud And Abuse Act. ....................................................................7

   1.  Defendant was not authorized to reduce performance of the Subject Vehicle, and otherwise exceeded its authorized access in doing so. .................8

   2.  Plaintiff pled the CFAA claims with requisite specificity under Rule 8 and this Courts jurisprudence. ...................................................................10

   3.  The Subject Vehicle is a "protected computer."........................................12

   4.  Plaintiff alleges damages in excess of the $5,000 required by statute. ......13

   B. Plaintiff's Song-Beverly Express Warranty Claim Alleges A Reasonable Number Of Attempts To Repair The Defective Battery. ........................13

   C. Plaintiff Alleges A Plausible Claim For Breach Of Implied Warranty Under Song-Beverly. ............................................................................16

   D. Plaintiff's Claims Under Magnuson-Moss Warranty Act Are Supported By The State Law Allegations And Otherwise Allege A Reasonable Opportunity To Cure.........................................................................19

   E. Leave To Amend Should Be Granted.....................................................20

V.      CONCLUSION......................................................................................20

1

### Table of Authorities

2

3 **Cases**

4 *Am. Suzuki Motor Corp. v. Superior Court*,

5    37 Cal. App. 4th 1291 (1995)..................................................................20

6 *In re Apple Inc. Device Performance Litig.*,

7    347 F. Supp. 3d 434 (N.D. Cal. 2018) ..................................................10

8 *Arteaga v. Carmax Auto Superstores W. Coast, Inc.*,

9    No. CV-14-1888 RSWL (CWx), 2014 U.S. Dist. LEXIS 95593 (C.D. Cal. July

10    11, 2014)........................................................................... 18, 19

11 *Ashcroft v. Iqbal*,

12    556 U.S. 662 (2009). ..................................................... 6, 14

13 *Barakezyan v. BMW of N. Am.*,

14    715 F. App'x 762 (9th Cir. 2018) .........................................21

15 *Brand v. Hyundai Motor Am.*,

16    226 Cal. App. 4th 1538 (2014)......................................... 20, 21

17 *Cafasso v. General Dynamics C4 Systems, Inc.*,

18    637 F.3d 1047 (9th Cir. 2011)..............................................6

19 *Calendar Research LLC v. StubHub, Inc.*,

20    No. 2:17-cv-04062-SVW-SS, 2017 U.S. Dist. LEXIS 222745 (C.D. Cal. Aug.

21    16, 2017)...........................................................................15

22 *Carmen v. San Francisco Unified Sch. Dist.*,

23    982 F. Supp. 1396 (N.D. Cal. 1997) ...................................7

24 *In re City of Huntington Beach*,

25    No. SACV 10-641-JST (RNBx), 2011 U.S. Dist. LEXIS 164922 (C.D. Cal. Apr.

26    4, 2011)...............................................................................7

27 *Daniels-Hall v. National Education Association*,

28    629 F.3d 992 (9th Cir. 2010)................................................6

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 8:21-cv-00060-JLS-JDE

*Donlen v. Ford Motor Co.*,

   217 Cal. App. 4th 138 (2013)...................................................................23

*E.D.C. Techs. v. Seidel*,

   No. 16-cv-03316-SI, 2016 U.S. Dist. LEXIS 118612

   (N.D. Cal. Sep. 1, 2016) ........................................................... 8, 11, 14

*eBay Inc. v. Digital Point Solutions, Inc.*,

   608 F. Supp. 2d 1156 (N.D. Cal. 2009) ..............................................12

*E-Fab, Inc. v. Accountants, Inc. Servs.*,

   153 Cal. App. 4th 1308 (2007)..........................................................23

*Ehrlich v. BMW of North Am., LLC*,

   801 F. Supp. 2d 908 (C.D. Cal. 2010)..............................................22

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,

   132 F.3d 526 (9th Cir. 1997)................................................................7

*Facebook, Inc. v. Maxbounty, Inc.*,

   274 F.R.D. 279 (N.D. Cal. 2011) .......................................................12

*Gates v. Buechter*,

   No. CV 14-904 DDP (JC), 2018 U.S. Dist. LEXIS 235926, (C.D. Cal. Dec. 27,

   2018)............................................................................................ 7, 24

*Gonzalez v. Drew Indus.*,

   750 F. Supp. 2d 1061 (C.D. Cal. 2007) ............................................17

*Harris v. County of Orange*,

   682 F.3d 1126 (9th Cir. 2012)......................................................... 7, 24

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,

   No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13,

   2012)....................................................................................... 17, 18

*In re iPhone Application*,

   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................10

*Jolley v. Carmax Auto Superstores W. Coast, Inc.*,

   No. CV 15-09382 RGK (SSx), 2016 U.S. Dist. LEXIS 190672

   (C.D. Cal. Feb. 8, 2016) ....................................................................... 17, 18, 19

*Kearns v. Ford Motor Co.*,

   567 F.3d 1120 (9th Cir. 2009)...................................................................... 12, 13

*Keegan v. Am. Honda Motor Co., Inc.*,

   838 F. Supp. 2d 929 (C.D. Cal. 2012)................................................................22

*LVRC Holdings LLC v. Brekka*,

   581 F.3d 1127 (9th Cir. 2009)........................................................................9

*Merritt Hawkins & Associates, LLC v. Gresham*,

   948 F. Supp. 2d 671 (N.D. Tex. 2013).............................................................15

*Mexia v. Rinker Boat Co., Inc.*,

   174 Cal. App. 4th 1297 (2009)........................................................... 20, 22, 23

*Mosqueda v. Am. Honda Motor Co.*,

   443 F. Supp. 3d 1115 (C.D. Cal. 2020) .............................................................21

*Multiven v. Cisco*,

   725 F. Supp. 2d 887 (N.D. Cal. 2010) ...............................................................12

*In re MyFord Touch Consumer Litig.*,

   46 F. Supp. 3d 936 (N.D. Cal. 2014) ...............................................................21

*NetApp, Inc. v. Nimble Storage*,

   41 F. Supp. 3d 816 (N.D. Cal. 2014). ......................................................... 12, 13

*Oracle Am. Inc. v. Serv. Key, LLC*,

   No. 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012).............. 12, 13

