Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Tel: (424) 285-8330 | Fax: (424) 204-9093

Amir M. Nassihi (SBN 235936)
anassihi@shb.com
Joan R. Camagong (SBN 288217)
jcamagong@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2600
San Francisco, CA 94104
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
TESLA INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ROBERT PLAINTIFF, an individual, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Delaware corporation<br><br>Defendant. | Case No. 8:21-cv-00060-JLS-JDE<br><br>Assigned to Hon. Josephine L. Staton Courtroom 10A, 10th Floor<br><br>**DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:        October 15, 2021<br>Time:        10:30 a.m. |

# TABLE OF CONTENTS

INTRODUCTION.................................................................................. 1

ARGUMENT ....................................................................................... 2

I.     Plaintiff fails to state a CFAA Claim...................................................... 2

       A.     Plaintiff fails to allege a violation of any of the individual CFAA provisions he invokes................................................................ 2

    1.     Plaintiff does not allege Tesla violated Section 1030(a)(4)............... 2

    2.     Plaintiff's allegations preclude his CFAA Section 1030(a)(5)(C) claim based on Tesla's allegedly "unauthorized" access. ........ 4

    3.     Plaintiff's Section 1030(a)(5)(A) also fails............................ 5

  B.     Plaintiff fails to allege Tesla's conduct caused harm to a "protected computer." ................................................................... 7

  C.     Plaintiff fails to allege sufficient damages to assert a CFAA claim.... 7

II.    Plaintiff's Song-Beverly express warranty claim fails................................ 8

III.   Plaintiff's Song-Beverly implied warranty claim fails. ...........................10

       A.     Plaintiff does not allege his vehicle is unmerchantable. ........ 10

       B.     Plaintiff cannot allege facts showing any manifestation of the defect in his vehicle during the one-year implied warranty period. ................................................................. 13

       C.     Plaintiff's implied warranty claim is time barred. ............... 15

IV.    Plaintiff's Magnuson-Moss Warranty Act claim fails. ...........................16

CONCLUSION .........................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arteaga v. Carmax Auto Superstores W. Coast, Inc.*,
    2014 WL 3505527 (C.D. Cal. July 11, 2014)...............................................10

*Atkinson v. Elk Corp. of Texas*,
    142 Cal. App. 4th 212 (2006)...............................................13

*Barakezyan v. BMW of N. Am.*,
    715 F. App'x 762 (9th Cir. 2018)...............................................12

*Blanda v. Butler*,
    2016 WL 10842584 (C.D. Cal. Aug. 22, 2016)...............................................4

*Cadena v. Am. Honda Motor Co.*,
    2018 WL 8130613 (C.D. Cal. Nov. 14, 2018)...............................................10

*Capitol Audio Access, Inc. v. Umemoto*,
    980 F. Supp. 2d 1154 (E.D. Cal. 2013)...............................................6

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
    169 Cal. App. 4th 116 (2008)...............................................15

*Clark v. Am. Honda Motor Co., Inc.*,
    2021 WL 4260232 (C.D. Cal. Sept. 14, 2021)...............................................9, 10

*Custom Packaging Supply, Inc. v. Phillips*,
    2016 WL 1532220 (C.D. Cal. Apr. 15, 2016)...............................................6

*Ewiz Express Corp. v. Ma Laboratories, Inc.*,
    2015 WL 5680904 (N.D. Cal. Sept. 28, 2015)...............................................4

*Farmers Ins. Exchange v. Steele Ins.*
    2013 WL 3872950 (E. D. Cal. July 25, 2013)...............................................6

*Ferris v. Ford Motor Co.*,
    2019 WL 1100376 (N.D. Cal. Mar. 8, 2019)...............................................14

*Garcia v. Ford Motor Co.*,
    2019 WL 3297354 (E.D. Cal. July 23, 2019)...............................................15

*Gertz v. Toyota Motor Corp.*,
  2011 WL 13142144 (C.D. Cal. Apr. 28, 2011) ...........................................11

*Glam & Glits Nail Design, Inc. v. NotPolish, Inc.*,
  2021 WL 2317410 (S.D. Cal. June 7, 2021) ................................................. 3

*Gonzalez v. Drew Indus.*,
  750 F. Supp. 2d 1061 (C.D. Cal. 2007)......................................................10

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
   2013 WL 2631326 (C.D. Cal. June 12, 2013) ............................................13

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
  2012 WL 2861160 (S.D. Cal. Feb. 13, 2012)...........................................8, 9

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018)........................................................ 5

*In re Apple Inc. Device Performance Litigation*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019)...................................................... 4

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*,
  2019 WL 6998668 (C.D. Cal. Sept. 5, 2019).............................................14

*In re Gilead Sciences Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..................................................................10

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014).................................................. 10, 12

*In re Sony PS3 Other OS Litig.*,
  551 F. App'x 916 (9th Cir. 2014)................................................................ 5

