Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Tel: (424) 285-8330 | Fax: (424) 204-9093

Amir M. Nassihi (SBN 235936)
anassihi@shb.com
Joan R. Camagong (SBN 288217)
jcamagong@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
TESLA INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FISH, ZACHARY HLVINKA, JOEL MANN, HERBERT JOEL SEGALL, and M. DEEBLE, individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation, Defendant,<br><br>Defendant. | Case No. 8:21-cv-00060-PSG-JDE<br><br>Assigned to Hon. Philip S. Gutierrez Courtroom 6A, 6th Floor<br><br>**DEFENDANT TESLA INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:   April 15, 2022<br>Time:  1:30 p.m. |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

FACTS ..................................................................................................................... 1

ARGUMENT ........................................................................................................... 6

I.   The FAA Governs the Arbitration Agreements. ............................................ 7

II.  The FAA Requires Courts to Enforce the Parties' Arbitration Agreement According to Its Terms. ................................................................ 7

    A.   The arbitration agreement is valid and enforceable. ............................ 8

    B.   Plaintiffs agreed to arbitrate "any dispute" with Tesla, which encompasses their claims here. ........................................................... 11

III. The Arbitration Agreement Is Not Unconscionable. .................................... 11

    A.   The arbitration agreement is not procedurally unconscionable. .......... 12

    B.   The arbitration agreement is not substantively unconscionable. ......... 13

IV.  The Court Should Stay Plaintiffs' Claims So the Parties Can Bilaterally Arbitrate. ...................................................................................................... 14

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aetna Life Ins. Co. v. All Med. Servs.*, Inc.,
   855 F.2d 1470 (9th Cir. 1988) ............................................................................. 1

*Allen v. Shutterfly, Inc.*,
   No. 20-CV-02448-BLF, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ................ 8

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
   785 F.3d 1320 (9th Cir. 2015) ....................................................................... 7, 10

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................ 6

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
   No. 04-cv-04825-JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ........................ 9

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) ............................................................................. 9

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .............................................................................................. 7

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) ............................................................................. 7

*Comley v. Giant Inland Empire RV Ctr., Inc.*,
   No. EDCV-13-00992-GAF-OPX, 2013 WL 12131180 (C.D. Cal.
   Aug. 7, 2013) ...................................................................................................... 7

*D.R. Horton, Inc. v. Green*,
   96 P.3d 1159 (2004) .......................................................................................... 11

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ........................................................................................ 2, 8

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................. 9

*Holl v. United Parcel Serv., Inc.*,
   No. 16-cv-05856-HSG, 2017 WL 11520143 (N.D. Cal. Aug. 4, 2011) ................ 9

*Howsam v. Dean Witter Reynolds*,
 537 U.S. 79 (2002) ............................................................................................... 6

*In re Facebook Biometric Info. Privacy Litig.*,
 185 F.Supp.3d 1155 (N.D. Cal. 2016) ................................................................. 9

*Johnmohammadi v. Bloomingdale's, Inc.*,
 755 F.3d 1072 (9th Cir. 2014) ............................................................................ 13

*JS Barkats PLLC v. BE, Inc.*,
 No. 12 Civ 6779, 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) ............................. 1

*Kilgore v. KeyBank, Nat. Ass'n*,
 718 F.3d 1052 (9th Cir. 2013) ............................................................................ 11

*KPMG LLP v. Cocchi*,
 565 U.S. 18 (2011) ............................................................................................... 7

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP*,
 74 Cal. App. 4th 1105 (1999) ............................................................................ 11

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
 440 F. App'x 604, 607 (10th Cir. 2011) .............................................................. 1

*Lamps Plus, Inc. v. Varela*,
 139 S. Ct. 1407 (2019) ......................................................................................... 7

*Mortensen v. Bresnan Commc'ns, LLC*,
 722 F.3d 1151 (9th Cir. 2013) ............................................................................. 7

