Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Tel: (424) 285-8330 | Fax: (424) 204-9093

Amir M. Nassihi (SBN 235936)
anassihi@shb.com
Joan R. Camagong (SBN 288217)
jcamagong@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
TESLA INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FISH, ZACHARY HLVINKA, JOEL MANN, HERBERT JOEL SEGALL, and M. DEEBLE, individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 8:21-cv-00060-PSG-JDE<br><br>Assigned to Hon. Philip S. Gutierrez Courtroom 6A, 6th Floor<br><br>**DEFENDANT TESLA INC.'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................3

LEGAL STANDARD...........................................................................................5

ARGUMENT ........................................................................................................6

**I.**   Plaintiffs fail to state a claim under the Computer Fraud and Abuse Act. .....6

   A. The CFAA claim fails under both Rule 8 and Rule 9(b)...........7

   B. Plaintiffs' "without authorization" claim under Section 1030(a)(5)(C) fails because they consented to Tesla's software updates. .................................................................9

   C. Plaintiffs' "exceeds authorization" claim under Section 1030(a)(4) fails. .......................................................11

     1. *Van Buren* precludes Plaintiffs' "exceeds authorized access" claim. .................................................12

     2. Plaintiffs fail to allege Tesla obtained something "of value."...............................................................13

   D. Plaintiffs' Section 1030(a)(5)(A) claim fails because they do not allege Tesla's conduct caused harm to a "protected computer."................................................................13

   E. Plaintiffs fail to allege sufficient damages to assert a CFAA claim.........................................................15

**II.** The Court should dismiss Plaintiffs' Song-Beverly express warranty claim. ..................................................................................16

**III.** Plaintiffs' Song-Beverly implied warranty claim fails. ................................19

   A. Plaintiffs cannot allege facts showing any manifestation of the defect in their vehicles during the one-year implied warranty period. ........................................................19

   B. Fish's implied warranty claim is time-barred..........................20

   C. Deeble's used vehicle does not carry an implied warranty under the Song-Beverly Act. ...................................21

   D. Plaintiffs do not plead facts showing their vehicles are unmerchantable.........................................................22

**IV.** Plaintiffs' Magnuson-Moss Warranty Act claim fails. ................................23

**V.**     Plaintiffs fail to state a claim under California's Computer Data Access

and Fraud Act. .............................................................................................24

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Aetna Life Ins. Co. v. All Med. Servs.*,
  Inc., 855 F.2d 1470 (9th Cir. 1988)........................................................... 1

*Am. Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) ................................................................. 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................. 5

*Atkinson v. Elk Corp. of Texas*,
  142 Cal. App. 4th 212 (2006) ................................................................. 19

*Azoulai v. BMW of N. Am. LLC*,
  No. 16-cv-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................... 5

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................. 5

*Blanda v. Butler*,
  No. 16-01008, 2016 WL 10842584 (C.D. Cal. Aug. 22, 2016) ................. 5, 7, 9

*Brownfield v. Jaguar Land Rover N. Am., LLC*,
  584 F. App'x 874 (9th Cir. 2014)............................................................ 16

*Cadena v. Am. Honda Motor Co.*,
  No. CV 18-4007-MWF, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ............... 17

*Calendar Research LLC v. Stubhub, Inc.*,
  No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13,
  2020) ................................................................................................... 13

*Capital Audio Access, Inc. v. Umemoto*,
  980 F. Supp. 2d 1154 (E.D. Cal. 2013) ................................................... 14

*Clark v. Am. Honda Motor Co*.,
    Inc., CV 20-03147 AB (MRWx), 2021 WL 4260232 (C.D. Cal. Sept.
    14, 2021) ......................................................................................................... 16, 17

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................................................ 23

*Custom Packaging Supply, Inc. v. Phillips*,
    15-cv-04584-ODW, 2016 WL 1532220 (C.D. Cal. Apr. 15, 2016) ...................... 13

*Dagher v. Ford Motor Co*.,
    238 Cal.App.4th 905 (2015) ............................................................................ 20, 21

*Ewiz Express Corp. v. Ma Am. Inc. v. Serv. Key, LLC*,
    No. 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) .................. 5, 6, 7

*Ewiz Express Corp. v. Ma Laboratories, Inc*.,
    No. 15-cv-01213-LHK, 2015 WL 5680904 (N.D. Cal. Sept. 28, 2015)............... 7, 9

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc*.,
    13-cv-00784-MCE-DAD, 2013 WL 3872950 (E.D. Cal. July 25,
    2013) ....................................................................................................................... 14

*Ferris v. Ford Motor Comp*.,
    18-cv-03216-JSW, 2019 WL 1100376 (N.D. Cal. March 3, 2019)....................... 20

*Glam & Glits Nail Design, Inc. v. NotPolish, Inc*.,
    No. 21-CV-0052-GPC-DEB, 2021 WL 2317410 (S.D. Cal. June 7,
    2021) ....................................................................................................................... 12

*Gonzales v. Uber Techs., Inc*.,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018)............................................................... 9, 24

*Grodzitsky v. Am. Honda Motor Co., Inc*.,
    No. 2:12-cv-1142-SVW-PLA, 2013 WL 2631326 (C.D. Cal. June 12,
    2013) ....................................................................................................................... 19

*Hovsepian v. Apple, Inc*.,
    No. 08-5788-JF-PVT, 2009 WL 2591445 (N.D. Cal. Aug. 21, 2009)................... 22

*In re Apple & ATTM Antitrust Litig*.,
    No. C 07-05152, 2010 WL 3521965 (N.D. Cal. July 8, 2010) .............................. 24

*In re Apple Inc. Device Performance Litig*.,
    347 F. Supp. 3d 434 (N.D. Cal. 2018)..................................................................... 10

*In re Apple Inc. Device Performance Litig*.,
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) .................................................. 5, 7

*In re Facebook Privacy Litig*.,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................... 6

*In re iPhone Application, Litig*.,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................. 10, 11

*In re MyFord Touch Consumer Litig*.,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ....................................................... 17

*In re Sony PS3 Other OS Litig*.,
    551 F. App'x 916 (9th Cir. 2014) ............................................................. 11

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007) ......................................................... 21, 22,23

*IV Solutions, Inc. v. Connecticut General Life Insurance Company*,
    13-9026-GW, 2015 WL 12843822 (C.D. Cal. Jan. 29, 2015) ................... 8

*Johnson v. Nissan North America, Inc*.,
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................... 21

*JS Barkats PLLC v. BE, Inc*.,
    No. 12 Civ 6779, 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) .................... 1

*Kahn v. FCA US LLC*,
    No. 2:19-cv-00127-SVW-SS, 2019 WL 3955386 (C.D. Cal. Aug. 2,
    2019) ......................................................................................................... 5

*Kearns v. Ford Motor Co*.,
    567 F.3d 1120 (9th Cir. 2009) .............................................................. 5, 7

*Kent v. Hewlett-Packard Co*.,
    No. 09-5341-JF-PVT, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ....................... 22

*Knafo v. Jaguar Land Rover N. Am., LLC*,
    No. CV-18-01401-AB-KSX, 2019 WL 6482231 (C.D. Cal. July 12,
    2019) ....................................................................................................... 16

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
    440 F. App'x 604 (10th Cir. 2011) ........................................................... 1

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 ................................................................................................ 6, 11

*Marchante v. Sony Corp. of Am.*,
   801 F. Supp. 2d 1013 (S.D. Cal. 2011) ................................................................ 19

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ................................................................... 13

