## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

Present: The Honorable   Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    Order GRANTING Defendant's motion to compel arbitration, GRANTING Defendant's motion to dismiss, and DENYING AS MOOT Defendant's motion to temporarily stay discovery.**

Before the Court are three motions. The first is a motion to compel arbitration filed by Defendant Tesla, Inc. ("Defendant"). *See generally* Dkt. # 56-1 ("*Mot. I*"). Plaintiffs Zachary Hlvinka ("Hlvinka"), Joel Mann ("Mann"), and Herbert Joel Segall ("Segall") opposed. *See generally* Dkt. # 69 ("*Opp. I*"). Defendant replied. *See generally* Dkt. # 74 ("*Reply I*"). The second is a motion to dismiss filed by Defendant. *See generally* Dkt. # 58-1 ("*Mot. II*"). Plaintiffs Robert Fish ("Fish") and M. Deeble ("Deeble") (collectively with Hlvinka, Mann, and Segall, "Plaintiffs") opposed. *See generally* Dkt. # 70 ("*Opp. II*"). Defendant replied. *See generally* Dkt. # 75 ("*Reply II*"). The third is Defendant's motion to temporarily stay discovery pending the outcome of Defendant's other two motions. *See generally* Dkt. # 61-1 ("*Mot. III*"). Plaintiffs opposed. *See generally* Dkt. # 73. Defendant replied. *See generally* Dkt. # 76. Shortly before the hearing on its motions, Defendant filed a notice of supplemental authority, citing a newly decided California Court of Appeal decision that Defendant said barred one of Deeble's claims. *See generally* Dkt. # 79. The Court ordered the parties to file supplemental briefing to address the decision, *see generally* Dkt. # 80, and they obliged, *see generally* Dkt. # 81 ("*Pl. Supp.*"); Dkt. # 82, ("*Def. Supp.*").

The Court finds these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having consider the moving, opposing, and reply papers for each motion, as well as the supplemental briefing, the Court **GRANTS** Defendant's motion to compel arbitration, **GRANTS** Defendant's motion to dismiss, and **DENIES AS MOOT** Defendant's motion to temporarily stay discovery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

I.   Background

This case concerns the sale of electric vehicles and the batteries that power them.  Fish purchased a new Tesla Model S 85 electric vehicle from Defendant in 2014.  *See First Amended Complaint*, Dkt. #1 ("*FAC*"), ¶ 6.  For the first several years, Fish's electric vehicle regularly got over 200 miles per battery charge as expected.  *Id.* ¶ 16.  But in August 2020, Fish alleges that he noticed a "significant loss" in mileage per battery charge, travelling a maximum range of about only 150 miles per charge.  *Id.* ¶ 19.  Fish conducted several self-tests to measure his vehicle's energy usage and determined his battery was operating at consistently less than 70% of Defendant's represented capacity.  *Id.* ¶¶ 21–25.

Based on these findings, Fish tried to make a warranty claim to replace what he perceived to be a defective battery.  *Id.* ¶ 29.  Defendant's technicians performed a remote "battery health check," determined that there were no issues with the battery, and declined to replace the battery under the vehicle's warranty.  *Id.*  According to Fish, he repeatedly requested that Defendant replace his vehicle's battery to no avail.  *Id.*  Fish maintains that, rather than honoring warranties, Defendant tries to conceal the degradation of its vehicles' lithium-ion batteries behind software updates.  *Id.* ¶¶ 31–34.

Hlvinka, Mann, Segall, and Deeble shared similar experiences with four different Tesla electric vehicle models.  Hlvinka's Tesla Model 3 is supposed have a range of 260 miles on a 100% battery charge, yet after one year of ownership, Hlvinka alleges that he was unable to drive even half that distance on a single charge.  *Id.* ¶ 35.  And Mann's Model S 100D, Segal's Model X 75D, and Deeble's Model S P85+ all allegedly perform at less than 70% of advertised capacity.  *Id.* ¶¶ 37, 39, 41.  Plaintiffs each requested a replacement battery under their vehicles' respective warranties, and each request was denied.  *Id.* ¶¶ 36–41.

Fish filed a putative class action complaint in January 2021.  *See generally* Dkt. # 1.  A year later, the Court granted Fish leave to amend his complaint to add Hlvinka, Mann, Segal, and Deeble as putative class representatives.  *See generally* Dkt. # 48.  Plaintiffs' first amended class action complaint asserts three causes of action:

First Cause of Action: Violation of the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, et seq.  *FAC* ¶¶ 130–48.

Second Cause of Action: Violation of the Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq.  *FAC* ¶¶ 149–67.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

<u>Third Cause of Action</u>: Violation of the Song-Beverly Act, Cal. Civ. Code §§ 1790, et seq.  *FAC* ¶¶ 168–84.

Defendant now moves to: (1) compel Hlvinka, Mann, and Segall to arbitrate their claims, *see generally Mot. I*; (2) dismiss each of Fish and Deeble's claims, *see generally Mot. II*; and (3) temporarily stay discovery pending the outcome of these motions, *see generally Mot. III*.  The Court addresses each motion in turn.

II.    <u>Motion to Compel Arbitration</u>

A.    <u>Legal Standard</u>

The 'principal purpose' of the [Federal Arbitration Act ("FAA")] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.  "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis in original).  When deciding whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  If an arbitration agreement exists and covers the dispute at issue, § 4 of the FAA "requires courts to compel arbitration in accordance with the terms of the agreement." *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

B.    Discussion

The Court addresses in turn (i) whether Defendant waived its right to compel arbitration; (ii) whether a valid agreement to arbitrate exists; (iii) whether the arbitration agreement encompasses Hlvinka, Mann, and Segall's claims; and (iv) whether the arbitration agreement is unconscionable.

i.    *Waiver of the Right to Compel Arbitration*

Hlvinka, Mann, and Segall argue that Defendant waived its right to arbitrate.  *Opp. I* 14:3–16.  The Court disagrees.

