Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Tel: (424) 285-8330 | Fax: (424) 204-9093

Amir M. Nassihi (SBN 235936)
anassihi@shb.com
Joan R. Camagong (SBN 288217)
jcamagong@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
TESLA INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FISH and M. DEEBLE, individuals, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC., a Delaware corporation,<br><br>        Defendant. | Case No. 8:21-cv-00060-PSG-JDE<br><br>Assigned to Hon. Philip S. Gutierrez Courtroom 6A, 6th Floor<br><br>**DEFENDANT TESLA INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:     August 5, 2022<br>Time:    1:30 p.m. |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

FACTS ALLEGED AND PROCEDURAL HISTORY ......................................... 2

LEGAL STANDARD ............................................................................................ 4

ARGUMENT ........................................................................................................ 4

I.    Plaintiffs fail to state a claim under the Computer Fraud and Abuse Act. ..... 4

        A.    Plaintiffs fail to allege sufficient damages or loss to assert a
           CFAA claim. ................................................................................... 5

        B.    The CFAA claim fails under both Rule 8 and Rule 9(b) ........... 7

        C.    Plaintiffs' "without authorization" claim fails because they
           consented to Tesla's software updates ....................................... 8

        D.    Plaintiffs' "exceeds authorization" claim fails. ...................... 10

           1.    *Van Buren* precludes Plaintiffs' "exceeds authorized
               access" claim. ............................................................. 11

           2.    Plaintiffs fail to allege Tesla obtained something "of
               value." ......................................................................... 12

II.   The Court should dismiss Fish's Song-Beverly express warranty claim ...... 12

III.  Fish's Song-Beverly implied warranty claim fails because he does not

     plead facts showing his Model S is unmerchantable .................................... 15

IV.   Fish's Magnuson-Moss Warranty Act claim fails ........................................ 17

CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................... 4

*Blanda v. Butler*,
   No. 16-01008, 2016 WL 10842584 (C.D. Cal. Aug. 22, 2016) ........................... 4, 8

*Brodsky v. Apple, Inc.*,
   No. 19-cv-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .................. 8

*Brownfield v. Jaguar Land Rover N. Am., LLC*,
   584 F. App'x 874 (9th Cir. 2014) ......................................................... 13

*Cadena v. Am. Honda Motor Co.*,
   No. CV 18-4007-MWF, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ............... 14

*Calendar Research LLC v. Stubhub, Inc.*,
   No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391 (C.D. Cal. May 13, 2020) ................................................................................................ 12

*Capital Audio Access, Inc. v. Umemoto*,
   980 F. Supp. 2d 1154 (E.D. Cal. 2013) ................................................... 6

*Clark v. Am. Honda Motor Co.*,
   Inc., CV 20-03147 AB (MRWx), 2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) ............................................................................................ 13

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................. 17

*Cohen v. Porsche Cars N. Am., Inc.*,
   No. 2:19-cv-05530-AFM, 2019 WL 6700941 (C.D. Cal. Dec. 6, 2019) ............... 14

*Ewiz Express Corp. v. Ma Am. Inc. v. Serv. Key, LLC*,
   No. 12-00790 SBA, 2012 WL 6019580, at (N.D. Cal. Dec. 3, 2012) ..................... 4

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*,
  13-cv-00784-MCE-DAD, 2013 WL 3872950 (E.D. Cal. July 25,
  2013) ........................................................................................................ 6

*Gertz v. Toyota Motor Corp.*,
  10-cv-01089, 2011 WL 13142144 (C.D. Cal. Apr. 28, 2011) ............................... 16

*Glam & Glits Nail Design, Inc. v. NotPolish, Inc.*,
  No. 21-CV-0052-GPC-DEB, 2021 WL 2317410 (S.D. Cal. June 7,
  2021) ........................................................................................................ 11

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018) ....................................................... 9

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ................................................. 4, 7

*In re Facebook Privacy Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................... 5

*In re iPhone Application, Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................. 9, 10

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ....................................................... 15

*In re Sony PS3 Other OS Litig.*,
  551 F. App'x 916 (9th Cir. 2014) ............................................................. 10

*Isip v. Mercedes-Benz USA, LLC*,
  155 Cal. App. 4th 19 (2007) ............................................................. 15, 16

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................. 4, 7

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 ......................................................................................... 5, 10

*Mosqueda v. Am. Honda Motor Co.*,
  443 F. Supp. 3d 1115 (C.D. Cal. Mar. 6, 2020) ....................................... 14

*Resnick v. Hyundai Motor Am., Inc.*,
  No. CV-16-00593-BRO-PJWX, 2017 WL 1531192 (C.D. Cal. Apr.
  13, 2017) ............................................................................................. 15, 16

*Robbins v. Hyundai Motor Am.*,
   No. SACV 14-00005-JLS, 2014 WL 4723505 (C.D. Cal. Aug. 7,
   2014) ................................................................................................ 17

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) .................................................... 5