*Oracle Am., Inc. v. TERiX Comput. Co.*,

   2014 U.S. Dist. LEXIS 561 (N.D. Cal. Jan. 3, 2014) .........................................13

*Oregel v. American Isuzu Motors, Inc.*,

   90 Cal. App. 4th 1094 (2001).................................................................... 16, 19

*Parenteau v. GM, LLC*,

   No. CV 14-04961-RGK (MANx), 2015 U.S. Dist. LEXIS 31184

   (C.D. Cal. Mar. 5, 2015) ................................................................23

*San Miguel v. HP Inc.*,

   317 F. Supp. 3d 1075 (N.D. Cal. 2018) ............................................10

*Tietsworth v. Sears, Roebuck & Co.*,

   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ....................................... 17, 18

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,

   472 F. Supp. 3d 649 (N.D. Cal. 2020) ...............................................9

**Statutes**

15 U.S.C. § 2301, *et seq.*............................................................................3

18 U.S.C. § 1030 ................................................................................... 1, 10

18 U.S.C. § 1030(a)(4)................................................................ 8, 9, 13, 14

18 U.S.C. § 1030(a)(5)...............................................................................11

18 U.S.C. § 1030(a)(5)(A) .............................................................. 8, 9, 10

18 U.S.C. § 1030(a)(5)(C) .............................................................. 8, 9, 11

18 U.S.C. § 1030(e)(1)...............................................................................15

18 U.S.C. § 1030 (e)(2)(B)........................................................................15

18 U.S.C. § 1030(g) ..................................................................................16

Cal. Civ. Code § 1790 *et seq.* ...................................................................2

**Rules**

Fed. R. Civ. P. 8 .................................................................................. 11, 14

Fed. R. Civ. P. 9(b) ....................................................................... 11, 12, 13, 14

Fed. R. Civ. P. 12(b)(6)...............................................................................6

Fed. R. Civ. P. 12(c)........................................................................... 7, 24

Plaintiff Robert Fish ("Plaintiff") by and through attorneys Fish IP Law, LLP and on behalf of the putative class submits the following Memorandum of Points and Authorities in Opposition to Defendant Tesla, Inc.'s ("Defendant" or "Tesla") Motion for Judgment on the Pleadings, Dkt. 23 ("Motion"), as follows:

## I.   INTRODUCTION

Plaintiff is one of Tesla's early customers for its Model S, and his complaint details serious defects in the battery life and performance as well as his experience with Tesla after repeatedly raising his concerns to the company. Indeed, Plaintiff's complaint raises claims on behalf of a purported class of Tesla owners who – according to the complaint – suffered similar harms caused by the flaws in Tesla battery systems and its related software.  Plaintiff brought his claims in this way because the harms Plaintiff suffered and the alleged class continues to suffer are precisely the type which the Federal Rules intend for class action treatment.  By its motion, Defendant Tesla contends it is nevertheless entitled to judgment, because according to Defendant, Plaintiff cannot as a matter of law prevail on his claims.  However, for the reasons detailed below, Defendant's motion fails and it must be denied in all respects.

Specifically, Defendant's motion attempts to confuse the Court by misconstruing Plaintiff's allegations to mislead the Court into finding Plaintiff cannot prevail.  To the contrary, a simple reading of Plaintiff's allegations under controlling law shows Plaintiff's complaint plainly provides a basis for relief on each of the challenged claims.  For example, under the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030 *et seq.*, common to all claims Plaintiff alleges the computer system of his Tesla Model S ("Subject Vehicle"), is a protected computer; it communicates with networked devices; and is in the flow of interstate commerce; just as the law requires.  Plaintiff also alleges economic damages common to all claims of at least $10,000, in excess of the $5,000 required by the CFAA.

Next, specific to each of the three separate CFAA claims raised, Plaintiff first alleges he has had no choice but to use Telsa's over-the-air software updates. If Plaintiff had failed to use the required Tesla updates, he would no longer be eligible for warranty coverage and his car is at risk of failure from faulty software. All purported class members are subject to the same enforced use of the Tesla software updates.  Under these circumstances, Tesla's argument for a finding of implied authorization by Tesla owners of the OTA updates is simply not credible. Plaintiff then alleges Tesla used the OTA updates to upload damaging software to Plaintiff's vehicle, resulting in substantially reduced performance, reduced battery capacity, and reduced charging speed.  For purposes of resolving Defendant's motion, Plaintiff's allegations on this subject must be treated as true.  Further, the Court cannot in resolving this motion find an implied authorization by Plaintiff for Defendant to access Plaintiff's computer system in the Subject Vehicle.  That is, the Court cannot find in resolving this motion, based on Plaintiff's complaint, that Plaintiff willingly granted Tesla access to his vehicle in order for Tesla to reduce performance of the vehicle.  Critically, for purposes of resolving this motion, Plaintiff expressly states in his complaint that no such authorization was given. Lastly, Plaintiff alleges he gave no authorization to Defendant to access the vehicle systems to damage them.  These allegations taken together, as detailed in the complaint and below, provide a basis for relief under the CFAA, and Defendant's motion fails to refute this basis point.