*Jolley v. Carmax Auto Superstores W. Coast, Inc.*,
  2016 WL 8923917 (C.D. Cal. Feb. 8, 2016)...............................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................. 4

*Kingston v. FCA US LLC*,
  2019 WL 7753446 (C.D. Cal. Dec. 10, 2019).............................................12

*Lee v. Retail Store Employee Bldg. Corp.*,
  2017 WL 346021 (N.D. Cal. Jan. 24, 2017)................................................. 4

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

4836-1742-9500 V2

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ....................................................... 5

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2020 WL 3961975 (N.D. Cal. July 13, 2020)...............................15

*Marchante v. Sony Corp. of Am.*,
   801 F. Supp. 2d 1013 (S.D. Cal. 2011) .......................................13

*McGee v. Mercedes-Benz USA, LLC*,
   2020 WL 1530921 (S.D. Cal. Mar. 30, 2020) ..............................13

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ....................................................14

*Mosqueda v. Am. Honda Motor Co.*,
   443 F. Supp. 3d 1115 (C.D. Cal. 2020)........................................12

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ............................................ 6

*Nguyen v. Nissan N. Am., Inc.*,
   487 F. Supp. 3d 845 (N.D. Cal. 2020)..........................................15

*Oracle Am. Inc. v. Serv. Key, LLC*
   2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ................................. 4

*Peterson v. Mazda Motor of Am., Inc.*,
   44 F. Supp. 3d 965 (C.D. Cal. 2014) ..................................... 13, 14

*Resnick v. Hyundai Motor Am., Inc.*,
   2017 WL 1531192 (C.D. Cal. Apr. 13, 2017)...............................11

*Tietsworth v. Sears*,
   2010 WL 1268093 (N.D. Cal. Mar. 31, 2010).......................... 9, 11

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)......................................... 9

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) (en banc)......................................... 5

*Valencia v. Volkswagen Grp. Of Am. Inc.*,
   199 F. Supp. 3d 1130 (N.D. Cal. 2015)........................................13

iv

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) ........................................................... 1, 2, 3, 6

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006) ...................................................... 4

*Williams v. Tesla, Inc.*,
    2021 WL 2531177 (N.D. Cal. June 21, 2021) ............................... 14

*Zuehlsdorf v. FCA US LLC*,
    2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) ............................... 11

**Statutes**

Cal. Civil Code § 1793.2(d)(1) ........................................................ 8

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ........................ *passim*

Magnuson-Moss Warranty Act ................................................... 1, 15

Song-Beverly Act ...................................................................... 8, 14

**Rules**

Fed. R. Civ. P. 8 ......................................................................... 3

Fed. R. Civ. P. 9(b) .................................................................... 3, 4

**INTRODUCTION**

Plaintiff Robert Fish's opposition to Tesla Inc.'s Motion for Judgment on the Pleadings does not save his claims.

In an attempt to rescue his hacking claim pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*., Plaintiff argues that "a simple reading of Plaintiff's allegations under controlling law shows Plaintiff's complaint plainly provides a basis for relief on each of the challenged claims." Unfortunately for Plaintiff, the controlling law on at least a portion of his CFAA claim changed on June 3, 2021 when the United States Supreme Court decided *Van Buren v. United States*, 141 S. Ct. 1648 (2021). Not only does *Van Buren* reiterate that the purpose of the CFAA is not remotely how Plaintiff is trying to apply it in this case, but it makes clear (to the extent it was not before) that Plaintiff does not allege Tesla "exceeded its authority" when Plaintiff accepted Tesla's software updates to improve the functionality, comfort, and safety of his vehicle. This is just one of a host of substantive deficiencies that plague Plaintiff's CFAA claim.

Plaintiff's warranty claims are equally deficient. Try as he might, Plaintiff cannot contort his allegations to sufficiently allege that he presented his vehicle more than once for a warranty repair, as is required to pursue his breach of express warranty claim. The Court should reject Plaintiff's arguments that his vehicle is unmerchantable because he believes it suffers from reduced battery capacity; that the alleged defect he first noticed six years after he purchased his vehicle manifested during the applicable one-year implied warranty period; and that there is a basis to toll the statute of limitations for his breach of implied warranty claim. Finally, Plaintiff's Magnusson Moss Warranty Act ("MMWA") claim fails because he has not pled predicate state warranty claims and he has not afforded Tesla a reasonable opportunity to cure the alleged defect.

Plaintiff tacitly acknowledges the deficiencies in his Complaint by requesting leave to amend the Complaint to add additional allegations related to his experience

with his vehicle. He also refers the Court to the proposed amended complaint he filed as an attachment to his motion for leave to file an amended complaint. According to Plaintiff, his proposed amended complaint "adds further class Plaintiffs as well as makes more detailed allegations that defeat all of Defendant's challenges to the operative complaint." It does not, but even if it did, Plaintiff cannot save his claims by referring the Court to other proposed named plaintiffs' claims or a pending motion to amend his complaint (which Tesla anticipates opposing).