*My Daily Choice, Inc. v. Butler*,
 No. 2:20-CV-02178-JAD-NJK, 2021 WL 3475547 (D. Nev. Aug. 6,
 2021) .................................................................................................................... 9

*Nguyen v. Tesla, Inc.*,
 No. 8:19-cv-01422-JLS-JDE, 2020 WL 2114937 (C.D. Cal. Apr. 6,
 2020) .................................................................................................................... 8

*Perry v. Thomas*,
 482 U.S. 483 (1987) ....................................................................................... 6, 11

*Peter v. DoorDash, Inc.*,
 No. 19-CV-06098-JST, 2020 WL 1967568 (N.D. Cal. Apr. 23, 2020) ............... 9

*Raebel v. Tesla, Inc.*,
  451 F. Supp. 3d 1183, 1189 (D. Nev. 2020) ............................................................... 8

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ............................................................................................. 11

*Serpa v. Cal. Surety Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) .................................................................................. 12

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................................... 9

*Walker v. Neutron Holdings, Inc.*,
  No. 1:19-CV-574-RP, 2020 WL 703268 (W.D. Tex. Feb. 11, 2020) ....................... 9

*Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................................. 8

*Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*,
  467 S.W.3d 494 (Tex. 2015) ................................................................................... 11

**Statutes**

Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*) ......................................... 6

Federal Arbitration Act (9 U.S.C §§ 1, *et seq.*) ................................................... 1, 6-7, 11

Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*) ......................................... 6

Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*) ....................... 6

# INTRODUCTION

When purchasing their respective Tesla vehicles, Plaintiffs Joel Mann, Herbert Joel Segall, and Zachary Hlavinka agreed to arbitrate on an individual basis only and agreed not to bring claims as a plaintiff or class member in any class action.[1] Plaintiffs could have opted out of those arbitration agreements within 30 days, but they did not. In violation of those agreements, Plaintiffs now bring this putative class action against Tesla, Inc. alleging that lithium-ion batteries in Tesla vehicles experience capacity loss as the vehicles age and that Tesla purportedly hides this behind software updates.

Because Plaintiffs agreed to binding arbitration agreements that cover their dispute with Tesla, the Federal Arbitration Act ("FAA"), which applies here, requires that the parties "proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Tesla respectfully requests that the Court compel Plaintiffs to individual arbitration and stay their claims pending the completion of the arbitration.

# FACTS

Tesla sells new and used electric vehicles on its website and in Tesla-owned stores. *See* https://www.tesla.com/inventory/new/ms. Plaintiffs each purchased their respective Tesla vehicles online directly from Tesla. Declaration of Jasjit Ahluwalia ("Ahluwalia Decl.") ¶¶ 9-11, 13-15, 17-18.[2] As explained in greater detail below, each

---

[1] This motion satisfies Tesla's obligation to respond to the FAC as to Zachary Hlavinka, Joel Mann, and Herbert Joel Segall at this stage. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *JS Barkats PLLC v. BE, Inc.*, No. 12 Civ 6779, 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013)("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."). Tesla reserves the right to file a Rule 12(b) motion as to Plaintiffs Hlavinka, Mann, and Segall at a later time. *See Aetna Life Ins. Co. v. All Med. Servs.*, Inc., 855 F.2d 1470, 1475 (9th Cir. 1988).

[2] Plaintiffs allege the following facts about their purchases:
Mann, a resident of Nevada, purchased a 2017 Model S 100D from Tesla in Las Vegas. First. Am. Compl. ¶ 8.
Segall, a resident of California, purchased a 2018 Model X 75D from Tesla in the Los Angeles area. *Id.* ¶ 9.

plaintiff agreed, through at least two separate documents, to arbitrate "any dispute arising out of or relating to any aspect of the relationship[,]" and had ample time to review (and opt out of) the Agreement to Arbitrate before finalizing their purchases.