*Peterson v. Mazda Motor of Am., Inc.*,
   44 F. Supp. 3d 965 (C.D. Cal. 2014) ................................................................... 19

*Resnick v. Hyundai Motor Am., Inc.*,
   No. CV-16-00593-BRO-PJWX, 2017 WL 1531192 (C.D. Cal. Apr.
   13, 2017) ............................................................................................................ 22

*Robbins v. Hyundai Motor Am.*,
   No. SACV 14-00005-JLS, 2014 WL 4723505 (C.D. Cal. Aug. 7,
   2014) .................................................................................................................. 23

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) .................................................................... 6

*Silvio v. Ford Motor Co.*,
   109 Cal. App. 4th 1205 (2003) ............................................................................ 16

*Sunbelt Rentals v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................................................. 23

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................... 13

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................................. 22

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................... 22

*Troup v. Toyota Motor Corp.*,
   545 Fed. Appx. 668 (9th Cir. 2013) .................................................................... 22

*Valencia v. Volkswagen Grp. Of Am. Inc.*,
   199 F. Supp. 3d 1130 (N.D. Cal. 2015) ............................................................... 19

*Van Buren v. United*
    States, 141 S. Ct. 1648 (2021) ................................................................. 6, 11, 12, 13

*Yi v. BMW of N. Am., LLC*,
    No. 2:17-cv-06467-SVW, 2018 WL 3359016 (C.D. Cal. May 24,
    2018) ........................................................................................................................... 16

*Zuehlsdorf v. FCA US LLC*,
    No. EDCV181877JGBKKX, 2019 WL 2098352 (C.D. Cal. Apr. 30,
    2019) ........................................................................................................................... 22

**STATUTES**

18 U.S.C. §§ 1030(a)(4) ................................................................................... 6, 7, 11, 13

18 U.S.C. § 1030(a)(5)(A) ................................................................................ 6, 7, 13, 14

18 U.S.C. § 1030(a)(5)(C) ..................................................................................... 6, 7, 9

18 U.S.C. §§ 1030 (g) & c(4)(A)(i)(I) ......................................................................... 14

Cal. Civ. Code § 1791(a) ........................................................................................ 20, 21

Cal. Civ. Code § 1792 ................................................................................................... 20

Cal. Civ. Code § 1795.5 ................................................................................................ 21

Cal. Civil Code § 1793.2(d)(1) ............................................................................... 16, 17

Cal. Com. Code § 2725 ................................................................................................. 20

Cal. Penal Code § 502 ................................................................................................... 23

Cal. Penal Code § 502(e)(1) ......................................................................................... 24

Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*) ................................. 1, 5, 6

Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*) ............................... 2, 5, 23

Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*) .............. passim

## INTRODUCTION

Plaintiff Robert Fish, who is the founding partner of the law firm that represents him in this case, and plaintiff M. Deeble filed this putative class action against Tesla, Inc. alleging Tesla violated the Song Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act ("MMWA"), and the Computer Fraud and Abuse Act ("CFAA"). Plaintiffs allege that the lithium ion batteries in Tesla vehicles experience capacity loss as the vehicles age,[1] and—purely on "information and belief"—that Tesla hides this gradual loss of capacity over time behind software updates. However, all of Tesla's customers—including Plaintiffs—affirmatively install and thereby consent to receiving software updates and, Tesla's software updates improve functionality, comfort, and safety across all Tesla vehicles.[2] Overall, Plaintiffs' First Amended Complaint suffers from numerous legal deficiencies, fails to properly plead the causes of actions asserted and should be dismissed.

First, the CFAA claims fail because Plaintiffs do not meet the heightened pleading standard required under Fed. R. Civ. P. 9(b).  Notwithstanding this fatal defect, Plaintiffs also consented to the software updates at issue which negates any claim that Tesla lacked permission or exceeded authorization—necessary elements for a claim under the CFAA. And, Plaintiffs do not allege damages sufficient for a CFAA claim. Indeed, Plaintiffs' CFAA claim runs contrary to the statute's purpose—to combat

---

[1] Plaintiffs Zachary Hlavinka, Joel Mann, and Herbert Joel Segall are subject to the pending Motion to Compel Arbitration filed on February 25, 2022 (Dkt. 56). That motion satisfied Tesla's obligation to respond to the FAC as to those plaintiffs at this stage. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *JS Barkats PLLC v. BE, Inc.*, No. 12 Civ 6779, 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013)("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."). Tesla reserves the right to file a Rule 12(b) motion as to Plaintiffs Hlavinka, Mann, and Segall at a later time. *See Aetna Life Ins. Co. v. All Med. Servs.*, Inc., 855 F.2d 1470, 1475 (9th Cir. 1988).

[2] *See* Tesla Software Updates at https://www.tesla.com/support/software-updates ("Over-the-air software updates introduce new features and updates to your car—making your car safer and more capable over time") (last visited March 4, 2022); *see also* Tesla Software Version 10.0 at https://www.tesla.com/support/software-version-10-0 (describing software updates to allow for automatic lane change, maps improvement, dashcam improvements, Bluetooth media improvements, and more) (last visited March 1, 2022)

destructive computer hacking. The CFAA is not meant to preclude Tesla's standard industry software updates that enhance functionality.

Second, Plaintiffs' express warranty claim under the Song-Beverly Consumer Warranty Act should be dismissed because they did not provide Tesla with a reasonable number of opportunities to repair their vehicles as required under the statute. Fish only alleges one instance where he brought his vehicle in for repair and Deeble does not allege any. They have not otherwise alleged how Tesla breached any express warranty when Tesla's service technician performed a battery health check and "determined there was no issues with the battery." And to the extent Fish and Deeble believe their batteries should have been replaced under Tesla's warranty for battery capacity retention, those claims fail because that warranty did not apply to their vehicles.

Third, Plaintiffs' Song-Beverly implied warranty claim should be dismissed for at least four reasons: (1) Plaintiffs fail to allege a defect that manifested within one year of purchase; (2) Fish's implied warranty claim is barred by the statute of limitations; (3) used vehicles, like Deeble's used 2013 Model S P85+ do not carry an implied warranty under Song-Beverly; and (4) Plaintiffs fail to allege facts showing their vehicles are or were unmerchantable, *i.e.*, they never allege that they stopped driving their vehicles or that the alleged capacity loss has made their vehicles "unfit for its ordinary purpose of providing transportation."

Fourth, the MMWA claim fails because Plaintiffs have not pleaded predicate state warranty claims.

Finally, Plaintiffs make one passing reference to California's Computer Data Access and Fraud Act ("CDAFA") in the body of their complaint but fail to identify what provisions of CDAFA they believe Tesla may have violated, let alone how. For this reason, among others, they have failed to state a claim under Rule 8.

Accordingly, Plaintiffs' FAC must be dismissed in its entirety.