Although disfavored and subject to a heavy burden of proof, "[t]he right to arbitration, like other contractual rights, can be waived."  *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016).  "To demonstrate waiver of the right to arbitrate, a party must show: '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'"  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir 1986)).

Here, Hlvinka, Mann, and Segall fall short of carrying their heavy burden to establish waiver.  They claim that Defendant has long known of its "existing right to compel arbitration" because it drafted the arbitration agreements and raised the issue as an affirmative defense to the initial complaint in March 2021.  *Opp. I* 14:11–18.  But this is irrelevant because Hlvinka, Mann, and Segall were not added to the case until February 2022, and any "right" to compel arbitration did not attach until they were actually added as Plaintiffs.  *See Cadena v. Am. Honda Motor Co., Inc.*, No. CV 20-511 MWF (PJWx), 2020 WL 3107797, at *3 (C.D. Cal. June 10, 2020).  Having limited the relevant timeframe, it is clear that the acts Hlvinka, Mann, and Segall claim are inconsistent with Defendant's right to arbitrate occurred well before the right to arbitrate ever attached.  *See Opp. I* 14:19–24.  And given that waiver arguments are broadly disfavored, *Martin*, 829 F.3d at 1124, the Court cannot say that a 21-day gap between Hlvinka, Mann, and Segall being added as Plaintiffs and Defendant's filing of the instant motion to compel arbitration was anything short of a diligent pursuit of Defendant's right to arbitrate.

Accordingly, Defendant did not waive its right compel arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

ii.    *Existence of a Valid Agreement to Arbitrate*

Hlvinka, Mann, and Segall argue that Defendant failed to establish that a valid arbitration agreement exists. *Opp. I* 4:17–6:15. The Court disagrees.

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016) (internal quotation marks omitted). The party seeking to compel arbitration must prove that a valid arbitration agreement exists by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). To determine whether a valid agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under California law, mutual assent between the parties is an essential element of contract formation. *Div. of Lab. Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977); *see also Volt Info. Scis., Inc.*, 489 U.S. at 479 ("Arbitration under the [FAA] is a matter of consent.").

Relying on *Hill v. Quicken Loans Inc.*, No. EDCV 19-0163 FMO (SPx), 2020 WL 5358394 (C.D. Cal. Aug. 5, 2020), Hlvinka, Mann, and Segall contend that Defendant has not carried its burden to show that an arbitration agreement exists because there is insufficient evidence that they actually clicked a "Place Order" button, thereby manifesting their assent to their arbitration agreements. *Opp. I* 5:14–6:15. In *Hill*, the court denied the defendant's motion to compel arbitration for two reasons. 2020 WL 5358394, at *5–7. First, the court found the defendant's proffered evidence insufficient because it was not properly authenticated by someone with firsthand knowledge of the defendant's software and website. *Id.* at *5. Second, the court found that the plaintiff raised a genuine factual dispute regarding whether the plaintiff electronically assented to the arbitration agreement. *Id.* at *6. Specifically, the plaintiff testified that she did not click the required button and offered several declarations from others who also did not click the button but received various marketing messages that users were supposed to receive only if they clicked the required button. *Id.* at *2, *6.

The instant case is significantly distinguishable because Defendant proffers undisputed evidence of assent authenticated by the person who develops and implements software for Defendant's website. *See Declaration of Victor Barclay*, Dkt. # 56-4 ("*Barclay Decl.*"), ¶ 1. Defendant's senior manager of software engineering explains that, to complete an online order, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

customer must click the "Place Order" button. *Id.* ¶ 3. Accompanying the "Place Order" button when Hlvinka, Mann, and Segall bought their vehicles was clear language stating that by clicking "Place Order," customers also agreed to the terms of their respective vehicle models' "Order Agreement[s]." *Id.* ¶¶ 6–8. Each Order Agreement was hyperlinked in "bolded and/or underlined text," *id.* ¶ 9, and each contained an arbitration provision, Dkts. # 56-6, 56-8, 56-9. Absent any evidence from Hlvinka, Mann, and Segall to the contrary, the fact that they could not have completed their online orders without clicking the "Place Order" button is sufficient to establish their assent. *See Grice v. Uber Techs., Inc.*, No. CV 18-2995 PSG (GJSx), 2020 WL 497487, at *11 (C.D. Cal. Jan. 7, 2020) (crediting evidence that nobody could use the defendant's app without accepting the terms and conditions as proof of assent). And both Mann and Segall not only clicked the "Place Order" button online but also physically signed their Order Agreements containing conspicuous arbitration provisions set off from all other provisions by a large black box. *See* Dkts. # 56-6, 56-8.

Accordingly, given the uncontroverted and properly authenticated evidence that Hlvinka, Mann, and Segall assented to arbitration agreements, Defendant has established by a preponderance of the evidence that valid arbitration agreements exist.

> iii.    *Whether the Arbitration Agreements Encompass the Dispute*

Hlvinka, Mann, and Segall next argue that their claims are not encompassed by their arbitration agreements. *Opp. I* 6:16–7:21. The Court disagrees.