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................ 8

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................ 15

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .............................................. 16

*Troup v. Toyota Motor Corp.*,
   545 Fed. Appx. 668 (9th Cir. 2013) .................................................... 16

*Van Buren v. United States*
   141 S. Ct. 1648 (2021).............................................................. 5, 11, 12

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
   774 F.3d 1065 (6th Cir. 2014) .............................................................. 6

*Zuehlsdorf v. FCA US LLC*,
   No. EDCV181877JGBKKX, 2019 WL 2098352 (C.D. Cal. Apr. 30,
   2019) ................................................................................................ 15

**Statutes**

18 U.S.C. § 1030.................................................................................... 5, 12

Cal. Civil Code 1791.1(a) .......................................................................... 15

Cal. Civil Code § 1793.2 .................................................................. 4, 13, 14

Computer Fraud and Abuse Act ..........................................................*passim*

**Rules**

Rule 8 .......................................................................................................... 4, 7

Rule 9(b) ................................................................................................. 4, 7, 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

This is the Plaintiffs' third effort to plead claims that Tesla violated warranties and the Computer Fraud and Abuse Act ("CFAA") based on deficient allegations that the lithium ion batteries in Tesla vehicles experience capacity loss and—purely on "information and belief"—that Tesla hides this gradual loss of capacity over time behind software updates. Plaintiffs' Second Amended Complaint ("SAC") suffers from the same deficiencies as their First Amended Complaint ("FAC") and should be dismissed for the same reasons.

Specifically, this Court dismissed Robert Fish and M. Deeble's CFAA claim because Plaintiffs failed to allege that they incurred any costs and rejected the notion that a loss of "the value of [their batteries]" was sufficient. Dkt. 85 at 13. Plaintiffs' SAC does not remedy this deficiency. Rather, Plaintiffs allege that their businesses lost the value of their "professional time" when they chose to investigate what they deemed to be defective batteries in their *personal* vehicles. But as this Court acknowledged, courts have rejected such theories of loss under the CFAA. Notwithstanding this, Plaintiffs also consented to the software updates at issue which negates any claim that Tesla lacked permission or exceeded authorization—necessary elements for a CFAA claim.

The Court also, among other things, dismissed Deeble's warranty claims with prejudice but allowed Fish leave to amend. Dkt. 85 at 21. But Fish's warranty claims remain deficient because he again fails to allege sufficient facts to show that he provided Tesla with a reasonable number of opportunities to repair his Model S. And with respect to his implied warranty claim, the mere inconvenience of having to locate an electric vehicle charging station does not render his Model S unmerchantable. Because Fish's warranty claims fail, so too does his MMWA claim.

Accordingly, Plaintiffs' SAC should be dismissed with prejudice.

**FACTS ALLEGED AND PROCEDURAL HISTORY**

Fish is the equity partner and founder of the law firm representing him in this action. SAC ¶ 33. He is a resident of Irvine, California and purchased a new 2014 Tesla Model S 85 in 2014. SAC ¶ 6. For several years following his purchase, Fish alleges he regularly got over 200 miles of range from an 80% drain of his battery, which he claims is "approximately equivalent to the maximum stated range." *Id.* ¶ 13. After over six years and nearly 60,000 miles later, Fish alleges he began to notice battery capacity loss in his vehicle. *Id.* ¶ 16. But before purchasing his vehicle, Fish understood that the type of batteries used to power Tesla vehicles normally lose some capacity over time. *Id.* ¶ 14. In fact, he admits that battery capacity loss "necessarily occurs from age and use of Lithium Ion technology batteries." *Id.* ¶ 31. Despite this understanding, he alleges that Tesla's batteries are defective because of alleged gradual battery capacity loss. *Id.* ¶ 26. While he alleges that he measured his vehicle's battery capacity throughout August 2020, he fails to provide any context for the circumstances under which his vehicle was driven (e.g. road conditions and personal driving habits).[1] *Id.* ¶¶ 18-25. Rather, he concludes that Tesla "hide[s] failing battery capacity" from consumers through software updates. *Id.* ¶ 31. He does not deny, however, that Tesla's software updates actually improve the functionality, safety, and comfort of Tesla's vehicles. *See* Tesla Software Updates and Tesla Software Version 10.0, *supra*, at footnote 1.