Similarly, under the Song-Beverly Consumer Warranty Act, CAL. CIV. CODE § 1790 *et seq.*, Plaintiff alleged an extended dialogue with Tesla in support of his express warranty claim, including the fact that Plaintiff discussed the state of his battery system, how to monitor the battery system, and Plaintiff's repeat demands for warranty replacement, each of which Tesla denied.  In addition to the narrative, Plaintiff specifically alleges he gave Defendant reasonable opportunities to repair the defective battery systems.  Plaintiff further alleges a blanket policy of

2

Tesla to deny battery warranty claims to avoid the expensive $20,000 to $25,000 cost associated with replacing Tesla vehicle batteries.  Indeed, Plaintiff alleges that nearly all battery warranty claims to Tesla are denied.  Plaintiff's allegations under controlling law support the claim, and Defendants argument of lack of reasonable attempts to repair or any repair at all fall flat.

Next, for Plaintiff's claims under implied warranty, Plaintiff alleged approximately 50% battery retention for his vehicle after 60,000 miles of use, resulting in less than 150 miles of potential range.  A substantial loss of battery charge, and range, as Plaintiff expressly alleges, renders the car unmerchantable and unfit for driving.  Moreover, given the Tesla vehicle's inflated projection (by Tesla) or estimate of range at any given time (by Tesla), Plaintiff cannot drive the vehicle any meaningful distance for fear of being stranded with an empty or low battery, known as "range anxiety."  Moreover, as Plaintiff alleges, the defect in the batteries existed at the time of manufacture and was only discoverable after time allows them to be detected.  Under those circumstances and controlling law, any applicable statute of limitations are tolled.

Next, applicable state law concerning express and implied warranty claims are each met by Plaintiff's allegations in the complaint, where each claim alleges a proper and sufficient basis for recovery.  That is, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, are likewise supported by Plaintiff's allegations in the complaint, and Defendant's arguments to the contrary fail.

Finally, to the extent the Court finds that any of Plaintiff's claims are found to lack sufficient allegations, Plaintiff requests leave to amend to supplement the allegations.  Under applicable law, leave to ament should be freely granted unless the moving party establishes that such an amendment would be futile (a showing Defendant's motion does not approach).  The Court should also be mindful of the fact that on August 16, 2021, Plaintiff filed a Motion for Leave to Amend the Complaint, Dkt. 30, pursuant to this Court's May 12, 2021 Scheduling Order.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 5:20-cv-06846

The First Amended Complaint adds further class Plaintiffs as well as makes more detailed allegations that defeat all of Defendant's challenges to the operative complaint.  In the alternative to denying Defendant's motion, Plaintiff requests the Court grant leave to file the First Amended Complaint, which would render Defendant's present motion moot.

## II.   FACTUAL BACKGROUND

Plaintiff Fish bought the Subject Vehicle directly from Defendant in 2014. Compl. at ¶ 11.  When Plaintiff bought the vehicle and for the next several years Plaintiff regularly got mileage per battery charge equivalent to that promised by Defendant, roughly 265 miles.  Compl. at ¶ 12.  Plaintiff operated the vehicle within the battery guidelines recommended by Defendant, rarely charging the battery in excess of 80% state of charge and depleting the battery to less than 20% state of charge.  Compl. at ¶ 14.  In 2020, Plaintiff began to notice a substantial reduction in driving range available on a charged battery.  Compl. at ¶ 15.  To test the reduced range, Plaintiff confirmed a 99% charged battery only delivered a maximum of 150 miles, barely 60% of the rated range.  *Id.*

In August 2020, Plaintiff contacted Defendant's service station to complain about the substantial loss of range and battery capacity he experienced.  Compl. at ¶ 16.  The service station instructed Plaintiff on how to monitor the battery, and Plaintiff complied over the month of August, monitoring and logging his battery consumption and available batter capacity.  Compl. at ¶ 17.  Plaintiff's testing over August 2020 demonstrated his battery capacity was typically 51% to 56% of what was promised by Tesla.  Compl. at ¶¶ 18-19.  For example, for Plaintiff's 85kWh capacity battery in the Subject Vehicle, the battery was only delivering/storing 43.16kWh of power.  Compl. at ¶¶ 17-18.  Based on these results, and after hours of testing, the battery pack and components were clearly deficient or defective, and eligible for replacement under warranty.  Compl. at ¶ 24.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 5:20-cv-06846

After logging his battery health and developing the data showing the Subject Vehicle's battery was defective, Plaintiff reported the results to Defendant's technicians and made a warranty claim for replacement.  Compl. at ¶ 25.  However, despite Plaintiff's data the technician performed a "battery health check" and told Plaintiff his experience was normal and did not merit a battery replacement.  *Id.*  After weeks of working with Defendant, the technician denied Plaintiff's request for a battery replacement.  *Id.*  When pressed further, the technician again denied the warranty claim.  *Id.*  Based on his experience, and having surveyed other owners, Plaintiff alleges Defendant has a blanket policy of denying warranty replacement claims for defective batteries.  Compl. at ¶ 26.  Plaintiff alleges Defendant's refusal to replace defective batteries breaches express and implied warranties under state and federal statutes.  Compl. at ¶ 29.[1]