For the reasons discussed below, and in Tesla's moving brief, Tesla respectfully requests that the Court grant its Motion for Judgment on the Pleadings and dismiss Plaintiff's Complaint in its entirety.

## ARGUMENT

### I.   Plaintiff Fails to State a CFAA Claim.

#### A.   Plaintiff fails to allege a violation of any of the individual CFAA provisions he invokes.

As Plaintiff acknowledges, in order to prevail on his CFAA claim, he must demonstrate that pursuant to Section 1030(a)(4), Tesla "exceed authorized access" to a protected computer (which Plaintiff claims is the Media Control Unit ("MCU") in his vehicle); pursuant to Section 1030(a)(5)(A), Tesla "caused damage without authorization" to the MCU; or, pursuant to Section 1030(a)(5)(C), Tesla accessed the MCU in his vehicle "without authorization." Opp. at 8. Plaintiff fails to allege Tesla engaged in any actions that violated any of these sections of the CFAA.

#### 1.   Plaintiff does not allege Tesla violated Section 1030(a)(4).

On June 3, 2021, after Tesla filed its moving brief, but over three months before Plaintiff filed his Opposition, the United States Supreme Court issued *Van Buren*. 141 S. Ct. 1648. In *Van Buren*, the Supreme Court narrowly construed "exceeded authorized access." *Id*. at 1657-1662. The Supreme Court explained that an individual "exceeded authorized access" only when that individual obtained information from particular parts

of a computer to which they would not normally have access (commonly known as "hacking"). *Id*. at 1662. In other words, pursuant to *Van Buren*, Plaintiff cannot pursue his "exceeded authorized access" claim because Plaintiff not only authorized Tesla to access the MCU in his vehicle by downloading the software updates, he also authorized Tesla to make the updates to the MCU. *Id*.

Thus, pursuant to *Van Buren*, even if Tesla did something Plaintiff believes is nefarious through the software update, *e.g.*, limit the amount of battery capacity, that is irrelevant to a CFAA "exceed authorized access" inquiry. This is consistent with Ninth Circuit precedent. *See Glam & Glits Nail Design, Inc. v. NotPolish, Inc.*, No. 21-CV-0052-GPC-DEB, 2021 WL 2317410, at *7-8 (S.D. Cal. June 7, 2021) (citing cases, including *Van Buren*, and explaining whether the defendant "misappropriated the information she was authorized access to is a separate question outside the CFAA's scope"). What matters is that Plaintiff allowed Tesla access to the MCU to make updates to it, presumably because, like most Tesla owners, he wanted the latest and greatest version of his vehicle. Under *Van Buren* and Ninth Circuit law, Plaintiff has failed to allege that Tesla exceeded any authorization Plaintiff provided to it. On the contrary, Plaintiff's allegations demonstrate that he affirmatively allowed Tesla to access and update the software in his vehicle. Compl. ¶ 78; *see also id*. at ¶¶ 74, 63. He simply did not want Tesla to allegedly "limit the amount of battery capacity and charging speed." That is neither a crime nor a tort under the CFAA.

Plaintiff's Section 1030(a)(4) claim fails for another reason. In response to Tesla's argument that the claim fails under Rule 8 and Rule 9(b), Plaintiff concedes that his claim does not satisfy Rule 9(b). Opp. at 10. Rather, Plaintiff argues that he does not need to satisfy Rule 9(b) because he does not plead fraud as the basis of his CFAA claim. Not true. According to Plaintiff Tesla "acted fraudulently and under the guise of 'safety' as the reason for the updates." Compl. ¶ 71; *see also id*. ¶ 78 ("[a]ll of these limitations were unlawfully, fraudulently, and deceptively delivered to their cars as part

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

of Tesla' so-called software 'updates' for 'safety'' of their vehicles"); *id*. at ¶ 57 ("Plaintiff's use of the Subject Vehicle is substantially and significantly affected by Tesla's fraudulent concealment and manipulation of software."). In other words, according to Plaintiff, Tesla fraudulently misrepresented that the reason for the software updates was "safety." This is exactly the type of CFAA claim that Courts find are subject to Rule 9(b). *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009); *In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019) (applying Rule 9(b) to CFAA claim); *Blanda v. Butler*, No. 16-01008, 2016 WL 10842584, at *5 (C.D. Cal. Aug. 22, 2016) (same)*; Ewiz Express Corp. v. Ma Laboratories, Inc*., 2015 WL 5680904, at * 6 (N.D. Cal. Sept. 28, 2015) (same); *Oracle Am. Inc. v. Serv. Key, LLC*, No. 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) (computer intrusion claims based on the notion that the defendant "fraudulently induced customers" need to satisfy Rule 9(b)).