*First*, Plaintiffs agreed to the Agreement to Arbitrate when they completed an online order for their Tesla vehicles and clicked a "Place Order" button on the website (depicted below as seen by Hlavinka on his order date) (Declaration of Victor Barclay ("Barclay Decl.") ¶¶ 2–3):

[screenshot of Tesla online order payment page showing: "5. Payment"; tabs for Cash, Lease, Loan; "Price after Est. Savings $31,315"; "Purchase Price $39,490"; "Excluding taxes and fees"; "Due Today $100"; "Non-refundable Order Fee"; text reading "By clicking 'Place Order' I agree to the Model 3 Order Agreement, Supercharger Fair Use Policy, the Customer Privacy Agreement, and consent to be contacted at the number provided with more information or offers about Tesla products. I understand these calls or texts may use automated dialing or pre-recorded messages. I understand my consent to be contacted is not a condition of purchase."; "View additional information"; "PLACE ORDER" button]

---

Hlvinka, a resident of Texas, purchased a 2019 Model 3 from Tesla in San Antonio. *Id.* ¶ 7.

Barclay Decl. ¶ 13, Ex. 9; *see also id.* ¶¶ 11–12, Exs. 5–8 (depicting Order Payment screens Segall and Mann saw when placing their orders). When Mann placed his order on July 25, 2017, the "Place Order" button was accompanied by language stating, "By clicking 'Place Order' I agree to the Model S Order Agreement …" or some variation of that language. Barclay Decl. ¶ 6. Similarly, when Segall placed his order on October 31, 2018, the "Place Order" button was accompanied by language stating, "By clicking 'Place Order' I agree to the Model X Order Agreement …" or some variation of that language. *Id.* ¶ 7. And when Zachary Hlavinka placed his order on December 8, 2019, the "Place Order" button was accompanied by language stating "By clicking 'Place Order' I agree to the Model 3 Order Agreement…" or some variation of that language. *Id.* ¶ 8.

At all relevant times, the "Order [S, X, 3] Agreement" language described above has been hyperlinked to an online copy of the relevant model's order agreement, as indicated by bolded and/or underlined text, giving customers the opportunity to review the agreement before clicking the "Place Order" button. Barclay Decl. ¶ 9. This is true whether a customer placed their online order via mobile or desktop. *Id.*

Segall and Hlavinka's Order Agreements both contain an arbitration clause with a class action waiver that is prominently displayed, in a standalone text box, and reads as follows:

> **Agreement to Arbitrate**. Please carefully read this provision, which applies to any dispute between you and Tesla Inc. and its affiliates, (together, "Tesla").
>
> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.
>
> If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, including claims related to statements about our products.

> We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.
>
> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.
>
> If you prefer, you may instead take an individual dispute to small claims court.
>
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration in a lease or finance contract.

Ahluwalia Decl. ¶¶ 12, 15, Exs. 2, 4.

Mann's Order Agreement contains a substantively similar arbitration clause and class action waiver that reads as follows:

> **Agreement to Arbitrate**. Please read this provision carefully.
>
> In the event of a concern or dispute between us, please send Tesla written notice to resolutions@tesla.com describing the nature of the dispute and the relief sought.
>
> If it is not resolved within 60 days, Tesla and you agree that any dispute arising out of or relating to any aspect of the relationship between us will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA). This includes claims arising before this Agreement, including claims related to statements about our products. Alternatively, you may opt out of arbitration as described below.

> The AAA Consumer Arbitration Rules will apply. We will pay all AAA fees for any arbitration. The arbitration will be held in a location most convenient to your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.
>
> The arbitrator may only resolve disputes between you and Tesla on an individual basis. The arbitrator cannot award relief for anyone who is not a party and may not consolidate claims. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.
>
> If you prefer, you may instead take your individual dispute to small claims court.
>
> You may opt out within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name and intent to opt out of the arbitration provision.