# BACKGROUND

Fish is a resident of Irvine, California and the apparent founder of Fish IP Law[3] (Fish's counsel in this action).  FAC ¶ 6.  He purchased a new 2014 Tesla Model S 85 in 2014. FAC ¶ 6. For several years following his purchase, Fish alleges he regularly got over 200 miles of range from an 80% drain of his battery, which he claims is "approximately equivalent to the maximum stated range." *Id*. ¶ 16. After over six years and nearly 60,000 miles later, Fish alleges he began to notice battery capacity loss in his vehicle. *Id*. ¶ 19. But before purchasing his vehicle, Fish understood that the type of batteries used to power Tesla vehicles normally lose some capacity over time. *Id*. ¶ 17. In fact, he admits that battery capacity loss "necessarily occurs from age and use of Lithium Ion technology batteries." *Id*. ¶ 31. Despite this understanding, he alleges that Tesla's batteries are defective because of alleged gradual battery capacity loss. *Id*. ¶ 19. Yet, the FAC is devoid of any allegations about how the alleged loss is above or beyond what Fish understood and expected. While he alleges that he measured his vehicle's battery capacity throughout August 2020, he fails to provide any context for the circumstances under which his vehicle was driven (e.g. road conditions and personal driving habits).[4] *Id*. ¶¶ 19-27. Rather, he concludes that Tesla "hide[s] failing battery capacity" from consumers through software updates. *Id*. ¶ 31. He does not deny, however, that Tesla's software updates actually improve the functionality, safety, and comfort of Tesla's vehicles. *See* Tesla Software Updates and Tesla Software Version 10.0, *supra*, at footnote 2.

Fish also alleges that he presented his vehicle to a Tesla service technician one time, during which the service technician performed a battery health check and

---

[3] *See* https://fishiplaw.com/team/bob-fish/ (last visited March 4, 2022).

[4] *See* https://www.tesla.com/support/range (last visited March 4, 2022) (explaining that actual range depends on many factors particularly environment and personal driving habits); see also https://www.fueleconomy.gov/feg/label/learn-more-electric-label.shtml (last visited March 4, 2022) ("Driving Range. When the vehicle is fully charged, this represents the ***approximate*** number of miles that can be travelled in combined city and highway driving before the vehicle must be recharged.")(emphasis in original).

determined that "there was no issue with his battery." *Id.* ¶ 29. Fish does not allege any other occasions where he presented his car to Tesla for a warranty repair. Indeed, Fish does not allege that he still owns his vehicle—he does not—he sold it to a third-party in September 2021.

Deeble, a California resident, purchased a used 2013 Model S P85+ from a third-party. *Id.* ¶ 10. Deeble does not allege when he purchased it or identify the third-party seller. Deeble alleges that his vehicle's prior owner received a battery replacement under warranty but does not allege when that happened. *Id.* ¶ 41. He alleges that the battery replacement or repair work performed on the vehicle before he purchased it was "ineffective" because he "routinely gets 120 miles of actual miles traveled from a full charge, or roughly 45% of what was promised." *Id.* He does not identify *what* he was promised, by *whom*, or in what manner the promise was made.  Nor does he identify how his vehicle's range changed, if at all, between when he purchased his vehicle and some other point in time. He does not say that he ever brought his vehicle in to a Tesla service center, only that he "repeatedly appealed to [Tesla]" to replace his vehicle's battery but was rejected." *Id.*

Both Fish and Deeble also fail to acknowledge that the Battery and Drive Unit Limited Warranty applicable to their 2014 Model S 85 and 2013 Model S P85+ did not actually warrant a minimum retention of battery capacity. *See* Declaration of Lis Fraser, ¶¶ 1-2, Ex. 1, at 40. That provision was not implemented until several years later. *See*, *e.g.*, New Vehicle Limited Warranty (Effective February 2019), Dkt. 56-18 at 5-6 (noting 70% retention of battery capacity warranted for Model 3); *see also* New Vehicle Limited Warranty (Effective March 2021) at https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Feb. 27, 2022) ("Any Model S or Model X purchased prior to the effective date specified on the cover page of this New Vehicle Limited Warranty is subject to the applicable Battery and Drive Unit Warranty effective as of

the date of purchase").[5] The Battery and Drive Unit Warranty effective when Fish and Deeble's 2014 and 2013 Model S vehicles were purchased did *not* cover a minimum retention of battery capacity. Ex. 1 at 40. Yet, the basis for Fish and Deeble's action is an alleged breach of warranty for failing to replace their batteries pursuant to the minimum 70% retention warranty that never applied to their vehicles. *See* FAC ¶¶ 25, 28.

On January 12, 2021, Fish filed this action. Dkt. 1. On February 4, 2022, Fish filed the FAC and added plaintiffs Zachary Hlavinka, Joel Mann, Herbert Joel Segall, and M. Deeble. Dkt. 49. In conclusory terms, plaintiffs allege that Tesla's conduct gives rise to three causes of action: (1) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*); (2) violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*); and (3) violation of Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*). On February 25, 2022, Tesla moved to compel plaintiffs Hlavinka, Mann, and Segall's claims to arbitration. Dkt. 56. Tesla now moves to dismiss Fish and Deeble's claims in their entirety.

## LEGAL STANDARD

A complaint must allege facts setting forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, blanket assertions, and recitations of legal elements are not "facts" and need not be accepted as true. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Any claims grounded in fraud must be pleaded with particularity under Rule 9(b), including claims based on concealment or omission theories. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). This also includes CFAA claims grounded in fraud. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155,

---

[5] Warranty manuals that are incorporated by reference into a plaintiff's complaint are appropriate for judicial notice. *See Kahn v. FCA US LLC*, No. 2:19-cv-00127-SVW-SS, 2019 WL 3955386, at *2 n.1 (C.D. Cal. Aug. 2, 2019) (taking judicial notice of warranty manual where plaintiff incorporated the manual by reference); *Azoulai v. BMW of N. Am. LLC*, No. 16-cv-00589-BLF, 2017 WL 1354781, at *3 (N.D. Cal. Apr. 13, 2017) (taking judicial notice of an owner's manual that was incorporated by reference). *See* FAC ¶¶ 17, 28-30, 33-34, 41, 156-159, 174-178.

1181 (N.D. Cal. 2019) (applying Rule 9(b) to CFAA claims); *Blanda v. Butler*, No. 16-01008, 2016 WL 10842584, at \*5 (C.D. Cal. Aug. 22, 2016) (same); *Ewiz Express Corp. v. Ma Am. Inc. v. Serv. Key, LLC*, No. 12-00790 SBA, 2012 WL 6019580, at \*6 (N.D. Cal. Dec. 3, 2012)(computer intrusion claims based on the notion that the defendant "fraudulently induced customers" need to satisfy Rule 9(b)).

## ARGUMENT

### I. Plaintiffs fail to state a claim under the Computer Fraud and Abuse Act.

Plaintiffs fail to allege that Tesla engaged in any actions that violated the CFAA, nor have they come anywhere close to pleading their claims with the requisite specificity under Rule 8 and Rule 9(b). Plaintiffs' allegations also seek to turn the CFAA on its head by using it to challenge activity that is standard in the industry—beneficial software updates provided by Tesla to its customers. Accordingly, the Court should dismiss Plaintiffs' CFAA claims.

The CFAA prohibits intentional activity, either by accessing a computer without authorization or exceeding authorized access, to obtain information from a protected computer or cause the transmission of some code, and thereby causing damage to the protected computer. 18 U.S.C. §§ 1030(a)(4), (a)(5)(A), (a)(5)(C). It is intended to combat destructive computer hacking, not to disallow standard industry software updates, like Tesla's updates. *See Van Buren v. United* States, 141 S. Ct. 1648, 1652 (2021) (noting that the CFAA was enacted following a series of highly publicized hackings); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 ("The [CFAA] was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality[.]"); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008) (finding that the "legislative history supports a narrow view of the CFAA"). Any contrary reading would be inconsistent with both that direction and with the rule of lenity. *Brekka*, 581 F.3d at 1134; *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715-16 (N.D. Cal. 2011). It would make a tortfeasor out of

1   any entity issuing software updates that did not require users installing the software to

2   affirmatively consent to each and every feature of the software.