Hlvinka, Mann, and Segall entered separate arbitration agreements, but the agreements' terms are nearly identical:

> [Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

*See* Dkts. # 56-6, 56-7, 56-9. Hlvinka, Mann, and Segall contend that "defects in batteries and deficient battery performance are not issues that arise from a relationship between a purchaser and a seller." *Opp. I* 6:23–28. According to them, their battery defect claims "arise out of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

Defendant's manufacturing or design process," which has nothing to do with the buyer-seller relationship and "predated any relationship" between the parties. *Id.* 6:28–7:2. But the plain language of the agreement broadly includes "any dispute" arising from the "any aspect" of the parties' relationship and does not limit arbitrable issues to only those for breach of the buyer-seller agreement. *Cf. Wireless Warehouse, Inc. v. Boost Mobile, LLC*, No. SACV 09-01436 MLG, 2010 WL 891329, at *5–7 (C.D. Cal. Mar. 10, 2010) (finding that various tort claims were not arbitrable because the arbitration clause applied to claims arising "under this Agreement," thus limiting arbitrable claims to only "the interpretation and performance of the contract itself"). And it is irrelevant whether the factual basis for claims arose before or after the parties consummated their "relationship," as the arbitration agreement also expressly encompasses "claims arising before this Agreement." *See* Dkts. # 56-6, 56-7, 56-9.

Accordingly, Hlvinka, Mann, and Segall's claims are encompassed by their arbitration agreements.

### iv.    *Unconscionability*

Hlvinka, Mann, and Segall next argue that, even if their claims are encompassed by valid arbitration agreements, the arbitration agreements are unconscionable and thus unenforceable under § 2 of the FAA. *See Opp. I* 7:22–14:2. The Court disagrees.

Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, state law contract unenforceability defenses apply with equal force to arbitration agreements. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."); *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). Under California law, a contract is unconscionable and thus unenforceable only if it is both (a) substantively and (b) procedurally unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000).

### a.    *Substantive Unconscionability*

"Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003). Hlvinka, Mann, and Segall claim that their arbitration agreements are substantively unconscionable for three reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

First, they claim the designated arbitration provider, the American Arbitration Association ("AAA"), imposes rules that place "impermissible discovery limitations" on their claims. *Opp. I* 12:1–3. But this is really just a thinly veiled argument that the AAA's "fast and economical" discovery process is fundamentally incompatible with Hlvinka, Mann, and Segall's desire to proceed on a classwide basis. *See id.* 12:16–18 ("Rather, at the very heart of the claims are fleetwide defunct battery or battery performance issues. Such a fleetwide impact requires a fleetwide analysis covering millions of cars."). But their arbitration agreements expressly call for *individualized* arbitration, *see* Dkts. # 56-6, 56-7, 56-9, so whether the AAA has suitable discovery procedures for class adjudication is irrelevant. And, in any event, the Court is not free to "allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[Federal statutory] laws do not guarantee an affordable procedural path to the vindication of every claim.").

Second, Hlvinka, Mann, and Segall argue that a provision requiring them to first submit their claims to Defendant before proceeding to arbitration "unreasonably favors Defendant." *Opp. I* 12:3–4. They claim that this would give Defendant a "'free peek' at [their] case, thereby obtaining an advantage" if and when they proceed to arbitration. *Id.* 13:12–20 (citing *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282–83 (2004)). But what Hlvinka, Mann, and Segall leave out is that the *Nyulassy* court found this "free peek" relevant only because the arbitration clause unilaterally required the plaintiff to arbitrate his claims but gave the defendant free reign to either bring its claims in court or to proceed to arbitration. *See* 120 Cal. App. 4th at 1283–84. By contrast, because the arbitration agreements here require *both* parties to arbitrate "any dispute," the Court fails to see how a provision requiring the parties to first attempt to resolve a dispute themselves is anything other than "a laudable mechanism for resolving . . . disputes informally." *Id.* at 1284.

Last, Hlvinka, Mann, and Segall also insist that various "features of the arbitration agreement that Defendant contends weigh against substantive unconscionability fall flat and do not." *Opp. I* 13:21–22. Specifically, they fault—without reference to any authority—(1) a provision giving them the alternative option to proceed in small claims court, and (2) the AAA rules' alleged failure to provide a written decision. *Id.* But the availability of small claims court as an alternative to arbitration hardly makes the arbitration agreements "one sided" or "overly harsh" simply because the value of the claims at issue here happen to exceed the $10,000 limit for small claims court. *See Harper*, 113 Cal. App. 4th at 1407. And, contrary to what Hlvinka, Mann, and Segall say, the AAA rules do in fact require an arbitrator to issue a written decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

*See* Dkt. # 69-1, Rule 43(a)–(b) ("Any award shall be in writing . . . [and] shall provide the concise written reasons for the decision unless the parties all agree otherwise.").

Accordingly, Hlvinka, Mann, and Segall have not demonstrated that their arbitration agreements are substantively unconscionable.

   *b.*  *Procedural Unconscionability*

"Procedural unconscionability focuses on the factors of surprise and oppression." *Harper*, 113 Cal. App. 4th at 1406. Hlvinka, Mann, and Segall argue that their arbitration agreements are procedurally unconscionable for three reasons.

First, they claim that their arbitration agreements are procedurally unconscionable because they are contracts of adhesion. *Opp. I* 9:5–18. Although perhaps true as to the Order Agreements as a whole, Hlvinka, Mann, and Segall were not forced to accept the arbitration provisions on a take-it-or-leave-it basis because each arbitration agreement contained a 30-day opt-out provision. *See* Dkts. # 56-6, 56-7, 56-9. They claim the opt-out provision was a "farce" because it required them to identify their vehicle by VIN even though they may not have had access to their VIN in time to opt out given Defendant's "complete control over delivery of the cars." *Opp. I* 10:10–11:8. But Hlvinka, Mann, and Segall present no evidence—despite having the burden to do so—that vehicle delivery and VIN access are synonymous. *See Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911 (2015). And, in any event, both Mann and Segall's signed arbitration agreements have their respective VIN numbers conspicuously displayed on the first page. *See* Dkts. # 56-6, 56-7.