Fish alleges that, at some point in August 2020, he scheduled an in-person service appointment for August 20, 2020. SAC ¶ 18. But nowhere does Fish allege that he actually took his vehicle in for an in-person appointment—on August 20, 2020 or otherwise. Before the August 20 appointment (on August 9), Fish alleges "Technician J" called him to discuss the battery complaint and informed the next day that Tesla opted

---

[1] *See* https://www.tesla.com/support/range (last visited June 8, 2022) (explaining that actual range depends on many factors particularly environment and personal driving habits); see also https://www.fueleconomy.gov/feg/label/learn-more-electric-label.shtml (last visited March 4, 2022) ("Driving Range. When the vehicle is fully charged, this represents the ***approximate*** number of miles that can be travelled in combined city and highway driving before the vehicle must be recharged.")(emphasis in original).

to perform a remote analysis, diagnosis, and service. *Id.* Fish alleges "[o]n information and belief" that Tesla performed a remote analysis, diagnosis, and repair. *Id.* He does not allege whether Tesla ever confirmed doing such a remote analysis nor does he allege what the technician said to him about the results. Later, however, Fish alleges that a Tesla technician contacted him on August 19, 2022 and Fish "submitted the Subject Vehicle to such virtual or remote service." SAC ¶ 27. Fish apparently repeatedly demanded a battery replacement. *Id.*

In terms of damages, Fish alleges that he spent "more than an estimated ten …. hours troubleshooting, investigating, and otherwise attending to the defective battery and battery management system of his [Model S]" but does not allege that he incurred any direct costs or paid anything out of pocket for investigating his Model S battery. Rather, he says that his attorney billing rate is $650/hour and as such the law firm representing him in this case indirectly lost "at least $6,500 of professional time." SAC ¶ 33.

Deeble, a California resident, purchased a used 2013 Model S P85+ from a third-party. *Id.* ¶ 7. Deeble does not allege when he purchased it or from whom. He does not identify how his vehicle's range changed, if at all, between when he purchased his vehicle and some other point in time let alone whether he installed a software update on his Model S. Similar to Fish, Deeble does not allege that he incurred any direct costs or paid anything out of pocket for investigating his Model S battery. Instead, he alleges that as a self-employed electrician with a $250/hour billing rate, his business lost approximately $5,000 of professional time. SAC ¶ 43.

On January 12, 2021, Fish filed this action. Dkt. 1. On February 4, 2022, Fish filed the FAC and added plaintiffs Zachary Hlavinka, Joel Mann, Herbert Joel Segall, and M. Deeble. Dkt. 49. On May 15, 2022, this Court dismissed the FAC with leave to amend and granted Tesla's motion to compel Hlavinka, Mann, and Segall's claims to arbitration. Dkt. 85. On June 10, 2022, Fish and Deeble filed their SAC. In conclusory terms, Plaintiffs allege that Tesla's conduct gives rise to three causes of action: (1)

violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*); (2) violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*); and (3) violation of Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*). Tesla now moves to dismiss Fish and Deeble's claims with prejudice.

## LEGAL STANDARD

A complaint must allege enough facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, blanket assertions, and recitations of legal elements are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]—that the pleader is entitled to relief." *Id.* at 678-79 (quoting Rule 8). Any claims grounded in fraud must be pleaded with particularity under Rule 9(b), including claims based on concealment or omission theories. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). This also includes CFAA claims grounded in fraud. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019) (applying Rule 9(b) to CFAA claims); *Blanda v. Butler*, No. 16-01008, 2016 WL 10842584, at *5 (C.D. Cal. Aug. 22, 2016) (same); *Ewiz Express Corp. v. Ma Am. Inc. v. Serv. Key, LLC*, No. 12-00790 SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012)(computer intrusion claims based on the notion that the defendant "fraudulently induced customers" need to satisfy Rule 9(b)).

## ARGUMENT

**I.    Plaintiffs fail to state a claim under the Computer Fraud and Abuse Act.**

Plaintiffs fail to allege any cognizable loss under the CFAA. For this reason alone, the Court should dismiss the CFAA claim with prejudice. Setting that aside, Plaintiffs have not come close to pleading their claims with the requisite specificity under Rule 8 and Rule 9(b), nor do they allege that Tesla engaged in any actions that

1  violated the CFAA. Rather, Plaintiffs' allegations seek to turn the CFAA on its head by
2  using it to challenge activity that is standard in the industry—beneficial software
3  updates provided by Tesla to its customers. Accordingly, the Court should dismiss
4  Plaintiffs' CFAA claims again but with prejudice.

5      The CFAA prohibits intentional activity, either by accessing a computer without
6  authorization or exceeding authorized access, to obtain information from a protected
7  computer or cause the transmission of some code, and thereby causing damage to the
8  protected computer. 18 U.S.C. §§ 1030(a)(4), (a)(5)(A), (a)(5)(C). It is intended to
9  combat destructive computer hacking, not to disallow standard industry software
10 updates, like Tesla's updates, which customers, including Plaintiffs, expressly consent
11 to being installed. *See Van Buren v. United* States, 141 S. Ct. 1648, 1652 (2021) (noting
12 that the CFAA was enacted following a series of highly publicized hackings); *LVRC*
13 *Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 ("The [CFAA] was originally designed
14 to target hackers who accessed computers to steal information or to disrupt or destroy
15 computer functionality[.]"); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D.
16 Ariz. 2008) (finding that the "legislative history supports a narrow view of the CFAA").
17 Any contrary reading would be inconsistent with both that direction and with the rule
18 of lenity. *Brekka*, 581 F.3d at 1134; *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705,
19 715-16 (N.D. Cal. 2011). Applying the CFAA to standard industry software updates in
20 the manner Plaintiffs seek to do here would make a tortfeasor out of any entity issuing
21 software updates that did not require users installing the software to affirmatively
22 consent to each and every feature of the software.