Aside from the defective battery system in the Subject Vehicles and breach of warranty, Plaintiff further claims Tesla manipulated the computer systems of the Subject Vehicle without authorization, resulting in reduced performance, reduced battery capacity, reduced range, and reduced charging speed in violation of the CFAA.  Compl. at ¶¶ 119-35.  Plaintiff alleges the computer systems of the Subject Vehicle are protected computers under CFAA.  Compl. at ¶ 129.  Plaintiff alleges he was neither informed by Tesla nor knew that the software updates included code that would reduce performance, range, battery capacity, or charging speed of the Subject Vehicle.  Compl. at ¶ 130.  Plaintiff further alleges he did not give permission for Tesla to install the damaging updates nor to cause any damage.  Compl. at ¶¶ 130 and 132.  Plaintiff further alleges Defendant's actions

_____

[1] The First Amended Complaint adds further allegations as to the number of opportunities provided Defendant to repair or replace the defective battery systems, and further illustrate Tesla's pattern or routinely denying warranty claims for the battery system.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 5:20-cv-06846

1  substantial damaged the battery system of the Subject Vehicle, valued at $20,000
2  to $25,000.

3  **III.   LEGAL STANDARD**

4          Motions for judgment on the pleadings are governed by the same standards
5  applicable to Rule 12(b)(6) motions to dismiss.  *Cafasso v. General Dynamics C4*
6  *Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).  In deciding a motion to
7  dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual
8  allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A court
9  must draw all reasonable inferences in the light most favorable to the non-moving
10  party, here Plaintiff.  *See Daniels-Hall v. National Education Association*, 629
11  F.3d 992, 998 (9th Cir. 2010).  "To survive a motion to dismiss, a complaint must
12  contain sufficient factual matter, accepted as true, to state a claim to relief that is
13  plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted).  "A claim has
14  facial plausibility when the plaintiff pleads factual content that allows the court to
15  draw the reasonable inference that the defendant is liable for the misconduct
16  alleged." *Id.* (citation omitted).  "Judgment on the pleadings is therefore
17  appropriate only 'when the moving party clearly establishes on the face of the
18  pleadings that no material issue of fact remains to be resolved and that it is
19  entitled to judgment as a matter of law.'"  *In re City of Huntington Beach*, No.
20  SACV 10-641-JST (RNBx), 2011 U.S. Dist. LEXIS 164922, at *8-9 (C.D. Cal.
21  Apr. 4, 2011) (citing *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132
22  F.3d 526, 529 (9th Cir. 1997)).

23          "Rule 12(c) does not mention leave to amend; however, '[c]ourts have
24  discretion to grant leave to amend in conjunction with 12(c) motions, and may
25  dismiss causes of action rather than grant judgment.'"  *Gates v. Buechter*, No. CV
26  14-904 DDP (JC), 2018 U.S. Dist. LEXIS 235926, at *13-14 (C.D. Cal. Dec. 27,
27  2018) (quoting *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396,
28  1401 (N.D. Cal. 1997)).  Dismissing a cause of action with prejudice under Rule

12(c) is "not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

## IV. ARGUMENT

### A. Plaintiff's Pleadings Facially Support Its Claim Under The Computer Fraud And Abuse Act.

The CFAA provides civil relief to a party suffering loss or damage from another's inappropriate access to the party's protected computer. That is what Defendant did when it used a software update to reduce the battery capacity, charge speed, and performance of the Subject Vehicle. Plaintiff pled facts, with sufficient particularity, to facially support claims under 18 U.S.C. Sections 1030(a)(4), 1030(a)(5)(A), and 1030(a)(5)(C) of the CFAA. Plaintiff alleged how the Subject Vehicle was a protected computer under CFAA, and that Defendant exceeded its authorized access to the Subject Vehicle by uploading a software update that damaged the car, reducing its performance and value. Plaintiff alleged the Subject Vehicle was damaged or suffered a loss of value in excess of $5,000.

Defendant attempts to misconstrue Plaintiff's pleadings by relying on strawmen rather than the allegations and requiring a heightened pleading standard where none exist. Looking past Defendant's distractions, the allegations of the complaint accepted as true, with all inferences in favor of Plaintiff, facially support each element of Plaintiff's CFAA claims. *See, e.g.*, *E.D.C. Techs. v. Seidel*, No. 16-cv-03316-SI, 2016 U.S. Dist. LEXIS 118612, at *10 (N.D. Cal. Sep. 1, 2016) (denying motion to dismiss CFAA claims).

**1. Defendant was not authorized to reduce performance of the Subject Vehicle, and otherwise exceeded its authorized access in doing so.**

The three CFAA claims asserted by Plaintiff have three different authorization requirements:  section 1030(a)(4) requires a person who at least "exceeds authorized access" to a protected computer; section 1030(a)(5)(A) requires a person "causes damage without authorization;" and section 1030(a)(5)(C) requires a person access a protected computer "without authorization."  Plaintiff has pled facts to support each claim.

With respect to the CFAA section 1030(a)(4) claim, "a person who 'exceeds authorized access,' has permission to access the computer, but accesses information on the computer that the person is not entitled to access." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009).  Plaintiff alleges he was neither informed by Tesla nor knew that the software updates included code that would reduce performance, range, battery capacity, or charging speed.  Compl. at ¶ 130.  Plaintiff further alleges he did not give permission for Tesla to install the damaging updates.  Compl. at ¶¶ 130 and 132.  Nor could Plaintiff authorize an unknown act.  These factual allegations meet the definition of exceeding authorized access under jurisprudence of this district because Defendant accessed and acted on his vehicle in a manner beyond the scope of any implied authorization from Plaintiff.  *See, e.g.*, *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, 472 F. Supp. 3d 649, 681 (N.D. Cal. 2020) (finding defendant accessing portions of a server without permission as exceeding authorized access).