As discussed in Tesla's moving brief, Plaintiff's allegations are insufficient under Rule 9(b) because they fail to establish "an account of the time, place, and specific content of the false representations." Mov. Br. at 7-8. Plaintiff has no answer, and his CFAA claim to the extent it is predicated on Section 1030(a)(4), should be dismissed. *See Walsh v. Nev. Dep't of Human Re*s., 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to address issue in opposition deemed waived); *Lee v. Retail Store Employee Bldg. Corp.*, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) (denying leave to amend because the plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of this claim").

## 2.    Plaintiff's allegations preclude his CFAA Section 1030(a)(5)(C) claim based on Tesla's allegedly "unauthorized" access.

Plaintiff cannot evade the fact that he voluntarily chose to download the allegedly harmful software updates. Compl. ¶ 78; *see also id*. at ¶¶ 74, 63. As discussed in Tesla's moving brief, that choice negates the claim that any access that Tesla had to the MCU

in his vehicle was "unauthorized." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) ("[U]sers who voluntarily installed software would have serious difficulty pleading unauthorized access under the CFAA.") (citations and quotations omitted); *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) ("[U]sers who had 'voluntarily installed' software that allegedly caused harm cannot plead unauthorized 'access' under the CFAA."). As the Ninth Circuit further confirmed, the phrase "without authorization" applies to "outside hackers (individuals who have no authorized access to the computer at all.") *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012). This does not remotely describe Tesla here.

In an attempt to avoid the obvious impact of his voluntary action to accept the software updates on his 1030(a)(5)(C) claim, Plaintiff argues that he had no choice but to download the software updates because if he did not download the updates he would not be eligible for warranty repairs and would be unable to operate his vehicle without Tesla's software.[1] Plaintiff has not cited any cases that support his argument and similar arguments have been rejected. *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452, 453 (N.D. Cal. 2018) (citing cases).

### 3.   Plaintiff's Section 1030(a)(5)(A) also fails.

According to Plaintiff, Tesla violated section 1030(a)(5)(A) by causing damage to his vehicle without permission. Opp. at 9. First, it is unclear how the (unidentified) software updates damaged his vehicle. According to Plaintiff, the software updates "would effectively limit the maximum amount of battery capacity available in their cars." Compl. ¶ 78. But as Plaintiff acknowledges, Tesla disclosed that "the Battery, like all lithium-ion batteries, will experience gradual energy or power loss with time

---

[1] It is worth noting that Plaintiff's New Vehicle Limited Warranty expired several years ago. Compl. ¶ 143. Plaintiff also never alleges any statements by Tesla stating that his vehicle would not operate without the software updates or any examples of vehicles failing to operate without a Tesla software update.

and use." *Id.* at ¶ 13. Plaintiff never explains what additional battery degradation was caused by the allegedly damaging software updates, rather than just normal lithium-ion battery degradation over time.[2]

Putting that aside, Plaintiff does not allege any CFAA-qualifying "damage." As the Supreme Court clarified in *Van Buren*, "[t]he statutory definitions of 'damage'... focus[es] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." 141 S. Ct. at 1660 citing Section 1030(e)(8) ; *accord  NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) (pursuant to the CFAA, "damages" means physical "harm to computers or networks," either by destroying them or rendering them less secure); *Custom Packaging Supply, Inc. v. Phillips*, 15-cv-04585, 2016 WL 1532220, at *4 (C.D. Cal. Apr. 15, 2016) (dismissing CFAA claim for failure to allege that defendant damaged any systems or destroyed any data as a result of his conduct in accessing plaintiff's computer systems). Neither the Complaint nor Plaintiff's Opposition identifies any such damage or security breach to the MCU in his vehicle.

Instead, Plaintiff asserts that Tesla's software updates "significantly reduced the effective battery capacity of the Class Vehicles." Compl. ¶ 66.[3] Even if this was true (and it is not), this is alleged damage to the battery in his vehicle, not CFAA-qualifying "damage" to a protected computer. *See Capitol Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154, 1157–58 (E.D. Cal. 2013) (dismissing CFAA claim where plaintiff alleged only lost business income rather than "impairment to the integrity or availability of data, a program, a system, or information"); *Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, 13-cv-00784-MCE-DAD, 2013 WL 3872950, at *21 (E. D. Cal. July 25,

---

[2] It is also entirely unclear why Tesla would want to "effectively limit the maximum amount of battery capacity" in its vehicles through software updates.

[3] Plaintiff does not define "effective battery capacity" in his Complaint or in his Opposition. Thus, it is unclear what he means when he alleges "Tesla imposed updates that significantly reduced effective battery capacity of Class Vehicles to cover up defective battery packs and avoid warranty claims." Compl. ¶ 66.