Ahluwalia Decl. ¶ 10, Ex. 1.

*Second*, after Plaintiffs placed their orders, but before they took delivery of their vehicles, Tesla made another copy of the Order Agreement available through Plaintiffs' personal Tesla Accounts. Ahluwalia Decl. ¶¶ 6, 9, 12, 15. The agreements provided plaintiffs with a 30-day period to opt out of the Agreement to Arbitrate. Ahluwalia Decl. ¶¶ 10, 13, 15, Exs. 1, 3, 4. None of the plaintiffs did. Ahluwalia Decl. ¶¶ 3, 11, 14, 17.

*Third*, when they took delivery of their vehicles, Mann and Segall physically signed documents reaffirming their assent to the Agreement to Arbitrate. They both physically signed an Order Agreement including Tesla's Agreement to Arbitrate. Ahluwalia Decl. ¶¶ 10, 13, Exs. 1, 3. Mann also signed a Delivery Declaration that states: "BY SIGNING BELOW, YOU AGREE THAT YOU HAVE TAKEN DELIVERY OF YOUR MODEL S 100D ON OR BEFORE 08/07/2017 AND THAT YOU AGREE WITH YOUR FINAL MOTOR VEHICLE PURCHASE AGREEMENT, WHICH HAS BEEN UPLOADED TO AND IS AVAILABLE IN YOUR MYTESLA ACCOUNT." Ahluwalia Decl. ¶ 11, Ex. 1.

1    *Fourth*, Plaintiffs had considerable time between when they placed their orders (and accepted the Order Agreement) and took delivery of their vehicles (and signed Delivery Declarations and other documents). Mann had 13 days between his online order and his delivery (Ahluwalia Decl. ¶¶ 9, 10); Segall had 27 days (*id.* ¶¶ 12, 13); and Hlavinka had 16 days (*id.* ¶¶ 15, 16). Plaintiffs were not under any time pressure, and each had ample time to read and understand the agreement and its implications. Again, none of the plaintiffs opted out of the Agreement to Arbitrate. *Id.* ¶¶ 3, 14, 17.

Finally, the Agreement to Arbitrate on an *individual* basis are express terms of the new vehicle warranty that Plaintiffs seek to enforce. *See, e.g.*, First Am. Compl, ¶¶ 17, 156, 157, 162, 174, 175, 178, 181. Tesla's New Vehicle Limited Warranty reminds customers that "you agreed [in your Vehicle Order Agreement] to resolve disputes with Tesla by arbitration rather than by litigation in Court. Please see the Vehicle [Purchase/Order] Agreement for more details." Declaration of Lis Fraser ("Fraser Decl.") ¶¶ 2-4, Ex. 11 at pp. 12-13, Ex. 12 at pp. 12-13, Ex. 13 at p. 13. The arbitration clause, including the class action waiver, is reprinted in the warranty. *Id.*

Rather than arbitrate their claims as required under the pertinent agreements set forth above, Plaintiffs seek to represent a class and bring three causes of action against Tesla for: (1) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*); (2) violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*); and (3) violation of Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*). *See generally* First Am. Compl. All of Plaintiffs' claims are based on the allegation that Tesla's batteries are defective due to alleged gradual battery capacity loss.

## ARGUMENT

The "overarching purpose" of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate informal, streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011) ("*Concepcion*"). Plaintiffs agreed both to

arbitrate "any dispute arising out of or relating to any aspect of the relationship" with Tesla and to arbitrate on an individual basis only. The question whether the parties have submitted a dispute to arbitration is generally an issue for judicial determination. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002). The Court should therefore order Plaintiffs to arbitrate their claims against Tesla on an individual, non-class basis.