3        In order to prevail on their CFAA claim, they must demonstrate that under

4   Section 1030(a)(5)(C), Tesla accessed the Media Control Unit ("MCU") in their

5   vehicles "without authorization"; under Section 1030(a)(4), Tesla "exceed[ed]

6   authorized access" to a protected computer (which Plaintiffs claim is the MCU in their

7   vehicles); or under Section 1030(a)(5)(A), Tesla "caused damage without

8   authorization" to the MCU. Plaintiffs fail to properly plead such claims and the Court

9   should dismiss Count I of the FAC.

10  **A.    The CFAA claim fails under both Rule 8 and Rule 9(b).**

11       Plaintiffs' CFAA claim sounds in fraud, but they failed to plead it with specificity

12  as required under Rule 9(b). *See e.g.* FAC ¶ 84 ("Tesla further acted fraudulently and

13  under the guise of 'safety' as the reason for the software updates"); *Kearns v. Ford*

14  *Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009); *In re Apple Inc. Device Performance*

15  *Litig.,* 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019) (applying Rule 9(b) to CFAA

16  claim); *Blanda v. Butler*, No. 16-01008-BRO, 2016 WL 10842584, at *5 (C.D. Cal.

17  Aug. 22, 2016) (same); *Ewiz Express Corp. v. Ma Laboratories, Inc*., No. 15-cv-01213-

18  LHK, 2015 WL 5680904, at * 6 (N.D. Cal. Sept. 28, 2015) (same); *Oracle Am. Inc. v.*

19  *Serv. Key, LLC*, No. 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012)

20  (computer intrusion claims based on the notion that the defendant "fraudulently induced

21  customers" need to satisfy Rule 9(b)). Whatever the alleged "circumstances" of the

22  fraud, including any purported omission, must be pleaded with particularity.

23       In particular, the Ninth Circuit requires that a fraud claim identify "the who, what,

24  when, where, and how" of the fraud. *Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d

25  1225, 1228 (9th Cir. 2019) (citation omitted). But Plaintiffs' FAC comes nowhere close.

26  Plaintiffs do not allege *when* the purportedly offending updates were installed. Plaintiffs

27  do not allege *who* installed the updates—an essential aspect for Deeble who purchased

28  his car from a third-party. And Plaintiffs fail to allege *what* software update(s) they

believe exceeded authorization or were without authorization, let alone *how*. Tesla provides a number of over-the-air software updates to customers' vehicles every year. And these updates can include improvements to different aspects of the vehicle or user experience.

It is not entirely clear what Plaintiffs are alleging. On the one hand they appear to argue that Tesla is hiding declining battery capacity through software updates (*see* FAC ¶ 31) yet at the same time they argue that Tesla manipulates its software updates to display inflated driving ranges (*see id*. ¶ 34) but later Plaintiffs allege that Tesla manipulates its software updates to actually limit battery capacity (*see id*. ¶ 72). What *is* clear is that they plead no facts to support any of these allegations. Indeed, the vast majority of their allegations in support of their CFAA claim are based on information and belief. *See, e.g.,* FAC. ¶¶ 31, 34, 45, 60-69, 72, 79. This is a far cry from satisfying Rule 8 much less Rule 9(b). Their CFAA claim should be dismissed for this reason.

Even setting that aside, they do not allege any facts to establish how Tesla's software updates exceeded their authorization as defined by the CFAA (*e.g.*, was Tesla not allowed to access a certain part of the MCU?). All they allege is that they did not consent to software updates limiting their battery capacity but that is not a proper "exceeds authorization" claim. *Van Buren*, 141 S.Ct. at 1662 (holding that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him"). Accordingly, it is impossible for Tesla to determine how it may have exceeded their consent. Without such detail, their complaint is nothing more than an improper attempt to secure discovery against Tesla without basis. *See IV Solutions, Inc. v. Connecticut General Life Insurance Company*, 13-9026-GW, 2015 WL 12843822, at *14 (C.D. Cal. Jan. 29, 2015) (Particularity requirement for fraud "serves several purposes: it ensures that a defendant has sufficient information to formulate a defense … it eliminates fraud actions in which all the facts

1    are learned after discovery … it provides an increased measure of protection for a

2    defendant's reputation"). Thus, their claim should be dismissed for this reason as well.

3         To the extent Plaintiffs are alleging that Tesla fraudulently misrepresented the

4    contents of the software updates, they plead no facts to support such an argument.

5    Plaintiffs allege Tesla "acted fraudulently and under the guise of 'safety' as the reason

6    for the software updates" and "failed to provide any information to its customers that

7    such software updates would lead to a significant reduction in charging speed,

8    performance, and severe loss of range for their vehicles." FAC ¶¶ 83-84. Apart from

9    Plaintiffs' failure to identify the specific updates or the dates they occurred, these

10   generalized allegations are also insufficient because they fail to identify how Tesla acted

11   "under the guise of 'safety.'" For example, did Tesla make a statement to that effect?

12   And if so, what statement, when, and did Plaintiffs even see it? Without these required

13   details, it is impossible for Tesla to know how it supposedly deceived these specific

14   plaintiffs (or anyone). *See Blanda*, 2016 WL 10842584, at *5 (dismissed CFAA claim

15   because plaintiffs "failed to show with any particularity when each Defendant engaged

16   in the alleged conduct, or how each Defendant exceeded the authorization for use of

17   Plaintiffs' computers."); *Ewiz Express Corp.,* 2015 WL 5680904, at * 6 (dismissing

18   CFAA claim because "the allegations that … [defendant] 'knowingly accessed

19   Plaintiff's computer and webpage causing transmission of a command to delete

20   information from the webpage and intentionally and/or recklessly caused damage and

21   loss' are vague allegations that merely repeat the elements of a CFAA violation").

22   "[N]either [defendant] nor the Court should have to guess how Plaintiffs contend these

23   [computer intrusion laws] were violated." *Gonzales v. Uber Techs., Inc*., 305 F. Supp.

24   3d 1078, 1090 (N.D. Cal. 2018). Plaintiffs' "exceed authorization" claim lacks the

25   specificity required to proceed and should therefore be dismissed.

26        **B.    Plaintiffs' "without authorization" claim under Section 1030(a)(5)(C)**

27        **fails because they consented to Tesla's software updates.**

28

9

The Court should dismiss Plaintiffs' Section 1030(a)(5)(C) claim because the complaint alleges that Plaintiffs authorized Tesla's access. FAC. ¶¶ 177, 77. The CFAA requires the opposite—access to a protected computer "without authorization". 18 U.S.C. § 1030(a)(5)(C). Indeed, Plaintiffs admit that they "accep[ted] all of the over-the-air updates provided by Tesla" and recognized that owners have a choice to postpone software updates. FAC. ¶¶ 177, 77. By affirmatively "accepting" software updates on their vehicles, Plaintiffs consented to just the sort of access they now contend was "without authorization."[6]

Courts have dismissed CFAA claims on similar facts. In litigation arising from alleged harmful effects of iPhone updates and application downloads, for example, courts have held that CFAA claims premised on unauthorized access fail where the party consented to the allegedly damaging download. *See In re iPhone Application, Litig*., 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012); *In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) ("[U]sers who voluntarily installed software would have serious difficulty pleading unauthorized access under the CFAA.") (citations and quotations omitted).