Second, Hlvinka, Mann, and Segall argue that their arbitration agreements are procedurally unconscionable because Defendant did not clearly indicate by the "Place Order" button that there was an arbitration agreement in the linked Order Agreement. *Opp. I* 9:18–25. They cite no authority suggesting that courts have ever required this, but the Court sees little logic behind relieving a plaintiff of his or her duty to read a contract simply because a hyperlink to the contract does not list each and every material provision of the contract. Defendant "was under no obligation to highlight the arbitration clause of its contract." *Sanchez*, 61 Cal. 4th at 914. But when Hlvinka, Mann, and Segall actually clicked the link to their respective Order Agreements, it would have been nearly impossible for them to miss the arbitration provisions, which Defendant offset from all other provisions with a conspicuous black box. *See* Dkts. # 56-6, 56-7, 56-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

Third, Hlvinka, Mann, and Segall fault Defendant for merely referencing the AAA's rules in the arbitration agreement but not attaching a copy to the arbitration agreement for reference. *Opp. I* 9:25–10:9. Courts have found that this argument "might have force" only if "some element of the AAA rules" is substantively unconscionable. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016). But the Court already scrutinized the AAA rules Hlvinka, Mann, and Segall claimed were substantively unconscionable and determined they were not. As such, this argument carries little weight.

In short, even if Hlvinka, Mann, and Segall have demonstrated "some degree of procedural unconscionability," that is of little consequence where, as here, the substantive provisions of the arbitration agreements are "not manifestly unfair or one-sided." *See Sanchez*, 61 Cal. 4th at 915; *see also Armendariz*, 24 Cal. 4th at 99 (requiring both substantive *and* procedural unconscionability for the defense to succeed).

Accordingly, the Court **GRANTS** Defendant's motion to compel arbitration under the parties' otherwise "valid, irrevocable, and enforceable" arbitration agreements. *See* 9 U.S.C. §§ 2, 4.

III.   Motion to Dismiss: 12(b)(6)

A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|----------|------------------------|------|--------------|

| Title | Robert Fish v. Tesla, Inc. |
|-------|----------------------------|

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

B.    Discussion

As an initial matter, Fish and Deeble argue that Defendant's Rule 12(b)(6) motion to dismiss is untimely because Defendant already answered the original complaint, and the first amended complaint simply adds new putative class representatives and more "detail to flesh out the claims." *Opp. II* 8:16–9:21.

The Ninth Circuit has not addressed this precise issue—i.e., whether amending a complaint allows a defendant a fresh chance to file a Rule 12(b)(6) motion after answering a previous complaint. *See Oddei v. Optum, Inc.*, No. CV 21-03974 SB (MRWx), 2021 WL 6103347, at *2 (C.D. Cal. Oct. 15, 2021). But the Court is not without any guidance. *In re Apple iPhone Antitrust Litigation* observed in a similar context that whether a district court "dismisse[s] the complaint based on a motion under Rule 12(b)(6) or [R]ule 12(c) makes no difference." 846 F.3d 313, 318 (9th Cir. 2017) (quoting *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 704 (10th Cir. 2014)). The court explained that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to [filing Rule 12(c) motions] can produce unnecessary and costly delays." *See In re Apple*, 846 F.3d at 318. As such, the Ninth Circuit has generally looked favorably on district courts' decisions to exercise their discretion and reach the merits of untimely Rule 12(b)(6) motions if doing so is in the interest of judicial economy. *See In re Apple*, 846 F.3d at 319 ("Recognizing the practical wisdom of these district courts, . . . we conclude that, as a reviewing court, we should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion.").

Here, even if Defendant's Rule 12(b)(6) motion is procedurally improper as Fish and Deeble contend, reaching the merits of Defendant's motion to dismiss furthers the interests of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

judicial economy.  If the Court denies Defendant's Rule 12(b)(6) motion to dismiss on procedural grounds, Defendant could simply answer the first amended complaint and refile the same motion under Rule 12(c), which is "functionally identical" to a Rule 12(b)(6) motion.  *See Cafasso v. Gen Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Addressing the merits now rather than three months from now will aid the parties' ongoing discovery efforts and will avoid the unnecessary duplication of resources.  *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011).  Moreover, Fish and Deeble already skirted Defendant's dismissal attempts on procedural grounds once before by amending their complaint before the Court ruled on Defendant's pending Rule 12(c) motion.  *See* Dkt. # 48.  Accordingly, because denying Defendant's motion for a "harmless" procedural technicality would needlessly delay resolution of this case, the Court will reach the merits of Defendant's motion to dismiss.  *See In re Apple*, 846 F.3d at 318.

Shifting focus to the merits, Defendant moves to dismiss each of Fish and Deeble's claims for (i) violation of the CFAA, (ii) violation of the Song-Beverly Act, and (iii) violation of the Magnuson-Moss Act.  *See generally Mot. II.*  The Court addresses each claim in turn.

### i.     *First Cause of Action: Violation of the CFAA*

Defendant moves to dismiss Fish and Deeble's CFAA claim because (a) Fish and Deeble have not adequately pleaded "loss" to bring any CFAA claim, and (b) Defendant did not access Fish and Deeble's "protected computers" without authorization or in excess of authorization to cause damage or obtain something of value.  *Mot. II* 6:7–15:26.  The Court addresses each argument in turn.

### a.     *Requisite "Loss" to Bring a Private Right of Action*

Defendant maintains that Fish and Deeble have not adequately pleaded $5,000 in losses to bring their CFAA claims.  *Mot. II* 15:3–25.  The Court agrees.