23    **A.    Plaintiffs fail to allege sufficient damages or loss to assert a CFAA**
24        **claim.**

25      As this Court held, to prevail on their CFAA claim, Plaintiffs must sufficiently
26 allege $5,000 in damages. Dkt. 85 at 13; 18 U.S.C. §§ 1030 (g) & c(4)(A)(i)(I). Despite
27 amendment, Plaintiffs fail to do so.

28

1    Here, Fish and Deeble allege nothing more than the lost value of their
2  "professional time" for looking into what they believed to be an issue with their
3  *personal* vehicles. SAC ¶¶ 33, 43. That is no different than the theory of loss this Court
4  rejected when dismissing Plaintiffs' CFAA claim. Dkt. 85 at 13 ("And to the extent Fish
5  and Deeble believe that Defendant has deprived them 'the value of [their batteries],' the
6  Ninth Circuit rejected a comparable theory of loss in *Andrews*.")(citing *Andrews v.*
7  *Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019)). Other courts have rejected
8  similar theories too. *See Capital Audio Access, Inc. v. Umemoto*, 980 F. Supp. 2d 1154,
9  1157-58 (E.D. Cal. 2013) (dismissing CFAA claim where plaintiff alleged only lost
10  business income rather than "impairment to the integrity or availability of data, a
11  program, a system, or information"); *Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*,
12  13-cv-00784-MCE-DAD, 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013)("[C]osts
13  not related to computer impairment or computer damages are not compensable under
14  the CFAA."). Thus, Plaintiffs' time spent investigating what they believed to be a
15  "defective" battery in their *personal* vehicles is a far cry from the loss contemplated
16  under the CFAA. *Andrews*, 932 F.3d at 1263 (dismissing CFAA claim where plaintiff
17  alleged only that he and his fellow class members were denied the profits they might
18  have received from commodifying the personal information that Sirius XM allegedly
19  obtained through unlawful means); *Cf. Yoder & Frey Auctioneers, Inc. v.*
20  *EquipmentFacts, LLC*, 774 F.3d 1065, 1073 (6th Cir. 2014) (employee's time sufficient
21  when investigating damage directly to company through breach of its auction platform).
22    Even assuming what Plaintiffs allege about the software updates hiding the
23  defective battery capacity are true, an allegation at odds with Plaintiffs' later allegations
24  concerning how they monitored their vehicles' range decreasing, Plaintiffs suffered no
25  actual damage from the alleged deception via software updates because they were still
26  within Tesla's 8-year battery warranty. SAC ¶ 178. This is underscored by their own
27  actions – they repeatedly demanded a warranty replacement. *Id*. ¶¶ 18, 42-43, 180.
28

Finally, Plaintiffs' theory of "loss" necessarily requires several speculative leaps, each of which precludes them from plausibly pleading the required amount of loss. First, Plaintiffs conveniently allege they spent the amount of time necessary to meet the $5,000 threshold on "troubleshooting, investigating, and otherwise attending to the defective battery…; defects caused in whole *or in part* by Tesla's manipulation of the software…." *Id.* ¶¶ 33, 43 (emphasis added). But they fail to allege how the time spent establishing degradation to pursue warranty claims were necessary to establish their CFAA claim. Second, Plaintiffs fail to allege that the time they spent on these activities actually resulted in a loss of income *to them* as opposed to some theoretical loss to their business. As an example, Mr. Fish does not allege that reasonably, necessary, and billable work for his clients went unperformed because of his battery concerns. Presumably all necessary work for his clients was performed, either by him or other attorneys at his firm, and his firm obtained the value of that work. Third, Plaintiffs fail to allege facts showing the amount they actually would have received for engaging in unspecified work. Billing rates do not plausibly map directly onto actual income: they include, for example, costs for overhead and attendant costs incurred in performing the work, may be subject to profit sharing, and would be reduced by taxes. Fourth, Plaintiffs do not even have standing to raise losses incurred by class counsel. Finally, Plaintiffs fail to allege how their professional billing rates can reasonably be used as a proxy for the value of time spent engaging in purely personal matters.

Thus, because Plaintiffs fail to allege sufficient damage under the CFAA, their CFAA claim should be dismissed with prejudice.

**B.    The CFAA claim fails under both Rule 8 and Rule 9(b).**

Setting aside Plaintiffs' failure to allege damages under the CFAA, Plaintiffs' CFAA claim fails for other, independent reasons, including their failure to plead a violation under both Rule 8 and Rule 9(b).  As this Court recognized, a "defendant must be able to prepare an adequate answer to the allegations of fraud." Dkt. 85 at 11. Here, Plaintiffs' CFAA claim sounds in fraud, but they fail to plead enough to satisfy Rule 8

1   let alone Rule 9(b). *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009); *In*

2   *re Apple Inc. Device Performance Litig.,* 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019)

3   (applying Rule 9(b) to CFAA claim); *Blanda*, 2016 WL 10842584, at *5 (same).