*In re iPhone Application* relied on by Defendant is inapplicable because, as noted by the court, the plaintiffs did not assert an "exceeded authorized access" claim.  844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012).  Here, Plaintiff alleges he was not informed of the contents of the software update that substantially reduced

performance of the Subject Vehicle, and did not authorize Defendant to transmit or install any such damaging update.  Compl. at ¶¶ 130 and 132.

With respect to the CFAA section 1030(a)(5)(A) claim, "the relevant question is whether Plaintiffs have adequately pled that [Defendant] caused damage to their [device] without permission and did so intentionally."  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018). Under the CFAA, "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8). Here, Plaintiff alleged Defendant knowingly and intentionally damaged the Subject Vehicle by introducing code that reduced performance, battery capacity, and charging speed, and Plaintiff did not authorize such damage.  Compl. at ¶¶ 130 and 132.  Such allegations adequately plead a claim under CFAA section 1030(a)(5)(A) in this district.  *See, e.g.*, *Id.* at 404 (finding sufficient pleading under 1030(a)(5)(A) from allegations software update reduced performance of device, the reduction was intended, and plaintiffs agreed to update but not to damage); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1086 (N.D. Cal. 2018) (upholding claim against motion to dismiss where plaintiffs alleged they authorized software update, not that they authorized damage to their devices).

With respect to the CFAA section 1030(a)(5)(C), Plaintiff alleges owners are helpless and have no choice but to accept software updates from Defendant. Compl. at ¶¶ 63, 64, and 74.  Plaintiff alleges the Subject Vehicles cannot operate without Defendant's software.  Compl. at ¶ 63.  While owners have the option to postpone software updates, Plaintiff alleges owners are required to accept software updates to maintain eligibility for warranty repair and coverage.  Compl. at ¶¶ 64 and 74.  Under this oppressive scheme, the allegations support that Plaintiff did not authorize Defendant to access the Subject Vehicle, and any implied authorization was coerced by Defendant at risk of the vehicle failing or no longer eligible for warranty coverage.

### 2. Plaintiff pled the CFAA claims with requisite specificity under Rule 8 and this Courts jurisprudence.

Plaintiff's claims under the CFAA do not require the specificity that fraud claims do under a Rule 9(b) pleading standard as errantly asserted by Defendant, and Plaintiff's claims are sufficiently alleged per the Rule 8 notice standard. *E.D.C. Techs. v. Seidel*, No. 16-cv-03316-SI, 2016 U.S. Dist. LEXIS 118612, at *10 (N.D. Cal. Sep. 1, 2016) (rejecting the Rule 9(b) pleading standard). Compl. at 133. First, the text of CFAA section 1030(a)(5) do not reference "fraud," and courts in this district find no basis to impute a fraud pleading standard. *See, e.g.*, *NetApp, Inc. v. Nimble Storage*, 41 F. Supp. 3d 816, 833 (N.D. Cal. 2014).

"Second, most CFAA cases in this district have not applied Rule 9(b)'s pleading standards to all CFAA claims." *Id.* For example, in *eBay Inc. v. Digital Point Solutions, Inc.*, the court ruled eBay's CFAA allegations based on violations of a user agreement were adequately pleaded, and that "'fraud' under the CFAA only requires a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act." 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009); *see also Facebook, Inc. v. Maxbounty, Inc.*, 274 F.R.D. 279, 284 (N.D. Cal. Mar. 28, 2011) (citing *eBay* and stating "[t]he Court sees no reason to depart from its previous analysis" with respect to Rule (9)(b)); *Multiven v. Cisco*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010) ("For purposes of the CFAA, '[t]he term "defraud" . . . simply means wrongdoing and does not require proof of common law fraud.'").

Third, courts reviewing the cases of *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) and *Oracle Am. Inc. v. Serv. Key, LLC*, No. 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) relied upon by Defendant find claims under CFAA section 1030(a)(4) do not *require* fraud be pled or alleged. *See NetApp*, 41 F. Supp. 3d at 834 (noting *Service Key* specifically alleged fraudulent

inducement and fraudulent trafficking as part of its CFAA claims, and *Kearns* only requires a fraud pleading standard when fraudulent conduct is part of a claim). Thus, "precedents require that CFAA claims under § 1030(a)(4) be pleaded with specificity only when fraudulent conduct is specifically alleged as the basis for the wrongdoing." *Id.*, *see also Oracle Am., Inc. v. TERiX Comput. Co.*, 2014 U.S. Dist. LEXIS 561, at *16 (N.D. Cal. Jan. 3, 2014) ("Even accepting *Service Key* as persuasive authority, the court does not conclude that Rule 9(b) applies to Oracle's CFAA allegations in this case. The reason is that Oracle's allegations here cannot be said to rely entirely on a course of conduct that is fraudulent under California law").

Here, Plaintiff does not plead fraud as the basis of his CFAA claims. Defendant's arguments to the contrary misread Plaintiff's allegations with respect to CFAA. Rather, Plaintiff alleges Defendant knowingly and intentionally uploaded and installed code to the Subject Vehicle, and that code altered or damaged the vehicle by diminishing performance, reducing battery capacity, and reducing charging speeds. Compl. at ¶¶ 70, 130-33. The wrongdoing alleged by Plaintiff in the CFAA claims is uploading the damaging software update and neither requires fraud nor invokes the Rule 9(b) pleading standard. *E.D.C.*, 2016 U.S. Dist. LEXIS 118612, at *10 (N.D. Cal. Sep. 1, 2016) (rejecting Rule (9)(b) standard where Plaintiff alleged Defendants engaged in wrongdoing under CFAA rather than pattern of fraud).