6

2013) ("[C]osts not related to computer impairment or computer damages are not compensable under the CFAA."). Because Plaintiff fails to plead any "damage" to a "protected computer," as those terms are defined by the CFAA, his Section 1030(a)(5)(A) claim fails.

**B.     Plaintiff fails to allege Tesla's conduct caused harm to a "protected computer."**

In response to Tesla's argument that Plaintiff alleged harm to the battery in his vehicle, not a protected computer as required for a CFAA claim, Plaintiff argues that Tesla's software modification caused harm to the "MCU and the interconnected systems" in his vehicle. Opp. at 12. Although unclear, Plaintiff appears to be arguing that the "Battery Management System," is one of those "interconnected systems." *Id.* Plaintiff can point to no case law that suggests "interconnected systems"— whatever that means— is a "protected computer" as defined by the CFAA.

**C.     Plaintiff fails to allege sufficient damages to assert a CFAA claim.**

Plaintiff claims that because Tesla's alleged "software manipulation resulted in 56% to 51% of battery capacity compared to that promised by defendant," he pleads "damages of at least ~$10,000," which is in excess to the CFAA's required $5,000 in damages. Opp. at 13. As discussed above, this is not "damage" as defined by the CFAA. *See* Section I.A.3, *supra*. But even if it was—and even if Tesla's software updates "reduced the effective battery capacity" more than what was expected for a seven year old lithium ion battery, and Plaintiff sufficiently alleged a predicate CFAA violation and harm to a "protected computer"—Plaintiff is not entitled to half of the cost of his battery for the battery not maintaining the capacity Plaintiff believes it should maintain. The battery did not fail; nor did it last half the time it was supposed to. Thus, there is no basis for Plaintiff's assertion that he is entitled to half the cost of a new battery. In any event, as discussed in Tesla's moving brief, Plaintiff is at best entitled to a battery replacement pursuant to the battery warranty. Because Plaintiff is still within Tesla's 8-

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
4836-1742-9500 V2

1   year battery warranty, and if there really was an issue with his battery, he would receive

2   a free battery replacement. Plaintiff suffered no actual damage from the alleged software

3   updates. *Id*. ¶¶ 25, 162. Of course, as discussed below, his breach of express warranty

4   claim also fails.

5                             \* \* \*

6         In short, Plaintiff fails to state a claim for violation of the CFAA and the Court

7   should reject Plaintiff's attempt to turn the CFAA on its head by using it to challenge

8   activity that is standard in the automotive, and many other, industries.

9   **II.    Plaintiff's Song-Beverly Express Warranty Claim Fails.**

10        Plaintiff does not dispute that he must show more than one repair attempt to be

11   entitled to relief under his Song-Beverly express warranty claim. *See* Opp. at 14–15.

12   Nor could he. *See* Mov. Br. at 10 citing cases.

13        In his Opposition, Plaintiff claims that he alleges two repair attempts. Not so. He

14   alleges he took his vehicle to a Tesla service center one time, during which the service

15   technician performed a battery health check and determined at that time that "there was

16   no issue with his battery." Compl. ¶ 25. Plaintiff nowhere alleges that he made a second

17   warranty claim, let alone that he brought his vehicle back to a Tesla service center a

18   second time for assessment or repair. His express warranty claim should therefore be

19   dismissed. Cal. Civil Code § 1793.2(d)(1).

20        Plaintiff attempts to rely on distinguishable case law to argue that a month-long

21   "extended process" including phone calls to Tesla representatives is sufficient to allege

22   a breach of express warranty claim. According to Plaintiff, in *Horvath v. LG Elecs.*

23   *MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL 2861160 (S.D. Cal.

24   Feb. 13, 2012), the Court found repeat phone calls and failure to remedy sufficient to

25   state an express warranty claim under the Song-Beverly Act. Opp. at 14. But Plaintiff's

26   characterization of *Horvath*'s allegations is inaccurate. Horvath's first amended

27   complaint expressly stated that he returned his phone "[o]n at least ***four*** different

28

occasions…to the authorized retailer seeking to fix the defects in his…phone." Request for Judicial Notice, Ex. A, *Horvath* First Am. Comp. at ¶ 46 (emphasis in original). Later, when Horvath called LG to notify LG of the alleged defects, LG told him "that the only options under his LG warranty were to either: (1) send his phone to LG for a technician to analyze; or (2) to receive a refurbished (used) phone from LG as a replacement." *Id.* at ¶ 49. *Horvath* is therefore distinguishable because it involved four repair presentations to an authorized dealer—not just phone calls to the manufacturer as Plaintiff contends.