## I. The FAA Governs the Arbitration Agreements.

This motion is governed by the FAA, which reflects a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). The FAA provides that an arbitration agreement in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or inequity for revocation of any contract." 9 U.S.C. § 2. Here, the FAA governs because the arbitration agreements are contained in Plaintiffs' Order Agreements and reproduced in the New Vehicle Limited Warranty, all of which are contracts affecting commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding FAA applied even though there was no substantial effect on commerce); *see also Comley v. Giant Inland Empire RV Ctr., Inc.*, No. EDCV-13-00992-GAF-OPX, 2013 WL 12131180, at *2–3 (C.D. Cal. Aug. 7, 2013) ("This contract plainly concerned a vehicle, which either itself or through its parts moved in interstate commerce.")

## II. The FAA Requires Courts to Enforce the Parties' Arbitration Agreement According to Its Terms.

"The FAA requires courts to enforce arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). Courts must "give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). The FAA reflects an "emphatic federal policy *in favor of* arbitral dispute resolution," *KPMG LLP v. Cocchi*, 565 U.S.

1  18, 21 (2011) (per curiam) (emphasis added), and "where the contract contains an
2  arbitration clause, there is a presumption of arbitrability," *Comedy Club, Inc. v.*
3  *Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009).
4      Under the FAA, "[a] party seeking to compel arbitration has the burden . . . to
5  show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2)
6  that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone*
7  *Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View*
8  *Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). Here, not only is the Agreement to
9  Arbitrate governed by the FAA, but it is valid and encompasses the dispute at issue.
10 The FAA therefore "leaves no place for the exercise of discretion by a district court,
11 but instead mandates that district courts shall direct the parties to proceed to proceed
12 to arbitration." *Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).
13
14      **A.    The arbitration agreement is valid and enforceable.**
15      To determine whether a valid arbitration agreement exists, federal courts apply
16 ordinary state-law principles that govern the formation of contracts. *First Options of*
17 *Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, Plaintiffs have no state-law
18 enforceability defenses to invalidate the arbitration clauses. As explained above, by
19 clicking the "Place Order" button on Tesla's website, Plaintiffs agreed to be bound by
20 the terms of their Order Agreement, including the Agreement to Arbitrate. The Order
21 Agreement was set off in a bold blue font, making it obvious that the words "Model
22 [S, X, 3] Order Agreement" was a hyperlink to the actual text of the Order Agreement.
23 Plaintiffs thus indisputably agreed to and were on notice of the Agreement to Arbitrate
24 by virtue of the hyperlink to the Order Agreement, and they manifested their assent to
25 the Agreement by clicking "Place Order." If any doubt, Plaintiffs received copies of
26 their Order Agreement in their MyTesla accounts.
27      Tesla's hyperlinked agreements are enforceable. *Nguyen v. Tesla, Inc.*, No.
28 8:19-cv-01422-JLS-JDE, 2020 WL 2114937, at *3 (C.D. Cal. Apr. 6, 2020), *appeal*

*dismissed*, No. 20-55873, 2020 WL 6875203 (9th Cir. Nov. 20, 2020) (compelling arbitration of claims by purchasers against Tesla who were presented with hyperlinked Order Agreements); *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1189 (D. Nev. 2020) ("The words 'Model 3 Order Agreement' were an underlined hyperlink that directed to a copy of the Agreement. Because of this, Plaintiffs had a meaningful opportunity to review the Agreement when they placed their online order and could take their time reviewing the Agreement before they place their order").