In *In re iPhone Application*, plaintiffs alleged Apple violated the CFAA by collecting certain personal data from plaintiffs without their authorization after they downloaded applications to their iPhones. 844 F. Supp. 2d at 1065. Though plaintiffs chose to download the offending applications, they nevertheless argued that they did not consent to continuous geolocation monitoring while using the applications. *Id*. at 1065. The court dismissed plaintiffs' unauthorized access claims reasoning that Apple had authority to access their devices as a result of the voluntary installation of the software. *Id*. at 1066.

---

[6] *See* Tesla Software Updates, *supra*, at footnote 1 (explaining that owners have the option to install the update immediately or schedule for later).

MEMORANDUM ISO MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 8:21-CV-00060-PSG-JDE

1    Just as the plaintiffs in *In re iPhone Application* consented to Apple accessing

2    their devices by downloading software that gave Apple access, here, Plaintiffs

3    consented to receiving software updates by accepting software updates for years. Of

4    course Plaintiffs wanted these updates—like most Tesla owners, they wanted the latest

5    and greatest software version because of the benefits these updates confer. FAC. ¶¶ 177,

6    77. Indeed, they do not dispute the benefits they received from Tesla's software updates

7    throughout their ownership. *See* Tesla Software Updates and Tesla Software Version

8    10.0, *supra*, at footnote 1. Such software updates not only enhance existing features of

9    Tesla vehicles but are also designed to provide new features ranging from entertainment

10   to safety. *Id.* Tellingly, Plaintiffs do not allege that they chose to stop receiving software

11   updates since uncovering the "truth" about Tesla's allegedly deceptive software

12   updates.

13   Because Plaintiffs voluntarily consented to software updates or otherwise

14   permitted the alleged "access" to their MCU by choosing not to postpone the updates,

15   their CFAA claim should be dismissed. *See In re Sony PS3 Other OS Litig.*, 551 F.

16   App'x 916, 923 (9th Cir. 2014) (affirming dismissal of CFAA claim because "Plaintiffs

17   voluntarily installed the relevant software update," and thus "cannot allege actionable

18   'access' under the CFAA"); *Brekka*, 581 F.3d at 1135 (9th Cir. 2009) ("we hold that a

19   person uses a computer 'without authorization' under [the CFAA] when the person has

20   not received permission to use the computer for any purpose (such as when a hacker

21   accesses someone's computer without any permission)").

22   **C.    Plaintiffs' "exceeds authorization" claim under Section 1030(a)(4)**

23   **fails.**

24   Plaintiffs' "exceeds authorization" claim fails for at least two independent

25   reasons: (1) in *Van Buren*, the Supreme Court recently made clear that an "exceeds

26   authorization" claim requires allegations that an individual obtain information from

27   particular parts of a computer to which they would not normally have access; and (2)

28

1   Plaintiffs fail to allege an essential element of Section 1030(a)(4)—that Tesla obtained

2   anything "of value" through its software updates.

3            1.   ***Van Buren*** **precludes Plaintiffs' "exceeds authorized access"**

4                 **claim.**

5            Because Plaintiffs consented to the software updates, FAC. ¶¶ 177, 77, they

6   necessarily consented to the changes made by that software. *Van Buren*, 141 S.Ct. at

7   1662 (holding that Van Buren, who had authorization to access the database at issue,

8   "did not 'excee[d] authorized access' to the database, as the CFAA defines that phrase,

9   even though he obtained information from the database for an improper purpose"). Yet

10  the Supreme Court's narrow construction of "exceeds authorized access" in *Van Buren*

11  further forecloses Plaintiffs' claim. *Van Buren*, 141 S.Ct. at 1662. The Supreme Court

12  explained that an individual "exceeds authorized access" only when that individual

13  obtained information from particular parts of a computer to which they would not

14  normally have access (commonly known as "hacking"). *Id*. In other words, Plaintiffs'

15  "exceeds authorized access" claim fails because Plaintiffs not only authorized Tesla to

16  access the MCU in their vehicles by downloading the software updates, they also

17  authorized Tesla to make the updates. *Id*.

18           Under *Van Buren*, even if Tesla did something Plaintiffs believe is nefarious

19  through the software updates, *e.g.*, limit the amount of battery capacity, that is irrelevant

20  to a CFAA "exceeds authorized access" inquiry. *See*, *e.g.*, *Glam & Glits Nail Design,*

21  *Inc. v. NotPolish, Inc*., No. 21-CV-0052-GPC-DEB, 2021 WL 2317410, at *7-8 (S.D.

22  Cal. June 7, 2021) (citing cases, including *Van Buren*, and explaining whether the

23  defendant "misappropriated the information she was authorized access to is a separate

24  question outside the CFAA's scope"). What matters is that Plaintiffs allowed Tesla

25  access to the MCU to make updates to it. Thus, under *Van Buren* and Ninth Circuit law,

26  Plaintiffs have failed to allege that Tesla exceeded any authorization Plaintiffs provided

27  to it. On the contrary, Plaintiffs' allegations demonstrate that they affirmatively allowed

28  Tesla to access and update the software in their vehicles. FAC ¶¶ 77, 177. After

receiving the benefit of software updates for years, Plaintiffs now claim that they simply did not want Tesla to allegedly "limit the amount of battery capacity and charging speed." *Id*. ¶ 83. That is neither a crime nor a tort under the CFAA. *Van Buren*, 141 S. Ct. at 1662 ("Van Buren accordingly did not 'excee[d] authorized access' to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose."). For this reason alone, the Court should dismiss Plaintiffs' "exceeds authorization" claim.

### 2. Plaintiffs fail to allege Tesla obtained something "of value."

Plaintiffs' Section 1030(a)(4) claims also require that they allege Tesla obtained information or something "of value" in connection with accessing their MCUs. 18 U.S.C. § 1030(a)(4); *Calendar Research LLC v. Stubhub, Inc*., No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391, at *22-23 (C.D. Cal. May 13, 2020). Plaintiffs make no such allegation. Their claims should be dismissed for this reason too.

### D. Plaintiffs' Section 1030(a)(5)(A) claim fails because they do not allege Tesla's conduct caused harm to a "protected computer."

Plaintiffs' improper application of the CFAA is highlighted by their admission that the underlying issue is an allegedly "defective" battery and not damage to an actual "computer," let alone a "protected computer." FAC ¶¶ 28-31, 42-43, 59, 64, 67, 69, 79, 126, 143.

In order to allege a CFAA claim, Plaintiffs must allege damage to a "protected computer." *See* 18 U.S.C. § 1030(a)(5)(A)("…and as a result of such conduct, intentionally causes damage without authorization, to a protected computer"). As the Supreme Court clarified in *Van Buren*, "[t]he statutory definitions of 'damage' … focus[es] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems or data." 141 S. Ct. at 1660 (citing Section 1030(e)(8); *accord Custom Packaging Supply, Inc. v. Phillips*, 15-cv-04584-ODW, 2016 WL 1532220, at *4 (C.D. Cal. Apr. 15, 2016)(dismissing CFAA claim for failure to allege that defendant damaged any systems or destroyed any data as a result

1    of his conduct in accessing plaintiff's computer systems); *Synopsys, Inc. v. Ubiquiti*

2    *Networks, Inc*., 313 F. Supp. 3d 1056, 1072 (N.D. Cal. 2018) ("the claim under §

3    1030(a)(5) requires a showing of *damage* to the computer systems")(emphasis in

4    original); *NetApp, Inc. v. Nimble Storage, Inc*., 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014)

5    (pursuant to the CFAA, "damages" means physical "harm to computers or networks,"

6    either by destroying them or rendering them less secure). The FAC does not identify

7    any such damage or security breach to the MCU in Plaintiffs' vehicles.