The CFAA is a criminal law prohibiting various computer crimes that primarily involve accessing a computer without authorization or in excess of authorization to damage the computer or its data.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–31 (9th Cir. 2009).  The CFAA supplies a private right of action under very limited circumstances.  *See* 18 U.S.C. § 1030(g).  Section 1030(g) states, in relevant part, that "[a] civil action for a violation of this section may be brought *only if* the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  *Id.* (emphasis added).  Relevant here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

Plaintiffs must allege "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."[1]  *See id.* §§ 1030(g), (c)(4)(A)(i)(I).  The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  *Id.* § 1030(e)(11).  The Ninth Circuit has explained that this "is a narrow conception of 'loss'" and is limited by "the specific terms that surround it."  *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019).

Here, Fish and Deeble's theory of loss is that Defendant manipulated their vehicles' batteries through software updates resulting in diminished battery capacity.  *See Opp. II* 16:18–24 (citing *FAC* ¶¶ 22–23, 35, 37, 39, 40).  As a result of these manipulations, Defendant allegedly caused "at least ~$10,000" in damage, which is "half the value of the battery system."  *FAC* ¶¶ 75, 146.  But this argument misapprehends the "narrow conception of 'loss'" under the CFAA.  *See Andrews*, 932 F.3d at 1263.  Losses can include "any reasonable cost" to "respond[] to an offense" or to return a system "to its condition prior to the offense"—i.e., here, costs incurred to repair a battery or otherwise remedy the alleged diminution in battery capacity.  *See id.* § 1030(e)(11).  But Fish and Deeble do not allege that they incurred any costs to remedy Defendant's alleged improper access to their vehicles' battery systems.  *Cf. Calendar Rsch. LLC v. StubHub, Inc.*, No. CV 17-4062 SVW (SSx), 2020 WL 4390391, at *22 (C.D. Cal. May 13, 2020) (finding cognizable loss from allegations that plaintiff paid for a "forensic investigation to determine who accessed its computers").  Indeed, Fish and Deeble's theory of the case is that their batteries are under warranty and should be replaced at no cost to them.  *See FAC* ¶¶ 157–62.  And to the extent Fish and Deeble believe that Defendant has deprived them "the value of [their batteries]," the Ninth Circuit rejected a comparable theory of loss in *Andrews*.  *See* 932 F.3d at 1262–63; *accord Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485–86 (N.D. Cal. 2021) (dismissing theories of loss premised on lost value).

Accordingly, Fish and Deeble have failed to allege sufficient "loss" to bring their CFAA claims.

---

[1] The CFAA also provides other methods of establishing "damage or loss," none of which apply here.  Although one of the listed "factors" includes "damage affecting 10 or more protected computers," that factor is expressly excluded from the list under § 1030(g).  *See* 18 U.S.C. §§ 1030(g), (c)(4)(A)(VI).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|----------|------------------------|------|--------------|
| Title | Robert Fish v. Tesla, Inc. | | |

> *b.*     *Various Theories of Violation Under the CFAA*

Defendant claims that Fish and Deeble's alleged violations of the CFAA under 18 U.S.C. §§ 1030(a)(4), (5)(A), and (5)(C) fail to state a claim. *Mot. II* 9:26–15:2. The Court addresses each ground in turn.

First, Fish and Deeble fail to state a claim under 18 U.S.C. § 1030(a)(4). In relevant part, § 1030(a)(4) proscribes access that exceeds authorization to a protected computer done "knowingly and with intent to defraud" to obtain "anything of value." Fish and Deeble allege that Defendant exceeded authorized access to each vehicle's on-board media control unit ("MCU") to reduce performance, range, battery capacity, and charging speed. *FAC* ¶¶ 28, 144, 146. They assert that this was in excess of Defendant's authorized access because they did not know of or consent to these "damaging updates." *Opp. II* 10:24–9. The Supreme Court recently clarified that "exceeds authorized access" means that a defendant obtains information or accesses "particular areas in the computer . . . to which their computer access does not extend," but this does not apply to individuals with improper motives who simply utilize access that is "otherwise available to them." *Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021). Fish and Deeble have not plausibly alleged that Defendant did not have unfettered access to their MCUs and battery, so the fact that Defendant allegedly damaged these systems without Fish and Deeble's consent is irrelevant. *See id.*; *see also Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, No. 21-CV-0052-GPC-DEB, 2021 WL 2317410, at *8 (S.D. Cal. June 7, 2021) ("Whether [Defendant] ultimately misappropriated the information she was authorized access to is a separate question outside CFAA's scope."). And even assuming Defendant did exceed authorized access, Fish and Deeble have not plausibly pleaded that Defendant obtained "anything of value" as required under § 1030(a)(4).

Second, Fish and Deeble plausibly pleaded a claim under 18 U.S.C. § 1030(a)(5)(A). Section 1030(a)(5)(A) proscribes the knowing "transmission of a program, information, code or command" to intentionally cause "damage without authorization, to a protected computer." Damage is the "impairment to the integrity or availability of data . . . [or] a system." *Id.* § 1030(e)(8). Defendant does not dispute that any damage allegedly caused was "without authorization" as it is defined under § 1030(a)(5)(A) but instead maintains that Fish and Deeble have not alleged damage to a "protected computer" because their damage allegations focus on their vehicles' batteries, not their MCUs. *See Mot. II* 14:8–19. True, their complaint alleges only that the vehicles' MCUs are "protected computers," *id.* ¶¶ 81–82, but it is difficult to see how a battery system that powers and is monitored by the MCU is not an inseparable component of that "protected computer."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

Last, Fish and Deeble fail to state a claim under 18 U.S.C. § 1030(a)(5)(C).  Section 1030(a)(5)(C) proscribes the intentional access to a protected computer "without authorization" that causes both "damage and loss."  Fish and Deeble allege that access to their vehicles was "without authorization" because they did not consent to reduced performance, battery capacity, and charging speed from Defendant's updates.  *See FAC* ¶¶ 28, 144–146.  This is not necessarily an invalid theory provided that they also allege that Defendant "blatantly misdescribed the nature of the . . . updates."  *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452–53 (N.D. Cal. 2018).  But they have not done so here.  And, for the same reasons discussed in the private right of action section above, Fish and Deeble have not adequately pleaded loss stemming from Defendant's alleged access to their vehicles.