4   Plaintiffs still do not allege *when* the purportedly offending updates were installed.

5   Plaintiffs do not allege *who* installed the updates—an essential aspect for Deeble who

6   purchased his car from a third-party. And Plaintiffs fail to allege *what* software

7   update(s) they believe exceeded authorization or were without authorization, let alone

8   *how*. Without such factual allegations, Tesla, which issues many software updates

9   throughout the course of a year, is unable to defend against the charge. *Swartz v. KPMG*

10  *LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("[A]llegations of fraud must be specific enough

11  to give defendants notice of the particular misconduct which is alleged to constitute the

12  fraud charged so that they can defend against the charge and not just deny that they have

13  done anything wrong."). Plaintiffs' CFAA claim should therefore be dismissed.

14      **C.     Plaintiffs' "without authorization" claim fails because they consented**

15              **to Tesla's software updates.**

16      The Court should dismiss Plaintiffs' "without authorization" claim with prejudice

17  because the complaint alleges that Plaintiffs authorized Tesla's access. Dkt. 85 at 15. In

18  dismissing this claim, this Court acknowledged that Plaintiffs may be able to state a

19  claim if they "also allege that Defendant 'blatantly misdescribed the nature of the ….

20  updates.'" *Id*. Plaintiffs fail to do so. Instead, they simply state that "Tesla blatantly

21  misdescribed the nature of the software updates" without adding any allegations to

22  support that conclusion. *Compare* FAC ¶¶ 83-84 with SAC ¶¶ 85-86. Indeed, they fail

23  to allege what software update(s) they believe were without authorization, what Tesla

24  said about them (or any updates), why any statements made by Tesla were false or

25  misleading, or that Plaintiffs actually read or reviewed the descriptions regarding the

26  updates (let alone that they relied on them). *See Brodsky v. Apple, Inc*., No. 19-cv-

27  00712-LHK, 2019 WL 4141936, at *4 (N.D. Cal. Aug. 30, 2019) (dismissing CFAA

28  claim in part because plaintiff "has offered no information about the 2015 software

1  update that allegedly enabled 2FA on his phone, nor about whether Plaintiff … read or

2  reviewed the message that accompanied the update.").

3      As in their FAC, Plaintiffs admit that they "accep[ted] all of the over-the-air

4  updates provided by Tesla" and recognized that owners have a choice to postpone

5  software updates. SAC. ¶¶ 180, 79. By affirmatively "accepting" software updates on

6  their vehicles, Plaintiffs consented to just the sort of access, updates, and impact those

7  updates had on their vehicles that they now contend was "without authorization."[2]

8      As Tesla argued in its motion to dismiss the FAC, courts have dismissed CFAA

9  claims on similar facts. In litigation arising from alleged harmful effects of iPhone

10 updates and application downloads, for example, courts have held that CFAA claims

11 premised on unauthorized access fail where the party consented to the allegedly

12 damaging download. *See In re iPhone Application, Litig*., 844 F. Supp. 2d 1040, 1066

13 (N.D. Cal. 2012); *In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d 434, 452

14 (N.D. Cal. 2018) ("[U]sers who voluntarily installed software would have serious

15 difficulty pleading unauthorized access under the CFAA.") (citations and quotations

16 omitted).

17     In *In re iPhone Application*, plaintiffs alleged Apple violated the CFAA by

18 collecting certain personal data from plaintiffs without their authorization after they

19 downloaded applications to their iPhones. 844 F. Supp. 2d at 1065. Though plaintiffs

20 chose to download the offending applications, they nevertheless argued that they did

21 not consent to continuous geolocation monitoring while using the applications. *Id*. at

22 1065. The court dismissed plaintiffs' unauthorized access claims reasoning that Apple

23 had authority to access their devices as a result of the voluntary installation of the

24 software. *Id*. at 1066.

25

26 ―――――――――――――――

27 [2] *See* https://www.tesla.com/support/software-updates (last visited June 24, 2022)
   (explaining that owners have the option to install the update immediately or schedule

28 for later).

MEMORANDUM ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 8:21-CV-00060-PSG-JDE

Just as the plaintiffs in *In re iPhone Application* consented to Apple accessing their devices by downloading software that gave Apple access, here, Plaintiffs consented to receiving software updates by accepting software updates for years. Of course Plaintiffs wanted these updates—like most Tesla owners, they wanted the latest and greatest software version because of the benefits these updates confer. SAC. ¶¶ 180, 78. Indeed, they do not dispute the benefits they received from Tesla's software updates throughout their ownership. *See* Tesla Software Updates and Tesla Software Version 10.0, *supra*, at footnote 3. Such software updates not only enhance existing features of Tesla vehicles but are also designed to provide new features ranging from entertainment to safety. *Id.* Tellingly, Plaintiffs do not allege that they chose to stop receiving software updates since uncovering the "truth" about Tesla's allegedly deceptive software updates.