Thus, the pleadings summarized above meet the notice standard of Rule 8 as they allow the reasonable inference that Defendant is liable for the alleged manipulation and damage caused to a protected computer without authorization. *Iqbal*, 556 U.S. at 678.

Contrary to Defendant's further argument, Plaintiff sufficiently pled Defendant obtained something of value by its unauthorized access and damage to the Subject Vehicle, as required by CFAA section 1030(a)(4). Plaintiff alleges the

11

software updates further caused the Subject Vehicle to report inflated driving ranges, representative of a healthy battery.  Compl. at ¶ 30.  Plaintiff alleges inflating such driving metrics hides the fact that the battery health is declining to the point of requiring a replacement under Defendant's express warranty.  Compl. at ¶¶ 27 and 133.  The alleged value obtained by Defendant's unauthorized access and damage to the Subject Vehicle is to avoid many thousands of dollars in costs for warranty replacements.  Compl. at ¶¶ 103 and 133.

### 3.  The Subject Vehicle is a "protected computer."

Plaintiff alleged facts sufficient to show the MCU of the Subject Vehicle, which includes the Battery Management System, is a protected computer under the CFAA, and Defendant's contention to the contrary is simply unsupported. The CFAA requires a protected computer to be an electronic data processing device with logic or storage functions used in interstate commerce or communication.  18 U.S.C. § 1030(e)(1) and (e)(2)(B).  For example, "[p]leading specific facts that the defendant accessed a computer connected to the internet is sufficient to establish that the accessed computer was 'protected.'"  *Merritt Hawkins & Associates, LLC v. Gresham*, 948 F. Supp. 2d 671, 674 (N.D. Tex. 2013); *see also Calendar Research LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2017 U.S. Dist. LEXIS 222745, at *19-20 (C.D. Cal. Aug. 16, 2017) (same).

Here, Plaintiff claims the MCU provides data processing, GPS, communication functions, and accesses over-the-air software updates.  Compl. at ¶¶ 54 and 132.  Such features are enabled over a network, or internet. Defendant's software modification of the MCU altered the Battery Management System, significantly reducing performance, battery capacity, and charging speed. Compl. at ¶¶ 130 and 132.  As such, Plaintiff adequately pleads the MCU, and its interconnected systems, or a protected computer under CFAA.

12

Defendant's argument to the contrary conflates Plaintiff's claims. Defendant asserts no damage is alleged to the computer systems of the Subject Vehicle, but rather there is alleged damage to the Subject Vehicle's batteries. However, Plaintiff alleges both.  The manipulation of the MCU and Battery Management System by Defendant reduced, or damaged, the function or operation of the Battery Management System such that the system was no longer able to provide advertised or expected battery or vehicle performance.  Compl. at ¶¶ 130 and 132.  Separately, Plaintiff alleges that the battery or battery components of the Subject Vehicles are also defective.  The two claims are not mutually exclusive.

### 4.   Plaintiff alleges damages in excess of the $5,000 required by statute.

Plaintiff alleges economic damages under CFAA section 1030(g) in excess of $5,000.  Namely, Defendant's software manipulation of Plaintiff's vehicle resulted in 56% to 51% battery capacity compared to that promised by Defendant. Compl. at ¶¶ 18 and 19.  Plaintiff alleges the battery system of the Subject Vehicle is valued at $20,000 to $25,000.  Compl. at ¶¶ 62 and 133.  On its face, Plaintiff pleads damages of at least ~$10,000, or half the value of the battery system, easily meeting the requirements of the CFAA.

### B. Plaintiff's Song-Beverly Express Warranty Claim Alleges A Reasonable Number Of Attempts To Repair The Defective Battery.

Defendant argues the Plaintiff's claim under the Song-Beverly Act fail for lack of reasonable attempts to repair the Subject Vehicle.  However, the allegations of the complaint show a maintained dialogue between Plaintiff and representatives of Defendant.[2]

---

2 Further, the First Amended Complaint includes allegations that additional plaintiffs provided Defendant with reasonable opportunities to repair or replace the defective battery systems under warranty.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 5:20-cv-06846

1    Under the Song-Beverly Act, the consumer's obligation is only to give the

2    manufacturer or its representative "a reasonable *opportunity* to repair the vehicle."

3    *Oregel v. American Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103 (2001).

4    "Whether or not the manufacturer's agents choose to take advantage of the

5    opportunity, or are unable despite that opportunity to isolate and make an effort to

6    repair the problem, are matters for which the consumer is not responsible." *Id.* at

7    1103-04.  Applying this standard, courts in this district have found sufficiently

8    pled express warranty claims where (i) consumers remotely contacted a

9    manufacturer and were not made whole, (ii) repair or replacement was denied

10   remotely twice, (iii) the filing of a law suit alleging defects provided reasonable

11   opportunity, and (iv) simple allegations that manufacturers were unable to repair

12   after reasonable opportunity or number of attempts.  *See, e.g.*, *Horvath v. LG*

13   *Elecs. MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist.