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1141 (N.D. Cal. 2010) is also distinguishable. There, plaintiff alleged she contacted Sears two times. *Id.* The first contact was within the first month or two of ownership, and the Sears representative told her the machine was not in need of service. *Id.* The second contact was some point after (still within the one-year warranty), and the Sears representative again did not acknowledge the machine was in need of service or defective. *Id.* Unlike *Tietsworth*, Plaintiff's allegations state that Tesla found no problems with his vehicle during the *one* time he asked Tesla to assess it for battery issues. Compl. ¶ 25. As Plaintiff alleges, his first contact with Tesla in August 2020 involved a mere "inquir[y] about the substantial loss of range and effective battery[,]" and "[t]he service technician instructed Plaintiff to determine battery capacity by focusing on his vehicle's displayed percent batter [*sic*] state of charge, instead of range." *Id.* at ¶ 16. Plaintiff monitored and logged energy usage and then reported back to Tesla with results—as part of the same inquiry from August 2020. *Id.* at ¶ 25.

The fact that the service technician was unable to replicate the battery issue does not equate to a refusal to repair. *Clark v. Am. Honda Motor Co., Inc.*, No. 20-03147-AB, 2021 WL 4260232, at *3 (C.D. Cal. Sept. 14, 2021) is helpful. In *Clark*, plaintiffs challenged the need to present for more than one repair opportunity, and some plaintiffs claimed that "the dealership did tests but could not identify the issue," and other

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

4836-1742-9500 V2

plaintiffs alleged that they were "told there was nothing wrong with their vehicles" but failed to plead facts showing what the dealership actually did or identified during the visit. *Id*. The court reasoned that there could be no "refusal" to repair an issue that had never been diagnosed. *Id*. The court also rejected the "conclusory and generic" allegation that "no repairs were performed," requiring a complaint to include facts showing that American Honda actually refused to fix a problem. *Id*.; *see also Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF, 2018 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970-71 (N.D. Cal. 2014).

The remaining cases Plaintiff cites—*Jolley v. Carmax Auto Superstores W. Coast, Inc.*, No. CV 15-09382 RGK (SSx), 2016 WL 8923917 (C.D. Cal. Feb. 8, 2016); *Arteaga v. Carmax Auto Superstores W. Coast, Inc.*, No. CV-14-1888 RSWL (CWx), 2014 WL 3505527, (C.D. Cal. July 11, 2014); *Gonzalez v. Drew Indus.*, 750 F. Supp. 2d 1061 (C.D. Cal. 2007)—are outdated and in conflict with more recent holdings from courts within this District. *See, e.g.*, *Treuhaft*, 2021 WL 2864877, *3; *Clark*, 2021 WL 1186338, at *5; *Yi*, 2018 WL 3359016, at *4.

Plaintiff states he has logs of "extended communication" with Tesla representatives and "can amend them to the pleadings if required." Opp. at 15. In a footnote, Plaintiff also states that his proposed First Amended Complaint would include allegations that "additional plaintiffs" provided Tesla with more than one repair opportunity Opp. at 13, fn 2. Not only would other Plaintiffs' allegations not save Plaintiff's claim, but their allegations, and the purported logs, which Plaintiff admits are not alleged in the Complaint, are irrelevant to Tesla's motion *See Browning*, 2021 WL 3022007, at *4.

## III. Plaintiff's Song-Beverly Implied Warranty Claim Fails.

### A. Plaintiff does not allege his vehicle is unmerchantable.

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

4836-1742-9500 V2

Plaintiff's allegations do not plausibly suggest his vehicle was unmerchantable. *See In re Gilead Sciences Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that a court need not accept "unreasonable inferences").

Plaintiff's driving range and battery capacity complaints cannot serve as the basis of an implied warranty claim. Plaintiff does not allege that he ever stopped driving his vehicle or that the alleged reduced range ever prevented him from driving his vehicle. Moreover, Plaintiff has not plausibly alleged that the battery capacity loss is above or beyond what he understood as normal. Compl. ¶¶ 13, 27. Even with a reduced driving range and/or battery capacity, Plaintiff is able to safely get from point A to some point B, albeit not as far away as he claims he anticipated. Even if Plaintiff's allegations are true, the inconvenience of having to charge his vehicle more than he thinks he should, does not render his vehicle unfit for providing transportation. *Gertz v. Toyota Motor Corp.*, 10-cv-01089, 2011 WL 13142144, at * 12 (C.D. Cal. Apr. 28, 2011) (finding that having to fill up the gas tank more than plaintiffs believe they should does not render a vehicle unmerchantable); *see also Tietsworth v. Sears*, NO. 09-CV-00288, 2010 WL 1268093, at *15 (N.D. Cal. Mar. 31, 2010) (the need to stop and restart a defective washing machine does not render a washing machine unfit for the essential purpose of washing clothes).