Courts commonly enforce hyperlinked agreements similar to Tesla's Order Agreement. *See, e.g.*, *Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517172, at *6–7 (N.D. Cal. Sept. 14, 2020); *Peter v. DoorDash, Inc.*, No. 19-CV-06098-JST, 2020 WL 1967568, at *5 (N.D. Cal. Apr. 23, 2020); *Holl v. United Parcel Serv., Inc.*, No. 16-cv-05856-HSG, 2017 WL 11520143, at *3–5 (N.D. Cal. Aug. 4, 2011); *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d 1155, 1162–63, 1166 (N.D. Cal. 2016); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (hyperlink was underlined); *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-cv-04825-JW, 2005 WL 756610, at *2 (N.D. Cal. Apr. 1, 2005). The law is no different in the home states of Mann (Nevada) and Hlavinka (Texas). *See, e.g.*, *My Daily Choice, Inc. v. Butler*, No. 2:20-CV-02178-JAD-NJK, 2021 WL 3475547, at *7 (D. Nev. Aug. 6, 2021); *Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 WL 703268, at *1 (W.D. Tex. Feb. 11, 2020), report and recommendation adopted, 2020 WL 4196847 (W.D. Tex. Apr. 8, 2020).

Such agreements are not only "lawful" but favored, and consideration exists (at a minimum) because each party agreed to arbitrate claims against the other. *See, e.g., Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (mutual arbitration constituted sufficient consideration).

Here, there is no question that Plaintiffs assented to the Order Agreement. The Tesla Order Agreement, as depicted again below, shows that Tesla's hyperlinked

9
MPA ISO MOTION TO COMPEL ARBITRATION
CASE NO. 8:21-CV-00060-PSG-JDE

4857-7732-8141 V1

terms are presented in a patently commercial context, are located immediately below the "Place Order" button that signals assent, and are presented with language signaling the creation of a contract (e.g., "By clicking 'Place Order' I agree to the Model 3 Order Agreement"):

[screenshot of Tesla payment page showing Cash/Lease/Loan tabs, Price after Est. Savings $31,315, Purchase Price $39,490 Excluding taxes and fees, Due Today $100 Non-refundable Order Fee, text "By clicking 'Place Order' I agree to the Model 3 Order Agreement, Supercharger Fair Use Policy, the Customer Privacy Agreement, and consent to be contacted at the number provided with more information or offers about Tesla products. I understand these calls or texts may use automated dialing or pre-recorded messages. I understand my consent to be contacted is not a condition of purchase.", View additional information, and PLACE ORDER button]

Barclay Decl. ¶ 13, Ex. 9. Notably, Mann and Segall also physically signed documents reaffirming their assent to the Agreement to Arbitrate. They both physically signed Order Agreements including Tesla's Agreement to Arbitrate. Mann again reaffirmed his assent by signing a delivery declaration stating he "agree[s]" with his final "motor vehicle purchase agreement" uploaded to his Tesla Account. Therefore, there is no question that Plaintiffs assented to the Agreement to Arbitrate.

### B. Plaintiffs agreed to arbitrate "any dispute" with Tesla, which encompasses their claims here.

After determining the validity of an arbitration agreement, courts then consider whether it falls within the scope of the parties' arbitration agreement. *Ashbey*, 785 F.3d at 1323. Here, Plaintiffs' claims fall within the scope of the Agreement to Arbitrate. Plaintiffs agreed multiple times to arbitrate "any dispute arising out of or relating to any aspect of the relationship" between [Plaintiffs] and Tesla. *See, e.g.*, Ahluwalia Decl. ¶¶ 9, 11, 13, 17, Exs. 1, 3, 4.

This language plainly covers Plaintiffs' claims, which are all based on the allegation that Tesla's batteries are defective due to alleged gradual battery capacity loss. *See generally* First Am. Compl. Because these claims all arise from Plaintiffs' relationship with Tesla, they are covered by the arbitration agreement.

### III. The Arbitration Agreement Is Not Unconscionable.

Under the FAA, state law may be applied to invalidate an arbitration agreement only "[i]f that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry*, 482 U.S. at 492 n.9. "A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.*

To prove unconscionability, Plaintiffs much show the arbitration agreement is both procedurally and substantively unconscionable. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (applying California law).[3] The procedural aspect of unconscionability focuses on oppression or surprise, whereas the substantive aspect

---

[3] Nevada and Texas also require a showing of substantive and procedural unconscionability. *See D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553–54, 96 P.3d 1159, 1162 (2004), overruled on other grounds by *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 192, 415 P.3d 32, 42 (2018); *see also Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015).

focuses on overly harsh terms, "unduly oppressive" terms, or terms so one-sided that "shock the conscience." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). All of these formulations require a high degree of unfairness, well beyond "a simple old-fashioned bad bargain." *Id.* at 911.