8         Instead, Plaintiffs generally assert that Tesla's software updates "significantly

9    reduced the effective battery capacity of the Class Vehicles." FAC ¶ 79.[7] Even if this

10   was true, this is alleged damage to the battery in their vehicles, not CFAA-qualifying

11   "damage" to a "protected computer." *See Capital Audio Access, Inc. v. Umemoto*, 980

12   F. Supp. 2d 1154, 1157-58 (E.D. Cal. 2013) (dismissing CFAA claim where plaintiff

13   alleged only lost business income rather than "impairment to the integrity or availability

14   of data, a program, a system, or information"); *Farmers Ins. Exchange v. Steele Ins.*

15   *Agency, Inc*., 13-cv-00784-MCE-DAD, 2013 WL 3872950, at *21 (E.D. Cal. July 25,

16   2013)("[C]osts not related to computer impairment or computer damages are not

17   compensable under the CFAA."). Because Plaintiffs fail to plead any "damage" to a

18   "protected computer" as those terms are defined by the CFAA, their Section

19   1030(a)(5)(A) claim fails.

20        Putting that aside, and presuming Plaintiffs have alleged that Tesla's software

21   updates caused damage to MCUs (they have not), Plaintiffs do not plead any facts

22   showing this to actually be the case with respect to their particular vehicles, at least in

23   any meaningful way that would support the inference that their specific MCU was

24   damaged. Indeed, Plaintiffs' FAC is devoid of any factual allegations that set forth a

25   causal connection between a particular software update and a corresponding decrease

26   in battery range.

27

28   _____

[7] Plaintiffs do not explain *why* Tesla would want to "effectively limit the maximum amount of battery capacity" in its vehicles through software updates.

1    Accordingly, Plaintiffs have not alleged damage to a "protected computer"

2   sufficient to allege damages under Section 1030(a)(5)(A).

3        **E.    Plaintiffs fail to allege sufficient damages to assert a CFAA claim.**

4        Plaintiffs do not allege facts sufficient to show that Tesla's actions caused at

5   least $5,000 in economic damage as is required to assert a CFAA claim. 18 U.S.C. §§

6   1030 (g) & c(4)(A)(i)(I). While Plaintiffs state in a conclusory fashion that the cost of

7   a battery replacement is "approximately $20,000 to $25,000," they make no allegation

8   that they have actually incurred that cost (or any). FAC ¶ 146. Tellingly, Fish does not

9   allege he still owns his vehicle (because he sold it).

10        Critically, however, as discussed above, Plaintiffs have not alleged "damage" as

11   defined by the CFAA. *See* Section I.D., *supra*. But even if they did—and even if

12   Tesla's software updates "reduced the effective battery capacity" more than what was

13   expected for a used 2013 Model S and a 2014 Model S, and Plaintiffs sufficiently

14   alleged a predicate CFAA violation and harm to a "protected computer"—Plaintiffs

15   are not entitled to the full cost of a battery for the battery not maintaining the capacity

16   they believe it should maintain. The batteries did not fail but performed without

17   incident for many years.

18        Even if what Plaintiffs allege about the software updates hiding the defective

19   battery capacity were true and sufficient to establish damage to a "protected

20   computer," Plaintiffs suffered no actual damage from the alleged deception via

21   software updates because they were still within Tesla's 8-year battery warranty. FAC

22   ¶ 175. This is underscored by their own actions – they demanded a warranty

23   replacement but were ultimately denied one at that time because the technician

24   determined that there was no problem. *Id*. ¶¶ 29, 41. Thus, because Plaintiffs' CFAA

25   claim is meritless, they also bring breach of warranty claims. For the reasons

26   explained below, however, those fail too.

27

28

## II.     The Court should dismiss Plaintiffs' Song-Beverly express warranty claim.

The Court should dismiss Plaintiffs' Song-Beverly express warranty claim because they did not provide Tesla with a reasonable number of opportunities to repair their vehicles, did not allege a refusal to repair, Deeble in particular does not allege he ever brought his vehicle in during the warranty period, and both failed to allege how the New Vehicle Limited Warranty applicable to their vehicles covered battery capacity retention.

The Song-Beverly Act requires a plaintiff to prove that "the manufacturer or its representative in this state [could] not service or repair the goods to conform to the applicable express warranties after a reasonable number of *attempts* [.]" Cal. Civil Code § 1793.2(d)(1) (emphasis added). Because the word "attempts" is plural, a single attempt cannot constitute a violation of the Act. *Silvio v. Ford Motor Co*., 109 Cal. App. 4th 1205, 1207-08 (2003) ("The statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle."); *see also Knafo v. Jaguar Land Rover N. Am., LLC*, No. CV-18-01401-AB-KSX, 2019 WL 6482231, at *2 (C.D. Cal. July 12, 2019) (acknowledging that "[c]ourts have interpreted the language of this provision to require a plaintiff to show multiple attempts to repair the product to a confirming state."). To survive a motion to dismiss, Plaintiffs must allege that they brought their vehicles in for the repair of a particular issue on more than one occasion. *See Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014); *Clark v. Am. Honda Motor Co*., Inc., CV 20-03147 AB (MRWx), 2021 WL 4260232, at *3 (C.D. Cal. Sept. 14, 2021) ("Plaintiffs failure to make more than one repair presentation precludes them from arguing that the warranty failed of its essential purpose"); *see also Yi v. BMW of N. Am., LLC*, No. 2:17-cv-06467-SVW, 2018 WL 3359016, at *4 (C.D. Cal. May 24, 2018) ("To constitute a 'reasonable number of repair attempts,' a plaintiff must present the vehicle to the manufacturer or seller more than once, complaining of the same defect each time").

1    Here, Fish simply claims that he presented his vehicle to a Tesla service

2    technician once—although he does not allege when that occurred—the service

3    technician performed a battery health check and determined at that time that "there were

4    no issues with the battery." FAC ¶ 29. Fish complains that after Tesla's alleged "refusal"

5    to replace his battery, he continued to experience reduced battery capacity but does not

6    allege that he ever brought his vehicle back for assessment or repair.

7    Similarly, Deeble fails to plead that he presented his vehicle to a service center

8    at all, let alone facts to demonstrate that his vehicle's battery was subject to a warranty.

9    In fact, all Deeble says is that he "repeatedly *appealed* to [Tesla]" and made "many

10   requests." FAC ¶ 41 (emphasis added). It is unclear how Deeble "appealed" to Tesla,

11   *e.g.*, did Deeble present his vehicle or simply call to inquire about a replacement?

12   Plaintiffs' claims of continued reduced battery capacity are insufficient to plead any

13   breach of warranty. Rather, they must allege they each provided Tesla with a reasonable

14   number of opportunities to repair their vehicles. They plead no such facts. Their express

15   warranty claim should be dismissed for this reason alone. Cal. Civil Code §

16   1793.2(d)(1); *Clark*, 2021 WL 4260232, at *3 (dismissing express warranty claim

17   because "Plaintiffs' failure to make more than one repair presentation precludes them

18   from arguing that the warranty failed of its essential purpose.").

19   Deeble also does not allege *when* his "appeals" occurred, let alone that they were

20   made within any applicable warranty period. Crucially, Plaintiffs allege that Tesla

21   provided an 8-year warranty on its batteries. FAC ¶ 157. Because Deeble's vehicle is a

22   2013 model, and he was added as a Plaintiff in this case in February 2022 (*i.e.*, more

23   than 8 years later), pleading *when* he purchased his car and *when* he "appealed" are

24   necessary elements of Deeble's warranty claim. Deeble's failure to plead this

25   information requires dismissal.