In sum, Fish and Deeble's CFAA claims must be dismissed because they have not adequately alleged loss to bring a civil suit under 18 U.S.C. § 1030(g).  Assuming they can cure that deficiency by amendment, they have also failed to state a claim under 18 U.S.C. §§ 1030(a)(4) and (5)(A).  Accordingly, the Court **GRANTS** Defendant's motion to dismiss Fish and Deeble's CFAA claims.

> ii.    *Third Cause of Action: Violation of the Song-Beverly Act*

Under the Song-Beverly Act, "[a]ny buyer of consumer goods who is damaged by a failure to comply with any obligation . . . under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief."  Cal. Civ. Code § 1794(a).

Here, Defendant moves to dismiss Fish and Deeble's Song-Beverly Act claims for breach of (a) express and (b) implied warranty.  *Mot. II* 16:1–23:23.  The Court addresses each ground in turn.

> a.    *Breach of Express Warranty*

Defendant first urges the Court to dismiss Deeble's claim because the Song-Beverly Act's express warranty provisions do not apply to his used vehicle.  *Def. Supp.* 1:24–2:17.

The Song-Beverly Act's express warranty protections apply to only buyers of consumer goods purchased from a "retail seller"—i.e., someone in the business of manufacturing, distributing, or selling products to retail buyers.  *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 917 (2015); Cal. Civ. Code § 1791(b), (*l*).  As such, "the Act doesn't cover products

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

purchased in private sales." *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209, 2022 WL 1042907, at *5 (2022). The Song-Beverly Act does afford some protection to used car purchasers, but "the manufacturer is generally off the hook" in such cases. *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal App. 5th 334, 339–40 (2019); *see also Rodriguez*, 2022 WL 1042907, at *3 ("[A] hallmark of the Act is that its consumer protections apply against the party who sold the product to the buyer *and* issued the express warranty.").

The Song-Beverly Act's "refund-or-replace" express warranty provisions at issue here apply to only "new motor vehicles." *See* Cal. Civ. Code § 1793.2(d)(2). Used vehicles "accompanied by some balance of the original warranty" are not "new motor vehicles" under the Song-Beverly Act. *See Rodriguez*, 2022 WL 1042907, at *8. However, one California Court of Appeal found that the Song-Beverly Act's new motor vehicle provisions also apply to used vehicles in some cases. *See Jensen v. BMW of N. Am. Inc.*, 35 Cal. App. 4th 112, 122–26 (1995). In *Jensen*, a BMW-authorized dealership leased the plaintiff what the salesperson believed to be a "demonstrator vehicle"—i.e., a floor model or test drive vehicle. *Id.* at 119. The salesperson offered a 36,000-mile vehicle warranty on top of the 7,500 miles already on the vehicle. *Id.* However, it was later discovered that the plaintiff's vehicle was actually previously owned and not a "demonstrator." *Id.* BMW therefore argued that the plaintiff's vehicle was not a "new motor vehicle" and that BMW could not be sued for breach of express warranty. *Id.* at 122. The court disagreed and held that used "cars sold with a balance remaining on the new motor vehicle warranty" fall within the Song-Beverly Act's express warranty provisions for new motor vehicles. *Id.* at 126.

Since then, several California courts have called *Jensen* into question—or at least distinguished it—in part because its facts do not readily align with its broad holding. *See Rodriguez*, 2022 WL 1042907, at *7 (distinguishing *Jensen* because the plaintiff received a "full new car warranty along with the lease" and the warranty was "issued by the manufacturer's representative"); *Kiluk*, 43 Cal App. 5th at 340 & n.4 (expressing "reservations" about *Jensen*'s holding and questioning how a vehicle "accompanied by a 20-year warranty" could still be classified as a new motor vehicle "on year 18" if owned by a subsequent purchaser); *Dagher*, 238 Cal. App. 4th at 923 (limiting the application of *Jensen* to the facts of that case).

Here, it is unclear that the Song-Beverly Act even applies to Deeble's used vehicle. Deeble alleges that he "purchased a used 2013 Model S P85+ from a private owner." *FAC* ¶ 10. In other words, it appears that the Song-Beverly Act does not apply to Deeble because he purchased his vehicle from a private party instead of a "retail seller" engaged in the business of manufacturing, distributing, or selling to retail buyers. *See Dagher*, 238 Cal. App. 4th at 917;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

*Rodriguez*, 2022 WL 1042907, at *5 ("It's clear the Act doesn't cover products purchased in private sales.").

However, even assuming Deeble purchased his vehicle from a retail seller, he does not own a "new motor vehicle" and therefore cannot sue Defendant for breach of an express warranty simply because his vehicle's original eight-year battery warranty has a balance remaining on it. *See Rodriguez*, 2022 WL 1042907, at *8. Deeble leans on *Jensen* for the proposition that Defendant's "original manufacturer's warranty issued to [Deeble's] car[,] . . . carries with the car," and thus applies to Deeble now as a subsequent purchaser. *See Pl. Supp.* 1:16–24, 2:1–5. But the Court, like several California Courts of Appeal, finds *Jensen* "easily distinguishable," *see Rodriguez*, 2022 WL 1042907, at *4, and has "reservations" about *Jensen*'s reasoning, *see Kiluk*, 43 Cal App. 5th at 340. Unlike the plaintiff in *Jensen*, Deeble was not issued a new manufacturer's warranty from one of Defendant's agents when he purchased his vehicle used. *See* 35 Cal. App. 4th at 119. And as discussed above, the facts in *Jensen* do not readily align with its broad holding that any used car purchaser may sue the manufacturer for breach of express warranty under the Song-Beverly Act if his or her vehicle has a remaining balance on the original manufacturer's warranty. *See id.* at 126.