Because Plaintiffs voluntarily consented to software updates or otherwise permitted the alleged "access" to their MCU by choosing not to postpone the updates, their CFAA claim should be dismissed. *See In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014) (affirming dismissal of CFAA claim because "Plaintiffs voluntarily installed the relevant software update," and thus "cannot allege actionable 'access' under the CFAA"); *Brekka*, 581 F.3d at 1135 (9th Cir. 2009) ("we hold that a person uses a computer 'without authorization' under [the CFAA] when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission)").

### D.   Plaintiffs' "exceeds authorization" claim fails.

As this Court held, Plaintiffs' "exceeds authorization" claim fails for at least two independent reasons: (1) in *Van Buren*, the Supreme Court recently made clear that an "exceeds authorization" claim requires allegations that an individual obtain information from particular parts of a computer to which they would not normally have access; and (2) Plaintiffs fail to allege an essential element of their claim—that Tesla obtained anything "of value" through its software updates. Dkt. 85 at 14. Plaintiffs SAC does not

10

change the analysis. Indeed, Plaintiffs added nothing but a conclusory statement that they did not "grant[] Tesla unfettered access to the MCUs." SAC ¶ 147. Like Plaintiffs' amendment to address their "without authorization" claim, they provide no supporting allegations. *Compare* FAC ¶ 145 with SAC ¶ 147. Accordingly, the Court should dismiss the "exceeds authorization" claim with prejudice.

### 1. *Van Buren* precludes Plaintiffs' "exceeds authorized access" claim.

Because Plaintiffs consented to the software updates, SAC. ¶¶ 180, 79, they necessarily consented to the changes made by that software. *Van Buren*, 141 S.Ct. at 1662 (holding that Van Buren, who had authorization to access the database at issue, "did not 'excee[d] authorized access' to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose"). Yet the Supreme Court's narrow construction of "exceeds authorized access" in *Van Buren* further forecloses Plaintiffs' claim. *Van Buren*, 141 S.Ct. at 1662. The Supreme Court explained that an individual "exceeds authorized access" only when that individual obtained information from particular parts of a computer to which they would not normally have access (commonly known as "hacking"). *Id*. In other words, Plaintiffs' "exceeds authorized access" claim fails because Plaintiffs not only authorized Tesla to access the MCU in their vehicles by downloading the software updates, they also authorized Tesla to make the updates. *Id*.

Under *Van Buren*, even if Tesla did something Plaintiffs believe is nefarious through the software updates, *e.g.*, limit the amount of battery capacity, that is irrelevant to a CFAA "exceeds authorized access" inquiry. *See*, *e.g.*, *Glam & Glits Nail Design, Inc. v. NotPolish, Inc*., No. 21-CV-0052-GPC-DEB, 2021 WL 2317410, at *7-8 (S.D. Cal. June 7, 2021) (citing cases, including *Van Buren*, and explaining whether the defendant "misappropriated the information she was authorized access to is a separate question outside the CFAA's scope"). What matters is that Plaintiffs allowed Tesla access to the MCU to make updates to it. Thus, under *Van Buren* and Ninth Circuit law, Plaintiffs have failed to allege that Tesla exceeded any authorization Plaintiffs provided

to it. On the contrary, Plaintiffs' allegations demonstrate that they affirmatively allowed Tesla to access and update the software in their vehicles. SAC ¶¶ 180, 79. After receiving the benefit of software updates for years, Plaintiffs now claim that they simply did not want Tesla to allegedly "limit the amount of battery capacity and charging speed." *Id*. ¶ 85. That is neither a crime nor a tort under the CFAA. *Van Buren*, 141 S. Ct. at 1662 ("Van Buren accordingly did not 'excee[d] authorized access' to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose."). For this reason alone, the Court should dismiss Plaintiffs' "exceeds authorization" claim.

### 2. Plaintiffs fail to allege Tesla obtained something "of value."

Plaintiffs' "exceeds authorized access" claim also requires that they allege Tesla obtained information or something "of value" in connection with accessing their MCUs. Dkt. 85 at 14; 18 U.S.C. § 1030(a)(4); *Calendar Research LLC v. Stubhub, Inc*., No. 2:17-cv-04062-SVW-SS, 2020 WL 4390391, at *22-23 (C.D. Cal. May 13, 2020). Plaintiffs make no such allegation. Their claims should be dismissed for this reason too.