14   LEXIS 19215, at *18-19 (S.D. Cal. Feb. 13, 2012) (finding repeat phone calls and

15   failure to remedy sufficient); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d

16   1123, 1141 (N.D. Cal. 2010) (finding two phone calls and refusal to remedy

17   sufficient); *Gonzalez v. Drew Indus.*, 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007)

18   (finding filed suit alleging defect and 50 day pendency sufficient to plead

19   reasonable opportunity); *Jolley v. Carmax Auto Superstores W. Coast, Inc.*, No.

20   CV 15-09382 RGK (SSx), 2016 U.S. Dist. LEXIS 190672, at *7 (C.D. Cal. Feb.

21   8, 2016) (finding simple allegation of reasonable opportunity sufficient); *Arteaga*

22   *v. Carmax Auto Superstores W. Coast, Inc.*, No. CV-14-1888 RSWL (CWx), 2014

23   U.S. Dist. LEXIS 95593, at *11 (C.D. Cal. July 11, 2014) (same).

24   Plaintiff's allegations meet each of the thresholds for reasonable

25   opportunity defined in the district's jurisprudence above.  In August 2020 Plaintiff

26   first contacted Defendant to complain about the defective battery in the subject

27   vehicle.  Compl. at ¶ 16.  The representative told Plaintiff how to monitor the

28   battery capacity.  *Id.*  Plaintiff then followed the representative's instruction and

14

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 5:20-cv-06846

monitored the battery capacity throughout August 2020.  Compl. at ¶ 17.  Based on the battery capacity logged by Plaintiff in August 2020, his battery capacity was as low as 50% of expected and clearly eligible for a warranty replacement. Compl. at ¶¶ 18-21.  Plaintiff reported the August 2020 results to a representative of Defendant and made a warranty claim to replace the defective battery.  Compl. at ¶ 25.  However, despite Plaintiff following Defendant's prior instructions, the representative dismissed Plaintiff's claim stating the battery was fine.  *Id.* Plaintiff again requested his battery be replaced under warranty, and was again denied.  *Id.*  Plaintiff has logs of the extended communication with representatives of Defendant and can amend them to the pleadings if required.  Such allegations are analogous to *Horvath* and *Tietsworth*, where allegations of at least two remote contacts with defendant for warranty remedy that were either failed or were refused sufficed to state a claim.

Based on the allegations viewed most favorably to Plaintiff, Plaintiff engaged in an extended process with Defendant over a month to determine his battery was eligible for warranty replacement only to be refused more than once. Further, Plaintiff's reasonable number of attempts alleged above do not define the limit of Plaintiff's contacts with Defendant regarding the battery defects, but are rather a baseline.  As Plaintiff further alleges he gave Defendant a reasonable opportunity to conform the Subject Vehicle to the express warranties, and Defendant was unable to perform.  Compl. at ¶ 165.  The allegations viewed as a whole show Plaintiff has sufficiently plead an express warranty state law claim. *See Jolley*, 2016 U.S. Dist. LEXIS 190672, at *7 (finding simple allegation of reasonable opportunity sufficient); *Arteaga*, 2014 U.S. Dist. LEXIS 95593, at *11 (same).

Moreover, that Defendant performed no repairs is irrelevant.  Plaintiff followed Defendant's instructions to monitor and diagnose the battery defects of the Subject Vehicle and, after logging such details for a month per instruction,

15

was denied warranty replacement with the waive of a hand.  Compl. at ¶ 25.

Plaintiff further alleges that Defendant has a standing practice of refusing repair or

replacement of defective batteries under warranty.  Compl. at ¶ 26.  Plaintiff

provided Defendant the opportunity to repair; that Defendant refused to repair or

replace is not Plaintiff's responsibility.  *Oregel*, 90 Cal. App. 4th at 1103.

### C. Plaintiff Alleges A Plausible Claim For Breach Of Implied Warranty Under Song-Beverly.

Plaintiff sufficiently alleged a breach of implied warranty claim under the

Song-Beverly Act.  Contrary to Defendant's argument, Plaintiff alleged the

affected vehicles are unsafe and include substantial defects related to the battery

systems, the core component of a battery electric vehicle.  Further, Plaintiff

alleged the defect was present in the Subject Vehicle when it was sold to Plaintiff,

either could not manifest until a later date or was obscured by Defendant

artificially inflating the projected range and battery capacity of the Subject

Vehicle.  Plaintiff's further alleged that any statute of limitation is tolled as

Defendant actively concealed the defect through inflated range and battery

capacity, or Plaintiff could not have otherwise discovered the defect until the

substantial loss of range he experienced.

Contrary to Defendant's argument, "a merchantable vehicle under the

statute requires more than the mere capability of just getting from point 'A' to

point 'B.'"  *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546 (2014)

(distinguishing *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291

(1995) as "[i]t was in the context of discussing cases in which *no damage had*

*been suffered.*") (emphasis in original).  Indeed, Plaintiff's allegations regarding

the battery system defects make clear that Plaintiff cannot get from A to B, but

rather only halfway to B, due to the ~50% retention of battery capacity in his

vehicle.

In addition to basic vehicle operation, "an important consideration under the implied warranty is consumer safety." *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009). Indeed, California courts have found adequate pleading of breach of implied warranty for vehicles where the defect causes surprise, distraction, or is spontaneous. *See, e.g.*, *Brand*, 226 Cal. App. 4th at 1547 (2014) (finding vehicle sunroof that opens and closes spontaneously is substantial safety hazard); *Barakezyan v. BMW of N. Am.*, 715 F. App'x 762, 763 (9th Cir. 2018) (plausible safety hazard for alleged loud, long, high-pitched noise that has distracted drivers and pedestrians); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) (finding malfunction in the MyFord Touch system caused driver to become distracted sufficient to state a claim for breach of implied warranty); *Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1128 (C.D. Cal. 2020) (finding inexplicable braking without warning raises safety concern supports implied warranty claim).