Plaintiff cites no authority to support his conclusory argument that a fully-functioning vehicle is unmerchantable simply because it does not satisfy his subjective expectation as to how far his vehicle should travel on a charge some six years after his purchase, especially knowing that the battery capacity would diminish. In fact, courts routinely find that defects based on mere annoyances or subjective dislikes do not render a vehicle unmerchantable. *Resnick v. Hyundai Motor Am., Inc.*, No. CV-16-00593-BRO-PJWX, 2017 WL 1531192, at *12 (C.D. Cal. Apr. 13, 2017); *see also Zuehlsdorf v. FCA US LLC*, No. EDCV181877JGBKKX, 2019 WL 2098352, at *10 (C.D. Cal. Apr. 30, 2019) (confirming that "[u]nlike express warranties, an implied warranty of

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

merchantability requires only a "minimum level of quality'" and that "[i]t is sufficient for a vehicle to meet the minimum requirement if it is fit for driving.").

To try and save his breach of implied warranty claim, Plaintiff argues that California courts have found implied warranty claims adequately alleged where the defect causes surprise, distraction, or is spontaneous. *See* Opp. at 17. But the cases Plaintiff relies on to make that broad assertion involved much different defect allegations. As one court emphasized, "[e]ach of the referenced cases involved an alleged defect that had the direct impact of creating a safety hazard while the vehicle was in motion." *Kingston v. FCA US LLC*, No. SACV191365JVSKESX, 2019 WL 7753446, at *8 (C.D. Cal. Dec. 10, 2019); *see Brand*, 226 Cal. App. 4th at 1547 ("Here, a reasonable jury could conclude that a vehicle sunroof that opens and closes *on its own* creates a substantial safety hazard. Brand described how on the freeway the papers in his car suddenly swirled about in the passenger compartment without notice, creating a dangerous distraction") (emphasis in original); *Barakezyan v. BMW of N. Am.*, 715 F. App'x 762 (9th Cir. 2018) ("Taking the allegations as true, the [brakes], when engaged, emit an extremely loud, long, high-pitched noise, which has, on numerous occasions, distracted Barakezyan … That, along with allegations that the noise is intermittent and manifests at different mileages, meaning that the noise has the potential to surprise, at least plausibly pleads a safety hazard[.]"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 959 (N.D. Cal. 2014) (when discussing a duty to disclose based on safety concerns, stating "a reasonable jury could find that a suddenly malfunctioning [infotainment] system could create a safety risk, particularly if the system were to suddenly crash while a person was driving"); *Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1128 (C.D. Cal. 2020) ("Plaintiffs have alleged that their vehicles applied the brakes without warning with no vehicles or objects close by and that this braking inexplicably occurred more frequently when switching lanes or making turns.") Plaintiff's reduced battery capacity allegations do not come close to the alleged defects

at issue in the cases cited by Plaintiff, *i.e.*, a reduced battery capacity does not have a "direct impact of creating a safety hazard while the vehicle was in motion."

Plaintiff's half-hearted argument that the "defective battery packs cause Defendant's cars to spontaneously erupt in flame…supports a claim for beach of implied warranty" should be rejected. Opp. at 17. This case is not about battery fires, and in the Complaint, Plaintiff does not include batteries that allegedly spontaneously combust as a reason his vehicle is allegedly unmerchantable. Compl. ¶¶ 155-171. In any event, Plaintiff's allegations that "[o]n information and belief" 20 Tesla vehicles worldwide, out of the "hundreds if [sic] thousands" Models S, X, and 3 and Y vehicles, spontaneously caught fire from 2014 to the present, Compl. ¶¶ 79–98, is insufficient to allege a breach of implied warranty claim. In fact, nowhere in the Complaint does Plaintiff allege that *his vehicle* ever caught fire or that he ever felt unsafe due to the alleged issue. His claims therefore rest on the remote possibility that his vehicle could catch fire. Courts have held that more concrete risks were not substantial enough to breach the warranty of merchantability. *See, e.g.*, *McGee v. Mercedes-Benz USA, LLC*, No. 19-cv-513-MMA-WVG, 2020 WL 1530921, at *6 (S.D. Cal. Mar. 30, 2020) (holding that even where plaintiffs alleged they lost faith in their car's safety because its airbag inflators had been recalled, that was not enough to allege car was unmerchantable); *Am. Suzuki*, 37 Cal. App. 4th at 1295–99 (holding allegedly "unacceptable risk" of rollover accident was not enough where this had happened only a "small percentage" of the time). California law offers "no support for the proposition that a remote fear or expectation of failure is sufficient to establish non-merchantability." *Am. Suzuki*, 37 Cal. App. 4th at 1298. Thus, Plaintiff's battery fire allegations are insufficient to state a plausible implied warranty claim.