### A. The arbitration agreement is not procedurally unconscionable.

An arbitration agreement cannot be rendered unenforceable just because it is offered on a "take it or leave it" basis. *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1127 (1999). The drafter is under "no obligation to highlight the arbitration clause of its contract, nor [is] it required to specifically call that clause to [the plaintiff's] attention." *Sanchez*, 61 Cal. 4th at 914 (applying FAA and upholding arbitration term in an automotive sales contract against a wide array of unconscionability challenges).

The Agreement to Arbitrate here is part of a short Order Agreement and is featured prominently in its own standalone text box. It cannot be missed. After Plaintiffs placed their initial orders (and first assented to the Order Agreement), the Order Agreement for each was uploaded to their personal Tesla Account, giving ample time and opportunity to again review the Order Agreement at any time. The Order Agreement is also available online to anyone for easy viewing.[4]

Plaintiffs each had the opportunity to opt out. But none did, and all went through with the sale. Further, in connection with the delivery of their vehicles, Plaintiffs subsequently reaffirmed their assent to the Order Agreement, giving them additional notice and opportunity to review the document in full. Last, the New Vehicle Limited Warranty contains the same (or substantively similar) Agreement to Arbitrate. Thus, Plaintiffs have no basis to claim oppression or surprise and cannot establish procedural unconscionability.

---

[4] *See, e.g.*, https://www.tesla.com/order/download-order-agreement (last visited Feb. 25, 2022).

### B. The arbitration agreement is not substantively unconscionable.

Substantive unconscionability evaluates whether the terms of the agreement "create an overly harsh or one-sided" result. *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013)(internal quotations omitted); *see also Chavarria*, 733 F.3d at 921-22 ("A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'"). The Agreement to Arbitrate easily clears any substantive unconscionability hurdle for the below reasons:

- **Small claims court option**: Either party may bring a claim in small claims court in lieu of arbitration (Ahluwalia Decl., Exs. 1, 3, 4);
- **Mutually binding**: Both Plaintiffs and Tesla must arbitrate "any dispute" (*id.*);
- **Full remedies available**: The arbitrator can award the same remedies to individual consumers that a court could award (*id.*);
- **Right to a neutral arbitrator**: Arbitration is administered by the American Arbitration Association ("AAA") (*id.*);
- **Flexible consumer procedures**: Arbitration will be conducted under the AAA's Consumer Arbitration Rules, which the AAA designed with consumers in mind (*id.*);
- **Conveniently located hearing**: Arbitration must take place in the location most convenient to the consumer's residence (*id.*);
- **Costs**: Tesla pays all AAA fees for any arbitration (*id.*); and
- **Right to a written decision**: The arbitrator shall issue a reasoned, written decision (*id.*).

Thus, the Agreement to Arbitrate is not substantively unconscionable.

## IV. The Court Should Stay Plaintiffs' Claims So the Parties Can Bilaterally Arbitrate.

"[A] district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Because all of Plaintiffs' claims are subject to arbitration, Plaintiffs' claims against Tesla should be stayed pending completion of arbitration.

## CONCLUSION

The Court should interpret and enforce the parties' agreements, which requires arbitration on an individual basis with individual remedies. Plaintiffs' claims against Tesla should then be stayed pending completion of arbitration.

Dated: February 25, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Joan R. Camagong*
    MICHAEL L. MALLOW
    AMIR M. NASSIHI
    RACHEL A. STRAUS
    JOAN R. CAMAGONG

Attorneys for Defendant
TESLA INC.