26   Further, to the extent Plaintiffs allege that Tesla refused to repair their vehicles,

27   their allegations make clear that Tesla found no problems with it. A service technician's

28   inability to replicate an alleged defect does not equate to a refusal to repair. *See, e.g.*,

*Clark*, 2021 WL 4260232, at *3-4; *Cadena v. Am. Honda Motor Co*., No. CV 18-4007-MWF, 2018 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018) ("the Court is unpersuaded by Plaintiff's argument that Honda 'refused' to repair the vehicles when the dealerships could not duplicate the alleged issue and thus did not initiate any repairs—these facts simply cannot support the conclusions that the dealership 'refused' to repair, as the dealer could not identify any issue that required repair."); *see also In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 970-71 (N.D. Cal. 2014) (dismissing plaintiffs' breach of express warranty claim and explaining that plaintiffs are not excused from bringing their cars in for repairs because they believe to do so would be futile).

Moreover, the New Vehicle Limited Warranty applicable to Fish and Deeble's vehicles did not cover battery capacity retention. *See* Background, *supra* at 4.

> The Battery, like all lithium-ion batteries, will experience gradual energy or power loss with time and use. Loss of Battery energy or power over time or due to or resulting from Battery usage, is NOT covered under this Battery and Drive Unit Limited Warranty. See your owner documentation for important information on how to maximize the life and capacity of the Battery.

Ex. 1 to Fraser Decl. (emphasis in original). Thus, the plain language of Tesla's warranty upon which Plaintiffs rely does not require Tesla to replace Fish or Deeble's batteries once they fell below 70% capacity. As explained above, Tesla's warranty that factors in battery capacity percentage was implemented several years later and was not retroactive. Thus, Plaintiffs' warranty claim should be dismissed.

In sum, Plaintiffs have not alleged more than one repair presentation, failed to allege a refusal to repair, Deeble failed to allege he presented his vehicle during the warranty period, and the New Vehicle Limited Warranty applicable to their vehicles never covered battery capacity retention. Their express warranty claims should be dismissed.

**III.     Plaintiffs' Song-Beverly implied warranty claim fails.**

The Court should also dismiss Plaintiffs' implied warranty claim under the Song-Beverly Act because (1) Plaintiffs' alleged defects did not occur within the first year of ownership and are, thus, time-barred, (2) Fish purchased his vehicle in 2014 but did not file this action until January 2021, rendering his claim time-barred, (3) Song-Beverly's implied warranty does not apply to Deeble's used vehicle that he purchased from a third-party; and (4) Plaintiffs fail to plead unmerchantability,

**A.     Plaintiffs cannot allege facts showing any manifestation of the defect in their vehicles during the one-year implied warranty period.**

Plaintiffs do not allege that a defect manifested during the applicable implied warranty period, which, under California law is no longer than one year from the time of purchase. *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 231 (2006); *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014) (holding a plaintiff must allege "facts to show that her vehicle was unmerchantable within the implied warranty period set by the Song-Beverly Act."); *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011) (dismissing Song-Beverly claims where plaintiffs did not "report any issues arising during the one year period" for new vehicles and "did not bring suit until … after the implied warranties have expired.").

Where a plaintiff fails to allege specific facts supporting a claim that the alleged defect existed within the one-year implied warranty period, the claim must be dismissed. *Peterson*, 44 F. Supp. 3d at 972; *see also Marchante*, 801 F. Supp. 2d at 1021; *Grodzitsky v. Am. Honda Motor Co., Inc.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 2631326, at *11 (C.D. Cal. June 12, 2013) (dismissing Song-Beverly implied warranty "[b]ecause the windows at issue in this case did not begin to fail until well more than a year after they were purchased."); *Valencia v. Volkswagen Grp. Of Am. Inc.*, 199 F. Supp. 3d 1130, 1140 (N.D. Cal. 2015) (dismissing Song-Beverly Act claim because, while plaintiffs alleged braking defect caused rapid wear and required early

1  replacement, "there is no allegation that the brakes did not function when purchased. In

2  fact, Plaintiffs allege that it took thousands of miles of normal use for the brakes to show

3  signs of the braking defect."). To hold otherwise "would render the duration provision

4  of the Song-Beverly Act meaningless because [e]very defect that arises could

5  conceivably be tied to an imperfection existing during the implied warranty period."

6  *Peterson*, 44 F. Supp. 3d at 971-72.

7  Here, because Fish purchased his vehicle in 2014, the one-year warranty period

8  expired in 2015, approximately five years *before* Fish alleged his vehicle experienced

9  "significant loss in actual range traveled." FAC ¶¶ 15, 19. His implied warranty claim

10  fails because he has not, and cannot, allege facts showing any defect in his vehicle

11  existed during the one-year implied warranty period.

12  Likewise, Deeble does not even allege *when* he purchased his vehicle let alone

13  facts showing that a defect in his vehicle existed during the one-year implied warranty

14  period.

15  Accordingly, Plaintiffs' implied warranty claim fails for this reason as well.

16  **B.    Fish's implied warranty claim is time-barred.**

17  The statute of limitations for breach of implied warranty is four years. Cal. Com.

18  Code § 2725. The four-year limitations period, moreover, begins to accrue on the day

19  the product is delivered:

> A cause of action accrues when the breach occurs, regardless of the
> aggrieved party's lack of knowledge of the breach. A breach of
> warranty occurs when tender of delivery is made, except that where
> a warranty explicitly extends to future performance of the goods and
> discovery of the breach must await the time of such performance the
> cause of action accrues when the breach is or should have been
> discovered.

25  Cal. Com. Code § 2725(2); *Ferris v. Ford Motor Comp.*, 18-cv-03216-JSW, 2019 WL

26  1100376, *2 (N.D. Cal. March 3, 2019) ("[A] claim for breach of implied warranty

27

28

1    accrues, and, therefore, the statute of limitations begins to run, upon tender of

2    delivery.").

3            Thus, Fish's claim for breach of the implied warranty accrued in 2014, the year

4    of delivery. FAC ¶¶ 6, 11. This suit was filed on January 12, 2021—more than 2 years

5    after the statute of limitations expired on Fish's claim.

6        **C.    Deeble's used vehicle does not carry an implied warranty under the**

7             **Song-Beverly Act.**

8            The Song–Beverly Act provides that "every sale of consumer goods that are sold

9    at retail in this state shall be accompanied by the manufacturer's and the retail seller's

10   implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "Consumer

11   goods" are defined to govern "new" products. Cal. Civ. Code § 1791(a). "The Act treats

12   new motor vehicles somewhat differently from used motor vehicles." *Dagher v. Ford*

13   *Motor Co*., 238 Cal.App.4th 905, 921 (2015). The only section of the Act that applies

14   to used goods is Section 1795.5, which is titled "Used goods; obligation of *distributor*

15   *or retail seller*; maintenance of service and repair facilities; duration of warranties."

16   Cal. Civ. Code § 1795.5 (emphasis added). The plain language of the section clearly

17   only creates obligations on behalf of "the distributor or retail seller making express

18   warranties with respect to used consumer goods (*and not the original manufacturer*

19   ...)." Cal. Civ. Code § 1795.5(a) (emphasis added).

20           In *Dagher*, plaintiff purchased a used car from a private party and subsequently

21   brought suit against Ford for breach of implied warrant under the Song-Beverly Act.