Accordingly, Deeble's breach of express warranty claim must be dismissed because he did not purchase it from a "retail seller," and even if he did, because he does not own a "new motor vehicle" within the meaning of the Song-Beverly Act. *See Rodriguez*, 2022 WL 1042907, at *5, *8.

Defendant next urges the court to dismiss Fish's express warranty claim because (1) his battery capacity claim is not covered by his warranty; (2) he has not given Defendant a reasonable number of opportunities to repair the vehicle; and (3) he has not alleged a failure to repair. *Mot. II* 16:1–7.

To plead a breach of express warranty under the Song-Beverly Act, a plaintiff must establish that (1) "the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle;" (2) "the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair;" and (3) "the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts." *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001). Although the reasonableness of the number of repair attempts "is a question of fact to be determined in light of the circumstances," a defendant must be given "more than one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

opportunity to fix the nonconformity." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 799 (2006).

As to the covered non-conformity element, Fish alleges that Defendant provided him an eight-year, unlimited mile battery warranty that covered the replacement of "defective, malfunctioning, or otherwise abnormally degraded batter[ies]." *FAC* ¶¶ 175–76. Fish claims that his battery falls into this category because he has noticed "significant" losses to the effective range his vehicle can travel per battery charge. *Id.* ¶ 19. The warranty covers "repair or replacement of any malfunctioning or defective Battery or Drive Unit," but specifically exempts claims stemming from "gradual energy or power loss with time and use." *See* Dkt. # 58-3 at 40.[2] Although Fish's allegations could conceivably fall into either category, he has plausibly alleged that his battery is defective rather than naturally degraded since Fish's vehicle allegedly has driven less than 60,000 miles. *FAC* ¶ 19. Accordingly, Fish has adequately pleaded the first element of breach of express warranty under the Song-Beverly Act.

As to the presentation for repair and failure to repair elements, Fish alleges that he contacted Defendant's service technicians "to inquire about the substantial loss of range and effective battery capacity." *FAC* ¶ 20. After several self-tests, Fish reported his findings to Defendant's technicians who performed a "remote 'battery health check' and determined that there were no issues with the battery." *Id.* ¶ 29. Fish has since "repeatedly requested his battery be replaced" to no avail. *Id.* These allegations do not plausibly suggest that Fish has provided Defendant with sufficient opportunities to repair his vehicle—i.e., at least two. *See Robertson*, 144 Cal. App. 4th at 799. At best, these allegations suggest that Defendant performed a single "battery health check" on Fish's vehicle. *Id.* ¶ 29. But demanding a battery replacement and inquiring about diminished battery capacity is not the same as presenting a vehicle for repair. *Cf. Oregel*, 90 Cal. App. 4th at 1104 ("[Plaintiff] satisfied the presentation element by, on six different occasions, bringing the car in and requesting that [a technician] repair the oil leak.").

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Fish and Deeble's Song-Beverly Act claims based on a breach of express warranty.

---

[2] Defendant moves to incorporate Fish and Deeble's vehicle warranties by reference into the first amended complaint. *Mot. II* 5:1 n.5. Because the warranties are referenced in the first amended complaint, *see, e.g., FAC* ¶¶ 157, 175, the Court **GRANTS** Defendant's request for incorporation by reference. *See Kahn v. FCA US LLC*, No. CV 19-0127 SVW (SSx), 2019 WL 3955386, at *2 n.1 (C.D. Cal. Aug. 2, 2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

### b.    Breach of Implied Warranty

Defendant also urges the Court to dismiss Fish and Deeble's implied warranty claims under the Song-Beverly Act because (1) Deeble's vehicle is not subject to an implied warranty because it was purchased used from a third party, (2) Fish's claim is time barred, and (3) Fish failed to plead merchantability. *Mot. II* 19:1–7.

Deeble's implied warranty claim fails as a matter of law because he purchased his vehicle used from a third party. *See FAC* ¶¶ 10, 41. The Song-Beverly Act's implied warranty of merchantability applies only to the sale of "consumer goods," which the statute specifies includes only "new product[s]." Cal. Civ. Code §§ 1791(a), 1792. As such, courts have consistently dismissed implied warranty claims against the original manufacturer for the sale of used vehicles under the Song-Beverly Act. *See Goldstein v. General Motors LLC*, 445 F. Supp. 3d 1000, 1018–19 (S.D. Cal. 2020); *Johnson v. Nissan N.A., Inc.*, 272 F. Supp. 3d 1168, 1178–79 (N.D. Cal. 2017); *Blissard v. FCA US LLC*, No. CV 18-2765 JAK, 2018 WL 6177295, at *9 (C.D. Cal. Nov. 9, 2018); *Hindsman v. Gen. Motors LLC*, No. CV 17-5337 JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018). Accordingly, because Deeble bought his vehicle from a third party—not Defendant—his implied warranty claim must be dismissed.