## II.   The Court should dismiss Fish's Song-Beverly express warranty claim.

The Court should dismiss Fish's Song-Beverly express warranty claim. Fish still does not (and cannot) allege that he provided Tesla with a reasonable number of opportunities to repair his vehicle or that Tesla refused to repair it. In the prior order dismissing the express warranty claim, the Court concluded that Fish failed to provide Tesla with at least two repair opportunities. *See* Dkt. 85 at 18. The Court reasoned that Fish's allegations in the FAC, at best, suggested Tesla performed a single battery health check and that "demanding a battery replacement and inquiring about diminished battery capacity is not the same as presenting a vehicle for repair." *Id*. Fish's allegations in the SAC fare no better.

As explained in Tesla's motion to dismiss the FAC, the Song-Beverly Act requires Fish to allege that he brought his vehicle in for the repair of a particular issue on more than one occasion. *See* Cal. Civil Code § 1793.2(d)(1); *Brownfield v. Jaguar*

*Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014); *Clark v. Am. Honda Motor Co*., Inc., 2:20-cv-03147-AB-MRWx, 2021 WL 4260232, at *3 (C.D. Cal. Sept. 14, 2021). Fish fails to do so here. Fish alleges that, at some point in August 2020, he scheduled an in-person service appointment for August 20, 2020. SAC ¶ 18. But nowhere does Fish plausibly allege that he actually took his vehicle in for an in-person appointment—on August 20, 2020 or otherwise. Before the August 20 appointment (on August 9), Fish alleges "Technician J" called him to discuss the battery complaint and informed the next day that Tesla opted to perform a remote analysis, diagnosis, and service. *Id.* Fish alleges "[o]n information and belief" that Tesla performed a remote analysis, diagnosis, and repair. *Id.* Fish says nothing about what Tesla found or whether any results were reported to him.  And, importantly, Fish does not allege what he did (or request of Tesla) after receiving that information. Without these allegations, it simply is not plausible that Fish provided Tesla with a sufficient opportunity to repair his Model S. Indeed, Fish's warranty expressly requires that "[t]o obtain warranty service, you must … ***deliver*** the vehicle, at your expense, during regular business hours to a Tesla Service Center." Model S Warranty at 43 (Dkt. 58-3) (emphasis added). Later, Fish alleges that a second technician, "Technician G," contacted him on August 19, 2020, to perform remote service. SAC ¶ 27. Unlike his prior conversation with "Technician J," Fish claims he "***submitted*** the Subject Vehicle to such virtual or remote service." *Id.* (emphasis added). But he fails to state that any remote service actually occurred. Moreover, there is no indication that Tesla found something wrong with the battery then or after. In fact, Fish admits that "Tesla service technicians performed remote 'battery health checks' and determined there were no issues with the battery." SAC ¶ 28.

Fish's remaining allegations fail to plausibly show more than one repair opportunity or repair attempt. Fish alleges that throughout August 2020, he logged energy usage and "repeatedly informed Tesla of the defect in battery performance." SAC ¶¶ 19, 23. In response, Tesla "repeatedly opted to perform remote analysis,

diagnosis or service[.]" SAC ¶ 23. But fatal to his express warranty claim, and apart from the contacts with Technicians G and J described above, Fish fails to specify *when* he informed Tesla of the purported defect or *what actions* Tesla took in response. His vague and conclusory allegations do not plausibly suggest Fish presented his vehicle for (arguably) more than one repair opportunity or that Tesla ever refused to repair it. *Mosqueda v. Am. Honda Motor Co*., 443 F. Supp. 3d 1115, 1120 (C.D. Cal. Mar. 6, 2020) ("Honda did not refuse any request for repair during these visits but attempted to diagnose and remedy the problem. That the alleged CMBS defect persisted after only one or two repair attempts is insufficient to constitute breach of the New Vehicle Limited Warranty.")

Moreover, Fish's telephone calls with "Technician J" and "Technician G" are not the same as a "repair attempt" under Song-Beverly. *See, e.g., Cohen v. Porsche Cars N. Am., Inc*., No. 2:19-cv-05530-AFM, 2019 WL 6700941, *2 (C.D. Cal. Dec. 6, 2019) (dismissing Song-Beverly express warranty claim because taking a vehicle to a dealership on one occasion and also calling the manufacturer without "clearly alleg[ing] what happened at the dealership or what was said on the visit or the call" is not sufficient). If it were, a consumer could simply call a manufacturer a few times, speak with a technician about conducting a remote diagnostic, claim that constitutes multiple failed repair attempts and hold a manufacturer liable under the Song-Beverly Consumer Warranty Act. In short, Song-Beverly requires that Fish allege that he brought his vehicle to a Tesla service station for an actual repair opportunity – pre-appointment diagnostics and discussions with Tesla are not a substitute.