Here, Plaintiff has alleged he experiences actual driving range that is substantially less than the actual driving range for a given battery charge, for example a difference of 90 miles. Compl. at ¶ 30. Such a huge miscalculation creates the inference that Plaintiff or drivers are inevitably surprised to find they will run out of battery before reaching their destination, or must constantly check the projected range of the car throughout a drive. In either event, the operation of the car caused by the defective battery creates a safety hazard further supporting Plaintiff's claim for breach of implied warranty. Moreover, Plaintiff further alleges the defective battery packs cause Defendant's cars to spontaneously erupt in flame. Compl. at ¶¶ 75-101. Such spontaneous combustion is a further safety hazard caused by the defective battery system that supports a claim for breach of implied warranty.

Plaintiff alleges Defendant Tesla obscured the defective battery systems to avoid claims for battery repair or replacement under warranty. Compl. at ¶¶ 27,

112-116.  The defective battery system was defective at the time of purchase and, in part based on the latency of the defect, and in part from Defendant's alleged efforts to hide the problem, Plaintiff could not discover the latent defect until the substantial reduction in range and battery capacity occurred in August 2020. Compl. at ¶¶ 16 and 112.  As California Appellate and Federal courts have held, there is no requirement in Song-Beverly that a latent defect be discovered within a year of purchase.  *See, e.g.*, *Mexia*, 174 Cal. App. 4th 1297 (2009).

The *Mexia* court explicitly held "[t]he implied warranty of merchantability may be breached by a latent  defect undiscoverable at the time of sale."  *Id.* at 174 Cal. App. 4th at 1304.  "In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery."  *Id.* at 1305.  Courts in this district follow *Mexia*.  *See, e.g.*, *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) (rejecting one-year limit and finding allegation defect existed at the time of purchase but did not manifest until more than one year after sufficient to state a claim); *Ehrlich v. BMW of North Am., LLC*, 801 F. Supp. 2d 908, 922 (C.D. Cal. 2010) (rejecting one-year limit and finding allegations of latent defect discovered four years later as stating an implied warranty claim); *Parenteau v. GM, LLC*, No. CV 14-04961-RGK (MANx), 2015 U.S. Dist. LEXIS 31184, at *30 (C.D. Cal. Mar. 5, 2015) (same); *see also*, *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 149 (2013) (citing *Mexia* with approval).

As Plaintiff was unable to identify the latent defect in the battery systems of the Subject Vehicle, the statute of limitations should be tolled on the basis of the delayed discovery doctrine.  The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). "[J]udicial decisions have declared the discovery rule applicable in situations

1  where the plaintiff is unable to see or appreciate a breach has occurred." *Id.*
2  "[T]he limitations period does not accrue until the aggrieved party has notice of
3  the facts constituting the injury." *Id.*

4       Here, Plaintiff alleges Defendant owed Plaintiff a duty to disclose the true
5  nature of the Subject Vehicle, Defendant misrepresented the quality and character
6  of the vehicle, and Plaintiff reasonably relied on Defendant's assertions.  Compl.
7  at ¶ 115.  Plaintiff alleges Defendant maintains absolute exclusivity over its
8  software updates, and Plaintiff could not know the contents thereof.  Compl. at ¶
9  113.  Plaintiff also alleges Defendant acted to obscure or hide the fact that
10  Plaintiff's battery systems were defective and suffered from substantial
11  performance loss, range loss, reduced battery capacity, and slowed charging
12  speeds.  Compl. at ¶ 27.  As Plaintiff was unable to discover the latent defects in
13  the Subject Vehicle's battery systems based on Defendants actions as alleged, the
14  discovery rule tolls the statute of limitations until August 2020, when Plaintiff
15  alleges he became aware of the issues.

16  **D. Plaintiff's Claims Under Magnuson-Moss Warranty Act Are**
17      **Supported By The State Law Allegations And Otherwise Allege A**
18      **Reasonable Opportunity To Cure.**

19       Contrary to Defendant's arguments, Plaintiff's claims under the Song-
20  Beverly Consumer Warranty Act are sufficiently pleaded as noted above, and
21  properly support federal claims under the Magnuson-Moss Warranty Act.
22  Moreover, as pled Plaintiff engaged in extended discussion with Defendant
23  regarding the status of his battery system and how to monitor it.  Compl. at ¶¶ 16-
24  25.  After repeatedly requesting a battery replacement under warranty, Defendant
25  repeatedly refused.  Compl. at ¶ 25.  Plaintiff provided Defendant the required
26  reasonable opportunities to remedy the battery defect, and properly pleads a cause
27  of action under federal warranty statutes.

28

### E. Leave To Amend Should Be Granted

Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment. *Gates*, 2018 U.S. Dist. LEXIS 235926, at *13-14. Dismissing a cause of action with prejudice under Rule 12(c) is "not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Harris*, 682 F.3d 1126, 1131 (9th Cir. 2012). In the event the Court dismisses any of Plaintiff's claims, Plaintiff respectfully requests leave to amend.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings or in the alternative give Plaintiff leave to amend the complaint.

Dated: September 10, 2021        By: */s/ John D. van Loben Sels*
                                 John D. van Loben Sels, Esq.

                                 Attorney for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's CM/ECF system on September 10, 2021.

Dated: September 10, 2021            */s/ John D. van Loben Sels*
                                     John van Loben Sels

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 5:20-cv-06846