**B.     Plaintiff cannot allege facts showing any manifestation of the defect in his vehicle during the one-year implied warranty period.**

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
4836-1742-9500 V2

Plaintiff's breach of implied warranty claim fails for a separate reasons. Plaintiff does not allege a defect manifested during the applicable implied warranty period, which, under California law is no longer than one year from the time of purchase. *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 231 (2006); *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014); *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011). Where a plaintiff fails to allege specific facts supporting a claim that the alleged defect existed within the one-year implied warranty period, the claim must be dismissed. *Peterson*, 44 F. Supp. 3d at 972; *see also Marchante*, 801 F. Supp. 2d at 1021; *Grodzitsky v. Am. Honda Motor Co., Inc.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 2631326, at *11 (C.D. Cal. June 12, 2013) (dismissing Song-Beverly implied warranty "[b]ecause the windows at issue in this case did not begin to fail until well more than a year after they were purchased."); *Valencia v. Volkswagen Grp. Of Am. Inc.*, 199 F. Supp. 3d 1130, 1140 (N.D. Cal. 2015). To hold otherwise "would render the duration provision of the Song-Beverly Act meaningless because [e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period." *Peterson*, 44 F. Supp. 3d at 971–72.

Plaintiff argues that, under *Mexia*, a defect need not manifest within the applicable implied-warranty period for it to be actionable under the Act; he essentially argues that this delayed the accrual date for his claim. Opp. at 18 (citing *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009)). But as Judge Birotte recently explained, this argument mischaracterizes *Mexia*, which had nothing to do with the statute of limitations:

> The *Mexia* court did not discuss delayed discovery as a theory for tolling the accrual of a breach of implied warranty claim, as there, the plaintiff brought his claim within 4 years of purchase, which was clearly within the limitation period. *Id.* at 1306. *Mexia held only that a latent defect that existed during the warranty period but which was not discovered until after the* warranty *period could still be covered by the warranty*; this question is distinct from the question of whether the discovery rule delays the accrual of a breach of warranty cause of action. *Accord Ferris v.*

*Ford Motor Co.*, No. 18-CV-03216-JSW, 2019 WL 1100376, at *3 (N.D. Cal. Mar. 8, 2019) ("*Mexia* affects neither the length of the statute of limitations for a breach of implied warranty nor the point at which a breach of warranty occurs."). Thus, *Mexia* is not on-point.

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.* ("*Pedante*"), No. CV1706656AB, 2019 WL 6998668, at *3 (C.D. Cal. Sept. 5, 2019) (emphasis added). Here, the one-year warranty period expired in 2015 because Plaintiff purchased his vehicle in 2014, which is approximately five years before Plaintiff alleged his vehicle experienced "significant loss in actual range traveled." Compl. ¶¶ 15, 25. Thus, Plaintiff's implied warranty claim fails because he has not, and cannot, allege facts showing any defect in his vehicle existed during the one-year implied warranty period.

## C.   Plaintiff's implied warranty claim is time barred.

Courts repeatedly find that the delayed discovery rule does not apply to implied warranty claims. *See, e.g.*, *Williams v. Tesla, Inc.*, 2021 WL 2531177 (N.D. Cal. June 21, 2021), at *6; *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 854, n.3 (N.D. Cal. 2020); *Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2020 WL 3961975, at *2–3 (N.D. Cal. July 13, 2020); *Garcia v. Ford Motor Co.*, No. 2:19-CV-00385-JAM-AC, 2019 WL 3297354, at *3 (E.D. Cal. July 23, 2019). Despite this clear precedent, Plaintiff argues that California's "delayed discovery" rule tolls the accrual period for his breach of implied warranty claim until after he discovers or has reason to discover the facts underlying his claim. Opp. at 18. But the rule is only available for warranties explicitly extending to future performance, and an implied warranty does not, as a matter of law, do so. *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 130, 134 (2008). Thus, California's future performance exception to the statute of limitations does not apply here and cannot excuse Plaintiff's delayed filing of his implied warranty claim.

**IV.        Plaintiff's Magnuson-Moss Warranty Act Claim Fails.**

Plaintiff does not dispute his Magnuson-Moss Warranty Act ("MMWA") claim is derivative of his express and implied warranty claims. Because Plaintiff has not alleged a claim for breach of express or implied warranty, his claim under the MMWA also fails. *See Clemens*, 534 F.3d at 1022 ("[d]isposition of the state law warranty claims determines the disposition of the Magnuson–Moss Act claims.").

Even if Plaintiff adequately pled express and implied warranty claims, his MMWA claim would still fail. As discussed above, he did not present his vehicle to Tesla more than once, which is required to proceed on this MMWA claim. *See* Mov. Br. at 14 citing authority.

## CONCLUSION

For the reasons described above, and in Tesla's moving brief, the Court should grant Tesla's Motion for Judgment on the Pleadings and dismiss Plaintiff's complaint in its entirety.


Dated: October 1, 2021                    Respectfully submitted,

                                          SHOOK, HARDY & BACON L.L.P.


                                          By: */s/ Rachel A. Straus*
                                               AMIR M. NASSIHI
                                               JOAN R. CAMAGONG
                                               MICHAEL L. MALLOW
                                               RACHEL A. STRAUS

                                               Attorneys for Defendant
                                               TESLA INC.

TESLA'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
4836-1742-9500 V2