22   238 Cal.App.4th at 910–11. The court held that "even though its written warranty had

23   not yet expired," plaintiff had no recourse against Ford because the Song-Beverly Act's

24   implied warranty "restrict[s] the types of sellers and goods, as well as buyers, that

25   qualify for its protection." *Id.* at 926.

26           Deeble alleges that he purchased his used 2013 Model S P85+ from an

27   unidentified "private owner." FAC ¶ 10. Any warranties that may have been extended

28   to Deeble, therefore, creates obligations on behalf of the private owner, not Tesla. *See*

1    *Johnson v. Nissan North America, Inc.*, 272 F. Supp. 3d 1168, 1178-1179 (N.D. Cal.

2    2017) (dismissing plaintiff's implied warranty claim because the Song-Beverly Act

3    does not create any obligation on behalf of the original car manufacturer with respect

4    to used goods). Thus, Deeble's Song-Beverly implied warranty claim must be

5    dismissed.

6        **D.    Plaintiffs do not plead facts showing their vehicles are**

7        **unmerchantable.**

8        Plaintiffs also do not allege facts showing that their battery allegedly losing

9    capacity or Tesla's software updates somehow made their vehicles unmerchantable—a

10   required element for a Song-Beverly implied warranty claim. *See* Cal. Civil Code

11   1791.1(a). The core test of merchantability is fitness for ordinary purpose, which is

12   shown if the product is "in safe condition and substantially free of defects." *Isip v.*

13   *Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26-27 (2007). The alleged problem

14   "must be sufficiently serious so as to render the product unfit for its ordinary purpose."

15   *Hovsepian v. Apple, Inc.*, No. 08-5788-JF-PVT, 2009 WL 2591445, at *6 (N.D. Cal.

16   Aug. 21, 2009) (citing *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th

17   1291, 1295 (1995)). This requires proof of "a defect that is so basic it renders the vehicle

18   unfit for its ordinary purpose of providing transportation." *Am. Suzuki*, 37 Cal. App. 4th

19   at 1296. "[D]efects based on aesthetics or mere annoyances do not render a vehicle

20   unmerchantable." *Resnick v. Hyundai Motor Am., Inc*., No. CV-16-00593-BRO-PJWX,

21   2017 WL 1531192, at *12 (C.D. Cal. Apr. 13, 2017); *see also Zuehlsdorf v. FCA US*

22   *LLC*, No. EDCV181877JGBKKX, 2019 WL 2098352, at *10 (C.D. Cal. Apr. 30, 2019)

23   (confirming that "[u]nlike express warranties, an implied warranty of merchantability

24   requires only a "minimum level of quality'" and that "[i]t is sufficient for a vehicle to

25   meet the minimum requirement if it is fit for driving."). A vehicle is not unmerchantable

26   if it can still be driven. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc*., 992 F.

27   Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claims by Plaintiffs

28

1    who "have not alleged that they stopped using their vehicles"); *see also Kent v. Hewlett-*

2    *Packard Co*., No. 09-5341-JF-PVT, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010).

3            Plaintiffs allege no facts that would support an inference that their vehicles cannot

4    be operated safely, or even that the alleged reduced battery capacity prevented them

5    from driving their vehicles, or that they ever stopped driving their vehicles. *See Troup*

6    *v. Toyota Motor Corp*., 545 Fed. Appx. 668, 669 (9th Cir. 2013) ("The Troups failed to

7    allege that their Prius was unfit for its intended purpose, as the alleged defect did not

8    compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage

9    range … the defect alleged by the Troups did not implicate the Prius's operability; rather

10   it merely required the Troups to refuel more often. Absent more, the complaint fails to

11   state a plausible claim for breach of the implied warranty of merchantability."); 

12   *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010) (dismissing breach

13   of implied warranty claim where washing machine never failed to serve its essential

14   washing purpose even though at times it "took three to four hours to complete a single

15   load of laundry"); *cf. Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 22 (2007)

16   (affirming breach of implied warranty claim where, within first year, vehicle gave off

17   "an offensive smell" when the air conditioner was used; "made a loud tugging noise"

18   when engaging the gear; "made a clanking noise" when releasing the brake in reverse;

19   made a loud knocking sound; emitted smoke from the exhaust system; and, when the

20   gears shifted to accelerate, "pulled back, hesitated, and then took off like a slingshot").

21   In fact, they have not plausibly alleged that the battery capacity loss is above or beyond

22   what they understood as normal. FAC ¶ 17. Their implied warranty claim should be

23   dismissed for this reason.

24   **IV.          Plaintiffs' Magnuson-Moss Warranty Act claim fails.**

25           Plaintiffs have failed to adequately plead predicate state warranty claims, so their

26   individual MMWA claims must also be dismissed. "[C]laims under the Magnuson-

27   Moss Act stand or fall with [Plaintiff's] express and implied warranty claims under state

28   law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *accord*

1  *Robbins v. Hyundai Motor Am.*, No. SACV 14-00005-JLS, 2014 WL 4723505, at *10

2  (C.D. Cal. Aug. 7, 2014) (dismissing MMWA claim for failure to adequately allege

3  state warranty claim).

**V.  Plaintiffs fail to state a claim under California's Computer Data Access and Fraud Act.**

6  Plaintiffs fail to state a claim for relief under California's Computer Data Access

7  and Fraud Act ("CDAFA"). Cal. Penal Code § 502. CDAFA is "an anti-hacking statute

8  intended to prohibit the unauthorized use of any computer system for improper or

9  illegitimate purpose[s]." *Sunbelt Rentals v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D.

10  Cal. 2014). As an initial matter, Plaintiffs do not identify what provisions of the CDAFA

11  they believe Tesla may have violated, let alone how. Indeed, the CDAFA is mentioned

12  *once* in the body of Plaintiffs' FAC and not as a separate count. *See* FAC ¶ 85. For this

13  reason alone, the FAC fails to state a claim under Rule 8. *Gonzales v. Uber Techs., Inc.,*

14  305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018)(dismissing "boilerplate" CDAFA claims).

15  Setting that aside, the FAC also does not sufficiently allege that Tesla accessed

16  Plaintiffs' MCU "without permission" given that they voluntarily installed Tesla's

17  software updates. *See* Section I.B., *supra*, at 9-10. This requires dismissal. *See In re*

18  *Apple & ATTM Antitrust Litig*., No. C 07-05152, 2010 WL 3521965, at *7 (N.D. Cal.

19  July 8, 2010) ("Voluntary installation runs counter to … [the CDAFA]'s requirement

20  that the act was 'without permission.'" (citation omitted)).

21  In addition, the FAC fails to allege the requisite harm necessary for a CDAFA

22  violation as none of the Plaintiffs allege they actually incurred any expenditure in

23  connection with their alleged defective battery packs. *See* Section I.E., *supra* at 15; Cal.

24  Penal Code § 502(e)(1)(authorizing CDAFA civil actions only for persons "who

25  suffer[] damage or loss"). Thus, the CDAFA claim, to the extent Plaintiffs are even

26  pursuing one, should be dismissed.

27

28

1

**CONCLUSION**

2        For the reasons described above, Plaintiffs' FAC should be dismissed in its

3  entirety.

4  Dated: March 4, 2022                              Respectfully submitted,

5                                                    SHOOK, HARDY & BACON L.L.P.

6

7                                                    By: */s/ Michael L. Mallow*

8                                                          MICHAEL L. MALLOW
                                                           AMIR M. NASSIHI
9                                                          RACHEL A. STRAUS
                                                           JOAN R. CAMAGONG
10

11

12                                                    Attorneys for Defendant
                                                      TESLA INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28