Fish's implied warranty claim is not time barred. The Song-Beverly Act explicitly limits the duration of the implied warranty of merchantability to one year after the time of purchase. *See* Cal. Civ. Code § 1791.1(c). In *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1310 (2009), the court held that, at the motion to dismiss stage, it is enough to allege that a latent defect existed during the implied warranty period even if it was "not discovered or could not have [been] discovered" within the implied warranty period. Under *Mexia*, Fish's implied warranty claim is not time barred because he alleges that his battery was defective from the outset—i.e., during the implied warranty period—but that he did not or could not discover the capacity retention defects until after the implied warranty period. *See FAC* ¶¶ 40, 67, 125–26, 129. To be sure, some courts have declined to follow *Mexia*, but the Court, for its part, has already weighed in on this issue and resolved the issue in Fish's favor. *See Landa v. FCA US LLC*, No. CV 19-9862 PSG (GJSx), 2021 WL 1565800, at *5 (C.D. Cal. Mar. 23, 2021).

Fish fails to allege that his vehicle is unmerchantable. In relevant part, the Song-Beverly Act's implied warranty of merchantability requires vehicles to be "fit for the ordinary purpose for which [they] are used." Cal. Civ. Code § 1791.1(a). A vehicle is "fit" for ordinary purposes so long as it "provides for a minimum level of quality" and is not unsafe to operate. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012); *Resnick v. Hyundai Motor*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|----------|------------------------|------|--------------|
| Title | Robert Fish v. Tesla, Inc. | | |

*Am., Inc.*, No. CV 16-0593 BRO (PJWx), 2017 WL 1531192, at *12 (C.D. Cal. Apr. 13, 2017). But just "because a vehicle provides transportation from point A to point B" does not mean there can be no breach of an implied warranty of merchantability. *See Isip v. Mercedes-Benz USA, LLC*, 115 Cal. App. 4th 19, 27 (2007) (finding that although the vehicle could still operate, it was unmerchantable because it smelled, lurched, clanked, and emitted smoke over an extended period of time).

Fish alleges that his vehicle is unmerchantable because it suffered at least a 30% diminution in effective range per battery charge. *See FAC* ¶¶ 19–22. But simply because Fish would need to charge his vehicle more often than he expected does not mean that it is no longer fit for ordinary use. *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (affirming this Court's dismissal of an implied warranty claim premised on diminished mileage capacity resulting from a "shrinking fuel tank" defect because it "did not implicate the [vehicle's] operability; rather, it merely required the [plaintiffs] to refuel more often").

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Fish and Deeble's implied warranty claims under the Song-Beverly Act.

### iii.    *Second Cause of Action: Violation of the Magnuson-Moss Act*

The parties agree that Fish and Deeble's Magnuson-Moss Act claim rises or falls with their Song-Beverly Act claim. *Mot. II* 23:24–24:3; *Opp. II* 23:4–15. As such, because the Court granted Defendant's motion to dismiss Fish and Deeble's Song-Beverly Act claim, the Court likewise **GRANTS** Defendant's motion to dismiss their Magnuson-Moss Act claim. *See Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG (VBKx), 2011 WL 13142144, at *13 (C.D. Cal. Apr. 28, 2011) ("[D]ismissal of the underlying state law claims requires the same disposition with respect to an associated [Magnuson-Moss] claim").

### C.    Leave to Amend

Fish and Deeble request leave to amend. *Opp. II* 23:16–23.

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

The Court **GRANTS** leave to amend as follows:

- As to the alleged violation of the CFAA, the Court **GRANTS** leave to amend because Fish and Deeble could potentially allege additional facts to demonstrate that (1) they suffered a "loss" in excess of $5,000; (2) Defendant exceeded authorized access under 18 U.S.C. § 1030(a)(4); and (3) Defendant lacked authorized access and caused both "damage and loss" under 18 U.S.C. § 1030(a)(5)(C).

- As to breach of express warranty under the Song-Beverly Act, the Court **GRANTS** leave to amend as to Fish's claim because he could potentially plead additional facts to demonstrate that he provided Defendant a reasonable number of opportunities to repair his vehicle and that Defendant failed to do so.  However, the Court **DENIES** leave to amend as to Deeble's claim because he either did not purchase his car from a "retail seller" or he does not own a "new motor vehicle" as required under the Song-Beverly Act.

- As to breach of implied warranty under the Song-Beverly Act, the Court **GRANTS** leave to amend as to Fish's claim because he could conceivably allege additional facts to suggest that his vehicle was unmerchantable. However, the Court **DENIES** leave to amend as to Deeble's claim because he purchased his vehicle from a third party and thus cannot bring an implied warranty claim against Defendant as a matter of law.

- Finally, because Fish and Deeble's Magnuson-Moss claim is coextensive with their Song-Beverly Act claim, the Court **GRANTS** leave to amend as to Fish's breach of express and implied warranty claims and **DENIES** leave to amend Deeble's breach of express and implied warranty claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-060 PSG (JDEx) | Date | May 12, 2022 |
|---|---|---|---|
| Title | Robert Fish v. Tesla, Inc. | | |

IV.   <u>Motion to Stay Discovery</u>

Defendant moves for a temporary stay of discovery pending the outcome of its motions to compel arbitration and to dismiss. *Mot. III* 11:2–6.  The Court has now ruled on both pending motions and so **DENIES AS MOOT** Defendant's requested temporary stay.

V.   <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS** Defendant's motion to compel arbitration. Hlvinka, Mann, and Segall are **ORDERED** to individually arbitrate their claims against Defendant as required under their respective arbitration agreements.  Further proceedings in this action relating to their claims against Defendant are **STAYED** pending arbitration.  *See* 9 U.S.C. § 3.

The Court also **GRANTS** Defendant's motion to dismiss with leave to amend as outlined above.  Fish and Deeble may file a second amended complaint no later than **June 10, 2022**. Failure to do so will result in the dismissal without prejudice of this case.

Finally, the Court **DENIES AS MOOT** Defendant's motion to stay further discovery pending the outcome of its motion to compel arbitration and motion to dismiss.

**IT IS SO ORDERED.**