Because Fish again has not alleged more than one repair opportunity, his express warranty claim should be dismissed with prejudice. *Cadena v. Am. Honda Motor Co*., No. CV 18-4007-MWF, 2018 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018) ("the Court is unpersuaded by Plaintiff's argument that Honda 'refused' to repair the vehicles when the dealerships could not duplicate the alleged issue and thus did not initiate any repairs—these facts simply cannot support the conclusions that the dealership 'refused'

to repair, as the dealer could not identify any issue that required repair."); *see also In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 970-71 (N.D. Cal. 2014) (dismissing plaintiffs' breach of express warranty claim and explaining that plaintiffs are not excused from bringing their cars in for repairs because they believe to do so would be futile).

## III. Fish's Song-Beverly implied warranty claim fails because he does not plead facts showing his Model S is unmerchantable.

Fish does not and cannot allege facts showing that his battery allegedly losing capacity or Tesla's software updates somehow made his Model S unmerchantable—a required element for a Song-Beverly implied warranty claim. *See* Cal. Civil Code 1791.1(a). In dismissing this claim, this Court held that "simply because Fish would need to charge his vehicle more often than he expected does not mean that it is no longer fit for ordinary use." Dkt. 85 at 20. Fish's SAC does not change this result.

As set forth in Tesla's motion to dismiss the FAC, the core test of merchantability is fitness for ordinary purpose, which is shown if the product is "in safe condition and substantially free of defects." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26-27 (2007). "[D]efects based on aesthetics or mere annoyances do not render a vehicle unmerchantable." *Resnick v. Hyundai Motor Am., Inc*., No. CV-16-00593-BRO-PJWX, 2017 WL 1531192, at *12 (C.D. Cal. Apr. 13, 2017); *see also Zuehlsdorf v. FCA US LLC*, No. EDCV181877JGBKKX, 2019 WL 2098352, at *10 (C.D. Cal. Apr. 30, 2019) (confirming that "[u]nlike express warranties, an implied warranty of merchantability requires only a "minimum level of quality'" and that "[i]t is sufficient for a vehicle to meet the minimum requirement if it is fit for driving."). A vehicle is not unmerchantable if it can still be driven. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc*., 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claims by Plaintiffs who "have not alleged that they stopped using their vehicles").

Fish alleges no facts that would support an inference that his Model S cannot be operated safely, or even that the alleged reduced battery capacity prevented him from

driving his Model S, or that he ever stopped driving it. Rather, Fish alleges that his Model S is unmerchantable because "the charging network required to power and render [battery electric vehicles] operable … is pathetically nascent on a US nationwide basis" and that "charging a BEV at home is not even an option" for anyone who lives in "multi-tenant, townhomes, or condos." SAC ¶¶ 37-38. Setting aside that it is common knowledge that electric vehicle charging stations are common in apartment and townhome communities (among other locations), Fish's allegations boil down to "mere annoyances [that] do not render a vehicle unmerchantable." *Resnick*, 2017 WL 1531192, at *12; *see Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) ("The Troups failed to allege that their Prius was unfit for its intended purpose, as the alleged defect did not compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage range … the defect alleged by the Troups did not implicate the Prius's operability; rather it merely required the Troups to refuel more often. Absent more, the complaint fails to state a plausible claim for breach of the implied warranty of merchantability."); *Gertz v. Toyota Motor Corp.*, 10-cv-01089, 2011 WL 13142144, at * 12 (C.D. Cal. Apr. 28, 2011) (finding that having to fill up the gas tank more than plaintiffs believe they should does not render a vehicle unmerchantable); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1143 (N.D. Cal. 2010) (dismissing breach of implied warranty claim where washing machine never failed to serve its essential washing purpose even though at times it "took three to four hours to complete a single load of laundry"); *cf. Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 22 (2007) (affirming breach of implied warranty claim where, within first year, vehicle gave off "an offensive smell" when the air conditioner was used; "made a loud tugging noise" when engaging the gear; "made a clanking noise" when releasing the brake in reverse; made a loud knocking sound; emitted smoke from the exhaust system; and, when the gears shifted to accelerate, "pulled back, hesitated, and then took off like a slingshot"). And even if it was not a mere annoyance, Fish fails to allege that there is not a charging

station within his current estimated range much less allege that he ever stopped driving because of it.

Fish's implied warranty claim should be dismissed with prejudice.

**IV.        Fish's Magnuson-Moss Warranty Act claim fails.**

Fish has failed to adequately plead predicate state warranty claims, so his individual MMWA claim must also be dismissed. Dkt. 85 at 20. "[C]laims under the Magnuson-Moss Act stand or fall with [Plaintiff's] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *accord Robbins v. Hyundai Motor Am.*, No. SACV 14-00005-JLS, 2014 WL 4723505, at *10 (C.D. Cal. Aug. 7, 2014) (dismissing MMWA claim for failure to adequately allege state warranty claim).

## CONCLUSION

Plaintiffs' SAC should be dismissed with prejudice.

Dated: June 24, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By: */s/ Joan R. Camagong*

MICHAEL L. MALLOW
AMIR M. NASSIHI
RACHEL A. STRAUS
JOAN R. CAMAGONG


Attorneys for Defendant
TESLA INC.